**No. 18-1800**

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**Mary Madison**
**Petitioner-Appellant,**

**v.**

**Department of Labor-**
**Administrative Review Board**
**Respondent-Appellee.**

PETITIONER-COMPLAINANT OPENING BRIEF
IN SUPPORT OF PETITION FOR REVIEW FROM THE
DISMISSAL OF THE OF APPEAL ISSUED BY THE
DEPARTMENT OF LABOR-ADMINISTRATIVE REVIEW BOARD

**Case No. ARB 18-018**
**Case No. 2016-FDA-004 (ALJ)**

**The Honorable Judge(s) Joanne Royce and Leonard Howie, III**

**Administrative Appeals Judge(s) Presiding**

## SEPARATE APPENDIX OF PLAINTIFF-APPELLANT

**Jordan TraVaille Hoffman, P.C.**

Jordan T. Hoffman
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Mary Madison

TABLE OF CONTENTS

SEPARATE APPENDIX


APPENDIX A

I.    May 29, 2018-Certified List of Documents Filed of Record In The

Administrative Proceedings Before The Administrative Review Board  ............ 1

II.    May 8, 2018 letter to ARB Re: Request for copy of response to

show cause-ARB case no.18-018                          ........... 5

III.    March 9, 2018-Respondent's Response In Opposition To Complainant's

Motion For Reconsideration                            ........... 7

IV.    February 28, 2018-Complainant's Motion For Reconsideration      ........... 12

V.    February 5, 2018-Respondent's Response To Complainant's

"Petition To Show Cause For Finding Petition For Review Timely"  ........... 20

VI.    January 22, 2018-Complainants Petition To Show Cause For

Finding Petition For Review Timely                      ........... 28

VII.    January 19, 2018-Complainant's counsel-Notice to Correct Address  ........... 35

VIII.    January 8, 2018-ARB request to ALJ for records in the ALJ Case

No. 2016-FDA-0004 and ARB Case No. 2018-0018            ........... 38

IX.    December 17, 2018-Complainant Petition For Review            ........... 40

X.    November 22, 2017-ALJ Decision And Order Granting Respondent's

Motion For Summary Decision on Reconsideration, Cancelling Hearing

and Dismissing Claim                                ........... 49

XI.     August 23, 2017 Respondent's Motion for Reconsideration        ........... 80

XII.    August 21, 2017 Email to ALJ about not receiving 8.16.17 Order

        Denying Respondent's Motion for Summary Decision        ........... 84

XIII.   August 16, 2017 Order Denying Motion for Summary Decision        ........... 87

XIV.    May 3, 2016 Preliminary Order        ........... 95

APPENDIX B

*29 CFR - PART 18—RULES OF PRACTICE AND PROCEDURE FOR ADMINISTRATIVE*

*HEARINGS BEFORE THE OFFICE OF ADMINISTRATIVE LAW*        ........... 98

APPENDIX C

*ORCHARD HILL BUILDING COMPANY v. US Army Corps of Engineers*, No. 17-3403

(7th Cir. June 27, 2018)        ........... 149

APPENDIX A

SECTION I

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*
                                              \*
MARY MADISON,                                 \*
                                              \*
              Petitioner,                     \*
                                              \*
       v.                                     \*      No. 18-1800
                                              \*
SECRETARY OF LABOR,                           \*
                                              \*
              Respondent.                     \*
                                              \*
\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*   \*

CERTIFIED LIST OF DOCUMENTS FILED OF RECORD IN
THE ADMINISTRATIVE PROCEEDINGS BEFORE
THE ADMINISTRATIVE REVIEW BOARD

Re:   *Mary Madison v. Secretary of Labor*
      Docket Nos. 18-1800 (7th Cir.)
                  18-018 (ARB)
                  2016-FDA-004 (ALJ)


I HEREBY CERTIFY that the following documents were filed of record with
the U.S. Department of Labor, Washington, D.C., in the above-referenced
administrative proceedings:

| Date | Document(s)[1] |
|------|----------------|
| 1. March 9, 2018 | Administrative Review Board's Order Denying Motion for Reconsideration |

---

[1] As this petition for review was dismissed on purely procedural grounds and the
appeal is limited to those procedural grounds, this certified list includes only the
record before the Administrative Review Board.

2. March 9, 2018            Respondent's Response in Opposition to Complainant's Motion for Reconsideration

3. February 28, 2018       Complainant's Motion for Reconsideration

4. February 15, 2018       Administrative Review Board's Final Decision and Order Dismissing Appeal

5. February 5, 2018        Respondent's Response in Opposition to Complainant's "Petition to Show Cause for find Petition for Review Timely"

6. January 30, 2018        Complainant's Petition to Show Cause for Finding Petition for Review Timely, filed in Response to the Administrative Review Board's January 8, 2018 Order to Show Cause

7. January 19, 2018        Notice of Correct Address filed by Jordan TraVaille Hoffman, Esq.

8. January 8, 2018         Order to Show Cause

9. January 8, 2018         Administrative Review Board's Request for Records sent to the Office of Administrative Law Judges

10. December 17, 2017      Complainant's Petition for Review

Signed this _29th_ day of May, 2018 at Washington, D.C.

Thomas O. Shepherd, Jr., Esq.
Clerk of the Appellate Boards
U.S. Department of Labor

SA-3

## CERTIFICATE OF SERVICE

I hereby certify that on May 29, 2018, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.


*s/ Rosemary Almonte*
Rosemary Almonte

APPENDIX A

SECTION II



LAW OFFICE OF

# *Jordan TraVaille Hoffman, P.C.*

"Balancing the Scales of Justice"

May 8, 2018

Facsimile only:  202-693-6220

C/o Ms. W. Walker
Administrative Review Board
U.S. Department of Labor
200 Constitution Avenue N.W.
Washington, D.C. 20210

RE: Request for copy of response to show cause-ARB case no. 18-018

Dear Ms. Walker:

This is in follow up to your May 2, 2018, voicemail requesting a copy of the response to show cause in the matter of Mary Madison ARB case no. 18-0018 and our conversation of yesterday May 7, 2018.

As discussed, I am not certain why the response to show cause on behalf of my client is not in the file and while I do appreciate you trying to obtain a copy to complete the file, I am inclined to suggest that you file the record as is.

If it is necessary, I will file a motion to have the record supplemented to reflect any inaccuracies.

Thank you for your efforts.

Respectfully,


Jordan T. Hoffman, Esquire

 Cc: Mary Madison

**2711 E. New York St., Suite 205 • Aurora, Illinois 60502 • 888.958.4529 Phone and Facsimile**
**jthoffmanlaw@gmail.com**

SA-6

APPENDIX A

SECTION III

UNITED STATES
DEPARTMENT OF LABOR

In the Matter of:                          )
                                           )
          MARY MADISON,                    )
                                           )        ARB CASE NO. 18-018
                 Complainant,              )
                                           )        ALJ CASE NO. 2016-FDA-004
v.                                         )
                                           )
          KENCO LOGISTICS                  )
                                           )
                 Respondent.               )

## RESPONDENT'S RESPONSE IN OPPOSITION TO COMPLAINANT'S MOTION FOR RECONSIDERATION

Respondent Kenco Logistics Services, LLC ("Kenco") submits the following response in opposition to Complainant's Motion for Reconsideration dated February 28, 2018 in accordance with 29 CFR §1987.110.

*Respns m/Reco*

1.  On November 22, 2017 the ALJ issued an order granting Respondent's Motion for Summary Decision.

2.  On December 17, 2017 Madison filed a Petition for Review with the Department of Labor Administrative Review Board.

3.  On January 8, 2018 the Administrative Review Board entered an order requesting that Madison show cause for the untimeliness of her Petition for Review and granted Madison fourteen days, until January 22, 2018 to show cause.

4.  On January 22, 2018 Madison filed a Petition to Show Cause.

5.  On February 5, 2018 Respondent filed a response in opposition to Madison's Petition to Show Cause.

1

SA-8

6. On February 15, 2018 the Administrative Review Board issued a final decision finding that Madison failed to timely file her petition for review and dismissing her appeal.

7. On February 28, 2018 Madison filed the instant Motion for Reconsideration of the Administrative Review Board's dismissal.

8. Pursuant to 29 C.F.R. §1987.110(b) "[i]f no timely petition for review is filed, or the ARB denies review, the decision of the ALJ will become the final order of the Secretary."

9. Due to the fact that Madison did not file a timely Petition for Review, the ALJ's order is final. Madison therefore does not have the right to request reconsideration because the Administrative Review Board has already determined that it cannot review Madison's case and the ALJ's November 22, 2017 order is final. Accordingly, Madison's Motion for Reconsideration should be denied.

10. Madison does not cite to any authority that would permit her to file a Motion for Reconsideration in these circumstances, and no such authority exists.

11. Respondent additionally disagrees with the merits of Madison's Motion for Reconsideration but will not reach those issues unless the Board requests such a response, because Madison's Motion is procedurally improper.

12. Accordingly, the Administrative Review Board should deny, or alternatively, refuse to consider Madison's Motion for Reconsideration because it is improper and Madison has already exhausted her avenues for relief with the Administrative Review Board because her Petition for Review was found to be untimely.

WHEREFORE, for all the reasons stated herein, Respondent requests that the Board deny or refuse to consider Complainant's Motion for Reconsideration and grant such additional relief as the Department deems proper.

2

DATED:  March 9, 2018

Respectfully submitted,

**KENCO LOGISTICS SERVICES, LLC**


By:  /s/ Julia P. Argentieri
             One of its Attorneys

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Telephone:     (312) 787-4949
Facsimile:      (312)787-4995

SA-10

**CERTIFICATE OF SERVICE**

The undersigned attorney, hereby certifies that on March 9, 2018, I caused to be electronically filed the foregoing ***Respondent's Response in Opposition to Complainant's Motion for Reconsideration*** via the U.S. Department of Labor's Appeals/Electronic Filing and Service Request System (EFSR). A copy was also sent via electronic and U.S. mail to:

> Attorney Jordan Hoffman, Counsel for Complainant
> 2711 E. New York Ave. Suite 205
> Aurora, IL 60502
> jthoffmanlaw@gmail.com

By: /s/ Julia P. Argentieri
One of the Attorneys for the Defendant

4

APPENDIX A

SECTION IV

# UNITED STATES
## DEPARTMENT OF LABOR

In the Matter of:              )

      MARY MADISON       )

         Complainant,    )    ARB CASE NO. 18-018

      v.                 )    Case No. 2016-FDA-4

      KENCO LOGISTICS,    )

## MOTION FOR RECONSIDERATION

**NOW COMES** Complainant, **MARY MADISON** by her counsel, Jordan T. Hoffman pursuant to 29 C.F.R. §18.93 and for her Motion to Reconsider, she states as follows; **THAT**:

The Administrative Review Board (hereafter "ARB") issued a Final Decision and Order (hereafter "FD & O") Dismissing Madison's Appeal of her Whistleblower claim on February 15, 2018 for failing to file her Petition for Review within fourteen days of an adverse decision against her by the ALJ . That order states that "Respondent Kenco Logistics avers that Madison knew that the ALJ had issued the D. & O., as early as December 1, 2017, five days before the due date for the petition for review, but failed to act diligently by either requesting an extension of time to file her petition or timely filing the petition in the remaining five days." (FD & O. Pp. 2-3).  However, that is patently false. December 1, 2017 represents the date that Madison's counsel was copied on an email between April Cook, the paralegal for Judge Sellers and Respondent's counsel in which they discuss a corporate address for the decision to be sent to Kenco's Corporate Counsel and that they copied Madison's counsel on an email as the email address used by Ms. Cook was missing a "t" in Madison's counsel's address.

1

This email was sent at 9:03 a.m. on that date. An email was also sent on December 1, 2017 which

discussed that Ms. Cook had received a "hard copy" back for Kenco Logistics and requested the

address for its corporate office. In addition, the email stated that "I [April Cook] also received the hard

copy back addressed to Mr. Hoffman (his old address) so I sent another hard copy to his new address."

Neither email references what the disposition of the order was nor does it include an attachment of the

decision or any other attachment for that matter (**See Exhibit "A"** attached hereto and made a part

hereof). And contrary to the suggestion in the email no electronic version of the ALJ's D.O. was sent to

Madison's counsel's email address or facsimile nor was there any agreement ever entered into to

receive electronic orders.

It is indicated as noted in the FD. & O. that Madison's counsel did not receive a copy of the

decision in his office until December 6, 2017—exactly 14 days after the decision was issued on

November 22, 2017 and the date upon which the time for filing of the Petition expired. And it should

also be noted that this was during the beginning of the Christmas holiday mailing season. It is

uncontroverted that Madison's Petition for Review was filed more than 14 days after November 22,

2017, the day that the order was issued by the ALJ. However, the 14 day period is not jurisdictional as

stated in the FD. & O. citing the Secretary's Order No. 2-2012 and as recognized in numerous cases.

The period for filing a petition for review with the ARB is subject to equitable modification. (FD & O,

pp. 2), citing *Accord Hills v. Knochel Bros.*,, ARB Nos. 03-136, 04-081, 04-148; ALJ No. 2002-STA-

050, slip op at 3 (ARB Oct. 19, 2004); *Overall v. Tennessee Valley Auth.* ARB. No. 98-011, ALJ No.

1997 ERA-053, slip op. At 40-43 (ARB Apr. 30. 2001).

There has been an erroneous claim by Respondent and acceptance of that claim by the ARB that

Madison's counsel was aware of the decision and had 5 days to either file the Petition for Relief or File

a Motion for Enlargement of Time in which to file the Petition. Even though, in general "equitable

tolling" is not appropriate when a complainant is represented by counsel because counsel is

"presumptively aware" of whatever legal recourse may be available to his or her client, on these facts, Madison's counsel through no fault by either her or counsel, received the D. & O. on the date of the expiration of filing. 29 C.F.R. states that "When an act may or must be done within a specified time, the judge may, for good cause, extend the time:

**(1)** With or without motion or notice if the judge acts, or if a request is made, before the original time or its extension expires; or

(2)On motion made after the time has expired if the party failed to act because of excusable neglect.

At the time Madison's counsel received the D & O, the time to have filed for the extension had already expired so the 5 days that the ARB alludes to in the ARB's FD &O is illusory as there were zero days of the original 14 days remaining and the choice that Madison's counsel made as opposed to being a unilateral choice was a "Hobson's Choice" of either filing after the 14 days had expired or not filing at all. Having received the documents after the expiration ought to be an exceptional circumstance to qualify for equitable tolling and if not that at least a waiver of the initial 14 day period. Madison's case is distinguishable from such cases as, *In re Romero v. Coca Cola*, 2010 WL 3910348, ARB Case No. 10-095, ALJ Case No. 2010-SOX 021(DOL Adm. Rev. Bd.) (Sept. 30, 2010) (Where complainant's counsel received the D. &O, 12 days after it was issued and had an opportunity to file either the Petition for Review or a Petition to Enlarge the time to do so) or *In re George J. Wakileh v. Western Kentucky*, 2004 WL 2390985, ARB Case No. 4-013, ALJ Case No. 2003-LCA-0023(DOL Adm. Rev. Bd.) (Oct. 20, 2004) (Where Complainant did not notify the Administrator of his address change) and *In Re Larry Dan Prince v. Westinghouse*, 2010 WL 4918429, ARB Case No. 10-079, ALJ Case No. 2006-ERA-001 (DOL Adm. Rev. Bd.) (Nov. 17, 2010).

**WHEREFORE**, Complainant, **MARY MADISON** Request the Administrative Review Board to Reconsider its decision against her of February 15, 2018 and find that she exercised due diligence in filing her Petition for Review and that she has met her burden of showing exception circumstances existed to either toll the original 14 day filing period or at least waive the same.

3

Respectfully submitted,
**MARY MADISON**

By: _____
    Jordan T. Hoffman, Her Attorney

Jordan T. Hoffman
ARDC # 6195896
2711 E. New York St. Suite 205
Aurora, IL 60502
(888) 958-4529 Ph & Fax
jthoffmanlaw@gmail.com

4

Case: 18-1800      Document: 23      Filed: 09/05/2018      Pages: 169  Exhibit A

 Gmail                              Jordan Hoffman <jthoffmanlaw@gmail.com>

## RE: Mary Madison case
1 message

**Argentieri, Julia P. (Chicago)** <Julia.Argentieri@jacksonlewis.com>         Fri, Dec 1, 2017 at 9:03
                                                                               AM
To: "Cook, April - OALJ" <cook.april@dol.gov>
Cc: "jthoffmanlaw@gmail.com" <jthoffmanlaw@gmail.com>, "Watkins, Brittany (Chicago)"
<Brittany.Watkins@jacksonlewis.com>

Hi April:
Here is Kenco's corporate address where you can send the decision, which they've already been notified
about via counsel:

Kenco Logistics Services LLC

Attention: Jay Elliott, Vice President - Legal
2001 Riverside Drive • Chattanooga, TN  37406

I have CCed Jordan Hoffman on this email. His email address is jthoffmanlaw@gmail.com. I think your
earlier email was missing the t.

Thanks,

Julie Argentieri

**Julia P. Argentieri**
Attorney at Law
**Jackson Lewis P.C.**
150 North Michigan Avenue
Suite 2500
Chicago, IL 60601
Direct: (312) 803-2533 | Main: (312) 787-4949
Julia.Argentieri@jacksonlewis.com  |  www.jacksonlewis.com
*Jackson Lewis P.C. is included in the AmLaw 100 law firm ranking and is a proud member of the CEO*
*Action for Diversity and Inclusion initiative*

**From:** Cook, April - OALJ [mailto:cook.april@dol.gov]
**Sent:** Friday, December 01, 2017 8:58 AM
**To:** Argentieri, Julia P. (Chicago) <Julia.Argentieri@jacksonlewis.com>
**Cc:** jhoffmanlaw@gmail.com
**Subject:** Mary Madison case

I know the parties already have an electronic decision on the above matter, but we received the hard copy back for Kenco Logistics.

Could you please provide me with their new address?


I also received the hard copy back addressed to Mr. Hoffman (his old address) so I sent another hard copy to his new address.


Thank you,


April Cook, Paralegal Specialist to Judge Sellers and Judge Golden

Office of Administrative Law Judges

36 E. 7th Street, Suite 2525

Cincinnati, OH  45202

(513) 684-6016 (direct line)

(513) 684-3252 (main line)


Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

## CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on February 28, 2018, I submitted a copy of the

foregoing Petition to Show Cause via U.S. Mail to:

By: _____

Jordan T. Hoffman, Her Attorney
Jordan T. Hoffman
ARDC # 6195896
2711 E. New York St., Suite 205
Aurora, IL 60502
(888) 958-4529
jthoffmanlaw@gmail.com

Administrative Review Board
U.S. Department of Labor
Office of the Assistant Secretary
200 Constitution Avenue N.W.- Room: S5220
Washington, D.C. 20210

Hon. Stephen R. Henley
Chief Administrative Law Judge
U.S. Dept. of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-North
Washington, DC 20001-8002

Associate Solicitor
Division of Fair Labor Standards
Office of the Solicitor
U.S. Dept. of Labor
200 Constitution Avenue N.W. Room: N2716
Washington, D.C. 20210

Jackson and Lewis
Counsel For Defendant Kenco
150 N. Michigan Ave., Suite 2500
Chicago, IL 60601

APPENDIX A

SECTION V

**UNITED STATES**
**DEPARTMENT OF LABOR**

| | | |
|---|---|---|
| In the Matter of: | ) | |
| | ) | |
| **MARY MADISON,** | ) | **ARB CASE NO. 18-018** |
| Complainant, | ) | |
| | ) | **ALJ CASE NO. 2016-FDA-004** |
| v. | ) | |
| | ) | |
| **KENCO LOGISTICS** | ) | |
| | ) | |
| Respondent. | ) | |

<u>**RESPONDENT'S RESPONSE IN OPPOSITION TO COMPLAINANT'S "PETITION TO**</u>
<u>**SHOW CAUSE FOR FINDING PETITION FOR REVIEW TIMELY"**</u>

Respondent Kenco Logistics Services, LLC ("Kenco") submits the following response in

opposition to Complainant's Petition to Show Cause in accordance with 29 CFR §1987.110, the

Administrative Law Judge's ("ALJ") Order Granting Respondent's Motion for Summary Decision

dated November 22, 2017 and the Administrative Review Board's subsequent Order to Show

Cause dated January 8, 2018.

*R's*
*2/5 Response*
*brief*

**I.    INTRODUCTION.**

The Board should dismiss Madison's Petition for Review because it is untimely and

Madison lacks cause to justify her untimeliness.[1] In short, Madison's attorney was aware that the

ALJ's decision on Summary Decision had been issued well in advance of the fourteen day deadline

to Petition for Review. He failed to act diligently to submit a Petition for Review or request an

extension of his filing deadline. Moreover, any delay in Madison's attorney receiving the Petition

for Review was due to his own failure to update his address on his Department of Labor appearance

---

[1] Respondent further requests that Madison's Petition for Review be denied because the ALJ properly considered all evidence in arriving at its granting of summary decision and Madison's Petition for Review does not present a basis that a different outcome could be reached. However, Respondent will not address those arguments at this stage, since the issue before the Board at this time is the untimeliness of Madison's Petition for Review.

(and also purportedly due to Madison being out of town and not checking her own mailbox). There were no misleading actions by opposing counsel. To the contrary, Counsel for Respondent copied Jordan Hoffman on an e-mail communication on December 1, 2017 to ensure that he was on notice of the ALJ's decision five days before the fourteen day deadline passed. Even assuming *arguendo* that the Board were to excuse Complainant's initial delay and find that the re-mailing of the ALJ's order on December 1, 2017 started Madison's fourteen day clock, Complainant still did not file the Petition for Review within fourteen days of when it was re-mailed to her attorney. Accordingly, there are no facts to justify Madison's delay, and the Petition should be denied as untimely.

## II.    ARGUMENT: MADISON FAILS TO SHOW CAUSE FOR EQUITABLY TOLLING THE 14 DAY FILING DEADLINE.

Madison's Petition to Show Cause does not identify any appropriate basis to apply equitable tolling.[2] Madison argues that she failed to receive timely notice of the ALJ's order but there this argument is flawed for two reasons: (1) Madison's attorney had notice of the summary decision ruling prior to the December 6, 2017 Petition for Review deadline; (2) Madison's Petition for Review is untimely, even if her time is equitably tolled until fourteen days from December 1, 2017 when the ALJ re-mailed notice to her attorney.

---

[2] Madison does not identify whether any of the principally recognized situations for equitable tolling would apply to her circumstances: (1) where the defendant has actively misled the plaintiff regarding the cause of action; (2) when the plaintiff has in some extraordinary way been prevented from filing his or her action; (3) when the plaintiff has raised the precise statutory claim in issue but has done so in the wrong forum, and (4) where the employer's own acts or omission shave lulled the plaintiff into foregoing prompt attempts to vindicate his rights. *See Mascarenas v. Interstate Hotels & Resorts, Inc.,* ARB No. 15-068, ALJ No. 2014-STA-047 (ARB Aug. 14, 2015). Presumably, based on the facts she puts forth, she is arguing that the timing of receiving notice of the ALJ's decision was an "extraordinary" circumstance. This argument is unsuccessful given that the parties agree that Counsel for Respondent alerted Jordan Hoffman that the summary decision opinion had been issued on December 1, 2017, before the fourteen day period had expired.

2

### A. Madison Could Have Filed the Petition for Review Prior to the Original Deadline.

First, the evidence submitted by Madison demonstrates that her attorney, Jordan Hoffman, was on notice at least as early as December 1, 2017 that the ALJ had mailed out its summary decision order. At that point, Hoffman still had five days to take action and could have timely submitted a Petition for Review on or before December 6, 2017, or requested an extension of time. In *Nevarez v. Werner Enterprises,* the Board was faced with a directly analogous situation where the complainant argued that a delay in delivery of the ALJ's order caused his attorney not to receive the order until less than a week before it was due and "the press of other business precluded him from timely filing the petition for review." *See Nevarez v. Werner Enterprises,* ARB No. 18-005, ALJ No. 2013-STA-012 (ARB Dec. 14, 2017). There, the Board held that a delay in delivery of the ALJ's decision was not an extraordinary circumstance that would call for equitable tolling because tolling is only appropriate where the exercise of reasonable diligence still would not have resulted in a timely filing. Even if Nevarez's attorney was left with only a few days to act before the expiration of the fourteen days, he could have also filed a Motion for Enlargement of Time to file the Petition for Review, rather than disregarding the fourteen-day deadline. The Board noted that it "has consistently held that equitable tolling is generally not appropriate when a complainant is represented by counsel because counsel is 'presumptively aware of whatever legal recourse may be available to [his or her] client.'" *Id.* Here, by the same token, Hoffman was aware no later than December 1, 2017 that a ruling on summary decision had been issued and was presumptively aware that by law, pursuant to 29 CFR §1987.110, the fourteen day time to take action was running.

Furthermore, any attempt to blame the ALJ's paralegal for a typo in his email address is unavailing because Counsel for Respondent fixed the error within the fourteen day time window and ensured that Complainant's attorney was copied on the email and on notice of the decision

3

before the time to Petition for Review expired. *See Baker v. Union Pacific Railroad Co.,,* ARB No. 17-034, ALJ No. 2016-FRS-079 (ARB May 19, 2017) (paralegal error in counting the fourteen day time period to petition was harmless error because it did not cause the untimely filing). Any typo of an email address by a paralegal was a harmless error because Respondent's Counsel Julia Argentieri alerted Jordan Hoffman of the summary decision ruling via email in advance of the deadline.

In numerous similar situations, the Board has found a Petition for Review to be untimely and therefore refused to consider it. *See Siddhartha Maity v. E-Business International, Inc.,* ARB No. 15-082, ALJ No. 2015-LCA-010 (ARB Aug. 30, 2017) (no equitable justification to compel tolling of the fourteen day limitations period where Complainant tried to blame the ALJ because he was in India and did not receive the physical copy of the order when mailed to him); *Brown v. Synovus Financial Corp.,* ARB No. 17-037, ALJ No. 2015-SOX-018 (ARB May 17, 2017) (refusing to consider untimely Petition for Review and noting that attorney error does not constitute an extraordinary circumstance to justify equitable tolling); *Mascarenas v. Interstate Hotels & Resorts, Inc.,* ARB No. 15-068, ALJ No. 2014-STA-047 (ARB Aug. 14, 2015) (delay in *pro se* Complainant receiving ALJ order combined with her stress and medical problems did not prove that Complainant was so incapacitated that she could not file a request for extension of time to Petition for Review). In short, the record is clear that Madison and her counsel could have petitioned for review before their deadline expired or requested an extension, and tolling therefore should not apply.

Regardless of how many communication issues Madison brings up related to: an email address typo by the ALJ, her attorney moving offices and failing to update his address, and Madison going out of town and not receiving her own mail, the conclusion is the same; the

4

undisputed facts establish that Hoffman was on notice of the ALJ's decision on December 1, 2017 before his time to Petition for Review had expired. His decision to wait an additional sixteen days thereafter to file a Petition for Review was not excusable. Madison fails to demonstrate that extraordinary circumstances made it impossible for her attorney to comply with the fourteen day Petition for Review deadline and the Petition should be dismissed as untimely.

**B.  Even Assuming *Arguendo* that Madison Presented an Equitable Basis to Extend Her Time to Petition Until December 15, 2017, the Petition for Review Would Still be Untimely.**

Madison's Petition to Show Cause argues that the ALJ's decision dated November 22, 2017 was mailed to Hoffman's old business address, 11528 S. Halsted Street in Chicago, IL 60628, and not sent to the correct email address. On December 1, 2017, after Counsel for Respondent sent an email communication to Counsel for Complainant and the ALJ's paralegal to ensure Hoffman's receipt of the ALJ's decision, the ALJ re-mailed a copy of its decision to Hoffman's new address, 271 E. New York Ave. Suite 205, Aurora, IL 60502 (which had not been corrected on an updated appearance form). Even assuming *arguendo* that the Board found that this re-mailing of the ALJ's decision should trigger a new fourteen day period to Petition for Review (which it should not, because Hoffman still could have taken action within the original fourteen days at that point), the second mailing of the ALJ decision was dated December 1, 2017. Accordingly, fourteen days thereafter would be December 15, 2017. Madison's Petition for Review was not filed until December 17, 2017.  In other words, even if Madison demonstrated a basis for equitable tolling until the time the decision was re-sent to her attorney, she still failed to comply with that fourteen day time period. There is no argument that her time could be tolled until December 17, 2017 (the date when her Petition for Review was mailed) because a party is never entitled to fourteen days from <u>receipt</u> of the ALJ order; the deadline is fourteen days from the date of the ALJ's decision.

5

*See* 29 CFR §1987.110. Accordingly, even if the Board were to find cause for equitable tolling, the cause would not justify the length of the delay that occurred and, therefore, her Petition for Review should still be dismissed as untimely.

### III.   CONCLUSION.

WHEREFORE, for all the reasons stated herein, Respondent requests that the Board dismiss Madison's Petition for Review because it is untimely, and Madison has failed to establish cause that would justify equitable tolling of her deadline.

DATED:  February 5, 2018                    Respectfully submitted,

                                            **KENCO LOGISTICS SERVICES, LLC**

                                            By:  /s/ Julia P. Argentieri
                                                        One of its Attorneys

Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Telephone:    (312) 787-4949
Facsimile:    (312)787-4995

6

## CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on February 5, 2018, I caused to be electronically filed the foregoing ***Respondent's Response in Opposition to Complainant's Petition to Show Cause*** via the U.S. Department of Labor's Appeals/Electronic Filing and Service Request System (EFSR). A copy was also sent via electronic and U.S. mail to:

> Attorney Jordan Hoffman, Counsel for Complainant
> 2711 E. New York Ave. Suite 205
> Aurora, IL 60502
> jthoffmanlaw@gmail.com

> By: /s/ Julia P. Argentieri
> One of the Attorneys for the Defendant

7

SA-27

APPENDIX A

SECTION VI

UNITED STATES
DEPARTMENT OF LABOR

In the Matter of :                        )
                                          )
    MARY MADISON,                         )
                                          )
              Complainant,                )        ARB CASE NO. 18-018
                                          )
    v.                                    )        Case No. 2016-FDA-4
                                          )
    KENCO LOGISTICS,                      )
                                          )
              Respondent.                 )


**PETITION TO SHOW CAUSE FOR FINDING PETITION FOR REVIEW TIMELY**

**NOW COMES** Complainant, Mary Madison (hereafter "Madison"), through her Attorney,

Jordan T. Hoffman, and for her Petition to Show Cause as to why the Administrative Review

Board should equitably toll the 14 day requirement for filing her Petition for Review herein and

for her good cause shown in support of her petition, she states the following; THAT:

   1.    Madison's counsel received the Department of Labor Administrative Law Judge's

Decision and Order Granting Respondent's Motion for Summary Decision in the United States

mail on December 6, 2017.

   2. The service of the ALJ's Order issued on the November 22, 2017 was defective in that

it was mailed to an incorrect mailing address for Madison's counsel.

   3. The Order was also sent to a former mailing address for Madison's counsel despite the

ALJ's office having Madison's counsel's current address (Please see attached Exhibit "A").

   4. As a result of the ALJ's office having mailed the Order to Madison's counsel's former

address in error, the ALJ's office received the initial November 22, 2017 order back in the return

mail. (Please see Exhibit "A").

1

5. Respondent's counsel in response to an email sent by the ALJ's office pointed out that the email address used by the ALJ's office for Madison's counsel was incorrect, as it was missing the letter "t" in the email address (Please see Exhibit "A").

6. The ALJ's office ostensibly upon the realization of having sent the Order to the incorrect address for Madison's counsel made the correction (Please see Exhibit "A").

7. Accordingly, the envelope received by Madison's counsel from the ALJ's office on December 6, 2017 containing the Order was metered for postage on December 1, 2017 (Please see attached Exhibit "B").

8. The ALJ's office had Complainant's counsel's correct contact information including email and mailing address(es).

9. Service to Madison's counsel was to have been effectuated by mail.

10. Madison's counsel timely responded by filing her Petition for Review within14 days of receipt of the ALJ's order and decision in the U.S. Mail on December 6, 2017.

11. Madison states that she had been out of town for several weeks beginning from the middle of November with a family emergency and was unaware of any such notices mailed to her.

**WHEREFORE** Complainant, **MARY MADISON** based upon the foregoing requests that the Administrative Review Board find that good cause exists to equitably toll her Petition for Review from the date of the issuance of the Order Granting Respondent's Motion for Summary Decision before the ALJ and further that her petition filed on December 17, 2017 be found to be timely and that she be granted 30 days to file her Brief in Support of her Petition for Review.

2

Jordan TisWillie Hoffman, P.C.
ARDC# 6195896
2711 E. New York St., 205
Aurora, IL 60502
(888) 984-4529 Ph. & Fax
jhoffmanlaw@gmail.com

Respectfully submitted,
MARY MADISON

By: _____
Jordan T. Hoffman, Her Attorney

---

CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on January 22, 2018, I submitted a copy of the foregoing Petition to Show Cause via U.S. Mail to:

By: _____
Jordan T. Hoffman, Her Attorney
ARDC # 6195896
2711 E. New York St., Suite 205
Aurora, IL 60502
(888) 984-4529
jhoffmanlaw@gmail.com

Administrative Review Board
U.S. Department of Labor
Office of the Assistant Secretary
200 Constitution Avenue N.W.-Room: S5220
Washington, D.C. 20210

Hon. Stephen R. Henley
Chief Administrative Law Judge
U.S. Dept. of Labor
Office of Administrative Law Judges
800 K Street, N.W., Suite 400-North
Washington, D.C. 20001-8002

Associate Solicitor
Division of Fair Labor Standards
Office of the Solicitor
U.S. Dept. of Labor
200 Constitution Avenue N.W. Room: N2716
Washington, D.C. 20210

Jackson and Lewis
Counsel For Defendant Kenco
150 N. Michigan Ave., Suite 2500
Chicago, IL 60601

4

# Exhibit A

 Gmail

Jordan Hoffman <jthoffmanlaw@gmail.com>

---

## RE: Mary Madison case
1 message

---

**Argentieri, Julia P. (Chicago)** <Julia.Argentieri@jacksonlewis.com>

Fri, Dec 1, 2017 at 9:03 AM

To: "Cook, April - OALJ" <cook.april@dol.gov>
Cc: "jthoffmanlaw@gmail.com" <jthoffmanlaw@gmail.com>, "Watkins, Brittany (Chicago)" <Brittany.Watkins@jacksonlewis.com>

Hi April:
Here is Kenco's corporate address where you can send the decision, which they've already been notified about via counsel:

Kenco Logistics Services LLC

Attention: Jay Elliott, Vice President - Legal
2001 Riverside Drive • Chattanooga, TN 37406

I have CCed Jordan Hoffman on this email. His email address is jthoffmanlaw@gmail.com. I think your earlier email was missing the t.

Thanks,

Julie Argentieri

Julia P. Argentieri
Attorney at Law
**Jackson Lewis P.C.**
150 North Michigan Avenue
Suite 2500
Chicago, IL 60601
Direct: (312) 803-2533 | Main: (312) 787-4949
Julia.Argentieri@jacksonlewis.com | www.jacksonlewis.com
*Jackson Lewis P.C. is included in the AmLaw 100 law firm ranking and is a proud member of the CEO Action for Diversity and Inclusion initiative*

**From:** Cook, April - OALJ [mailto:cook.april@dol.gov]
**Sent:** Friday,. December 01, 2017 8:58 AM
**To:** Argentieri, Julia P. (Chicago) <Julia.Argentieri@jacksonlewis.com>
**Cc:** jhoffmanlaw@gmail.com
**Subject:** Mary Madison case

I know the parties already have an electronic decision on the above matter, but we received the hard copy back for Kenco Logistics.

Could you please provide me with their new address?

I also received the hard copy back addressed to Mr. Hoffman (his old address) so I sent another hard copy to his new address.

Thank you,

April Cook, Paralegal Specialist to Judge Sellers and Judge Golden

Office of Administrative Law Judges

36 E. 7th Street, Suite 2525

Cincinnati, OH 45202

(513) 684-6016 (direct line)

(513) 684-3252 (main line)

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error, please immediately return it to the sender and delete it from your system. Thank you.

Exhibit B



U.S. DEPARTMENT OF LABOR
OFFICE OF ADMINISTRATIVE LAW JUDGES
36 E. 7TH STREET
CINCINNATI, OHIO 45202

OFFICIAL BUSINESS

Jordan Hoffman, Esq.
2711 E. New York Ave., Suite 205
Aurora, IL  60502

APPENDIX A

SECTION VII

IN THE MATTER OF:

MARY MADISON,

      COMPLAINANT,             ARB CASE NO. 18-018

      V.                    ALJ CASE NO. 2016-FDA-004

KENCO LOGISTICS,           DATE:  Jan. 19, 2018

      RESPONDENT.

BEFORE THE ADMINISTRATIVE REVIEW BOARD

NOTICE OF CORRECT ADDRESS:

ERRONEOUS ADDRESS:   Jordan TraVaille Hoffman, Esq.
                         11528 S. Halsted
                         Chicago, IL 60628

CORRECT ADDRESS:    Jordan TraVaille Hoffman, Esq.
                         2711 E. New York Ave., Suite 205
                         Aurora, IL 60502
                         (888) 958-4529

*Chan*



Case: 18-1800    Document: 23    Filed: 09/05/2018    Pages: 169

| | |
|---|---|
| To: | Ms. W.J. Walker |
| From: | Jordan Hoffman, Jordan TraVaille Hoffman, P.C. |
| Fax: | 8889584529 |
| Phone: | 888-958-4529 |
| | |
| Date: | 1/19/2018 |
| Subject: | Madison v. Kenco Logistics, ARB Case No. 18-018 |

Comments:  Dear Ms. Walker, please find my correct address per our conversation of yesterday.

APPENDIX A

SECTION VIII

January 8, 2018

Ms. Linda Yelton
Office of Administrative Law Judges
U.S. Department of Labor
36 E. 7th Street, Suite 2525
Cincinnati, OH 45202

Re:   Mary Madison v. Kenco Logistics
      ALJ Case No. 2016-FDA-00004
      ARB Case No. 2018-0018

Dear Ms. Yelton:

The Administrative Review Board has docketed an appeal of the above-referenced case. So that the Board's review may begin promptly, we would appreciate receiving the record at your earliest convenience. All materials should be sent to the Administrative Review Board, U.S. Department of Labor, 200 Constitution Avenue, N.W., Room N-5404, Washington, D.C. 20210.

If there are any problems or questions please contact the Board's Paralegal Specialists at 202-693-6200.

Very Truly Yours,

Janet Dunlop
General Counsel

cc: Yvonne Washington

APPENDIX A

SECTION IX

*18-018*

# UNITED STATES
## DEPARTMENT OF LABOR

In the Matter of :              )
                    )

   MARY MADISON,          )
                    )

      Complainant,        )

                    )

   v.                         )          Case No. 2016-FDA-4

                    )

   KENCO LOGISTICS          )

                    )

      Respondent.         )

*2011 DEC 26  P 2: 22*

## PETITION FOR REVIEW

**NOW COMES** the Complainant herein, **MARY MADISON** and for her Petition for

Review, she states as follows; **THAT:**

1.     The ALJ erred in granting the Respondent, KENCO's Motion for Summary Decision and

making the finding that there was no genuine issue of material fact as to whether Complainant's

protected activity was a contributing factor in her discharge in that he did not assess the

reasonableness of Complainant's belief that the Respondent engaged in unlawful conduct. *Chase

Brothers v. International Food Corp. 3 F. Supp. 3d 49*, citing, *Casalino v. New York State

Catholic Health Plan, Inc.,* 2012 WL 1079943 (S.D.N.Y. Mar. 30, 2012). More specifically, the

ALJ failed to consider that Complainant was the Hazard Analysis and Critical  Control Point

(HACCP) leader and as such had the responsibility for identifying any potential hazards and

remediating them and further that she was hired by Respondent as a Quality Engineer to make

the Mars-Manteno facility compliant with Regulations of the Food and Drug Administration

(FDA), the Food Drug and Cosmetic Act and the Food Modernization Safety Act (FSMA)  using

the KENCO Quality Management System (KQMS) that was based upon ISO (International

Standard Organization) documentation standards.

1

The ALJ further erred in failing to consider Complainant's evidence in which she stated that "to allow the issues relative to the sanitation conditions caused by ServiceMaster using contaminated cleaning utensils to go unaddressed and create a potential public health crisis would be a direct violation of relevant laws and would have made her negligent and in dereliction of her duties and subject to criminal prosecution and civil penalties for knowingly aiding in the adulteration of food."

2.    The ALJ erred in finding that Complainant failed to prove a pretext for the Respondent's adverse employment decision by stating that the only "smoking gun" evidence offered by Complainant was the fact the she was terminated after Walsh told her to "relax" her "standards." Specifically, the ALJ further erred in failing to consider Complainant's evidence in which she stated that on May 31, 2013 during a conversation with Walsh, he stated that "he did not believe that the facility could come into compliance and that the task was unachievable." The implication being that Walsh was not interested in bringing the Mars-Manteno facility into compliance and that he was resistant to any efforts by Complainant and anyone else to do so. The ALJ erred further in that he did not consider Complainant's evidence that during a conversation on June 24, 2013 in which she and Walsh were discussing the ramifications of the Mars-Manteno facility] failing to be compliant with the regulations and moreover that ServiceMaster did not understand the risk [of not being compliant], Walsh stated that "he would accept full responsibility for what was happening and that he was willing to take the risk." Moreover, Walsh attempted to assure Complainant that "Mars had no problem with the sanitation of the facility." A party's own affidavit, containing relevant information of which she has firsthand knowledge maybe self-serving, but is nonetheless competent to support or defeat a motion for summary decision. *In re Robert M. Armstrong.*

2

3. The ALJ erred failing to give appropriate weight to Complainant's evidence, i.e, affidavits provided by Complainant and her witnesses that rebutted Respondent's claims that "her communication was ineffective and hostile" and overly lengthy and that she "communicated outside of the chain of command," and that she was deficient in the knowledge of her job and in preparing documents such as a Business Continuity Plan, (BCP) and a "high level" summary that showed these were pretextual reasons for the Respondent's adverse actions taken against Complainant.

4. The ALJ erred in failing to carefully review and consider all of the evidence of actions that Complainant took which were in her "reasonable belief" the engagement in protected activities, including but not limited to the following issues that were reported to Respondent concerning: the improper billing of Respondent by ServiceMaster for work not being performed by it; ServiceMaster using unsanitary cleaning equipment and the attendant consequences; the failure of ServiceMaster to clean the facility; leaking dock doors at the Manteno-Mars facility; the deficiency with the ammonia alarm at the Respondent's facility and the possibility of ammonia spills and the need for exhaust fans at the facility to be wired; the need for a back-up generator; the deficiency with the Manteno-Mars evacuation procedures; molded pallets; security breaches at the facility; a variety of pest infestations and the failure of Walsh to participate in and allow other managers at the Manteno-Mars facility to conduct FDA and FSMA mandated HAACP meetings; the destruction room at the facility having open trucks full of food products creating a breeding ground for pests, including rodents, birds and bats flying into the warehouse; using a procedure involving a "BB" or pellet gun to eradicate flying pest that was potentially as harmful or more harmful as the pest themselves; that product that was to be destroyed was not ground up and was placed into landfills creating an environmental burden and hazard; sending out unground adulterated products to pig farmers going into the stream of commerce and potentially being eaten by humans and potentially causing a biohazard and Walsh's failure to remediate the destruction room.

3

5.    The ALJ erred in that he failed to give appropriate weight to the evidence presented by Complainant that she had asked Walsh of Respondent to provide her with Corrective and Preventative Actions (CAPA's), information that was necessary to prepare for an audit at least six times and that he did not offer to provide it to her until after Complainant's counterpart at Mars provided the information to her to facilitate the audit and at that point, Respondent used this as a basis to claim pretextually that she communicated outside of the chain of command when she in fact, was responding to an email sent from her counterpart at Mars and was acting in accordance with her responsibility as the HACCP leader at the facility.

6.    The ALJ erred by giving "short shrift" to Complainant's evidence and argument that the Performance Improvement Plan (PIP) did not adhere to Respondent's own policy guidelines and ISO 22000 as well as failing to take "public" or "judicial" notice of the standards for a PIP as promulgated by the Society for Human Resource Management (SHRM) as it did not relate to competencies for her position as a Quality Control Engineer and that no goals relative to her job as a Quality Engineer were established or given nor was there a follow up to the PIP.  Moreover, the ALJ did not address Complainant's evidence that suggested that the PIP raised issues that were never raised prior to the issue of Walsh asking Complainant to "relax her standards" nor did he address Complainant's evidence provided in Complainant's affidavits and those of her witnesses that the issues concerning the Business Continuity Plan and the Project Plan were not raised by the Respondent until formal charges were filed with the Department of Human Rights, the Department of Labor and other governmental agencies. Nor did the ALJ consider this evidence to view the purported deficiencies in her job performance and work product as alleged by Respondent as pretextual reasons for the adverse employment decisions taken against Complainant.

4

7.    The ALJ erred engaging in fact finding at the Summary Decision stage and indeed ascribed an intent from a communication in the MOU to ServiceMaster as suggested by Respondent that Complainant had threatened a vendor, ServiceMaster with litigation when in the context of the communication sent by Complainant, it is clear that she was speaking of the potential of litigation from the general public against Mars and KENCO for having allowed tainted product to be put into the stream of commerce from the Respondent's Mars-Manteno facility.

8.    The ALJ further erred in granting the Respondent's Motion for Summary Decision in that in applying the "clear and convincing" standard of evidence that Respondent would have taken the same adverse employment decision against Complainant, the ALJ did not properly apply the three-prong test articulated in the matter of *Robert M. Armstrong*, 2016 WL 5340237, including the failure to make a finding of [i] whether the existence and strength of any motive to retaliate on the part of [the Respondent's employees ] who were involved in the decision was present; and [ii] whether any evidence existed that the [Respondent] took similar actions against *employees who are not whistleblowers* (emphasis added) but who are otherwise similarly situated." *Robert M. Armstrong*, quoting, *Carr v. Social Security Admin.*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). *Accord Whitmore*, 680 F.3d at 1370-1375.

9.    The ALJ erred in that he failed to address the evidence of the temporal proximity between the Complainant's engagement in protected activity and the Respondent's adverse employment actions taken against her in that she was disciplined and she was subjected to continued harassment within two weeks of reporting that she was asked to relax her standards by Walsh. *Robert M. Armstrong*. The ALJ further erred on this point in that the Complainant need not prove causation at the summary decision stage by a preponderance, but that she only needed to provide evidence that raised an inference that her protected activity was a contributing factor in the Respondent's adverse employment decisions against her.

5

10.   The ALJ engaged in improper fact finding and failed to view evidence, i.e. affidavits provided by Complainant and her witnesses most favorable to Complainant and disregarded evidence that could allow a finding of pretext on the part of Respondent.

11.   The ALJ erred in that in making his decision to grant the Respondent's Motion for Summary Decision he relied on inadmissible affidavits from Paula Hise and Kelvin Walsh that did not comply with the Federal Rule of Civil Procedure, Rule 56 requirements in that these affidavits do not offer dates or authenticated documents to support them. And in the case of Hise nor are her statements based upon firsthand knowledge because she admits that she was not at the Mars-Manteno facility but rather was at Respondent's home office in Chattanooga, Tennessee and thus was not competent to testify as to what she claimed to have observed based upon firsthand knowledge of the day to day operations at the Kenco-Mars facility. In addition, these affidavits failed to produce any evidence that Walsh or Hise coached or mentored Complainant and indeed neither were they qualified to do so as they did not have the credentials or the requisite knowledge of the Food Modernization Safety Act (FSMA); the Food Drug and Cosmetics Act (FD&C Act) and their attendant regulations. Further the representations made in the affidavits provided by Respondent were rebutted by the allegations made in the affidavits provided by Complainant and her witnesses.

12.   The ALJ erred in his finding that Tracie Clifford was hired solely to help Complainant in that Clifford was a Director of Quality at Respondent prior to Complainant's employment and indeed that Complainant had her second interview with Clifford in April, 2013 before she was hired as a Quality Engineer by Respondent.

6

**WHEREFORE, MARY MADISON**, the Complainant request that this Honorable

Tribunal vacate the order entered by the ALJ in favor of the Respondent granting its Motion for

Summary Decision and remand the matter herein for hearing.

Respectfully submitted,
**MARY MADISON**

By: Jordan T. Hoffman, Her Attorney

Jordan T. Hoffman
ARDC # 6195896
2711 E. New York St., Suite 205
Aurora, IL 60502
(888) 958-4529
jthoffmanlaw@gmail.com

7

## CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on December 17, 2017, I submitted a copy of the foregoing Petition for Review via U.S. Mail to:

By: Jordan T. Hoffman, Her Attorney
Jordan T. Hoffman
ARDC # 6195896
2711 E. New York St., Suite 205
Aurora, IL 60502
(888) 958-4529
jthoffmanlaw@gmail.com

Administrative Review Board
U.S. Department of Labor
Office of the Assistant Secretary
Room: S5220
200 Constitution Avenue
Washington, D.C. 20210

Chief Administrative Law Judge
U.S. Dept. of Labor
Office of Administrative Law Judges
800 K Street, NW, Suite 400-North
Washington, DC 20001-8002

U.S. Department of Labor
Office of the Assistant Secretary
Occupational Safety and Health Administration
Room: S2315
200 Constitution Avenue
Washington, D.C. 20210

Jackson and Lewis
Counsel For Defendant Kenco
150 N. Michigan Ave.,
Suite 2500
Chicago, IL 60601

8

APPENDIX A

SECTION X

**U.S. Department of Labor**  Office of Administrative Law Judges
36 E 7th St , Suite 2525
Cincinnati, Ohio 45202

(513) 684-3252
(513) 684-6108 (FAX)



**Issue Date: 22 November 2017**

Case No.: 2016-FDA-00004

*In the Matter of:*

**MARY MADISON,**
    Complainant,

    v.

**KENCO LOGISTICS,**
    Respondent.

## DECISION AND ORDER GRANTING RESPONDENT'S MOTION FOR SUMMARY DECISION ON RECONSIDERATION, CANCELLING HEARING, AND DISMISSING CLAIM

This matter arises under the employee-protection provisions of § 402 of the Food, Drug, and Cosmetic Act, § 1012, as amended by the FDA Food Safety and Modernization Act, Section 402 of Public Law 111-353, 21 U.S.C. § 399d (hereinafter the "Act" or "FDA"). The regulations implementing the Act are at 20 C.F.R. Part 1987. The Act provides whistleblower-protection for employees of entities engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food. 21 U.S.C. § 399d (a).

### PROCEDURAL HISTORY

Mary Madison (the "Complainant") filed a complaint against Kenco Logistics (the "Respondent") on September 10, 2013, alleging that she was terminated in reprisal for raising food-safety concerns. On February 17, 2016, the Regional Supervisory Investigator of the Occupational Safety and Health Administration dismissed the Complainant's complaint. By letter dated March 21, 2016, the Complainant requested a hearing before an Administrative Law Judge. Thereafter, this case was assigned to the undersigned for hearing and decision.

This matter was previously scheduled for hearing on September 13, 2017, in Chicago, Illinois. By e-mail received on August 11, 2017, Kenco Logistics (the "Respondent") filed a Motion for Summary Decision ("Respondent's MSD"). The same day, also by e-mail, the Respondent filed a Motion to Extend the Deadline for Pre-Hearing Exchanges and Re-Set The Hearing Pending Ruling on Respondent's Motion for Summary Decision. On August 14, 2017, the Complainant filed a Motion to Strike and Objection to Evidence. On August 16, 2017, I issued an Order Denying Respondent's Motion for Summary Decision, as there was insufficient time for the Complainant to respond to, and for the undersigned to rule on, the merits of the

Respondent's motion prior to the hearing. Moreover, in the order dated August 16, 2017, I denied the Respondent's request to re-set the hearing date.

Thereafter, on August 18, 2017, the Complainant filed a Motion to Strike and Objection to Evidence and, on August 21, 2017, the Respondent filed a response.[1] Shortly thereafter, on August 23, 2017, the Respondent filed an Unopposed Motion for a Short Extension of the Hearing Dates. Moreover, on August 23, 2017, the Respondent requested reconsideration of my August 16, 2017, decision denying its Motion for Summary Decision. By Order dated September 23, 2017, I issued an Order continuing the hearing until December 11, 2017. On October 2, 2017, the Complainant filed a Response to Respondent's Motion for Summary Decision ("Complainant's Response").

## FACTUAL BACKGROUND AND ARGUMENTS OF THE PARTIES

The Respondent is a logistics company with corporate headquarters in Chattanooga, Tennessee. (Respondent's MSD at 3.) Beginning in April 2013, the Respondent managed the warehouse logistics services for a Mars warehouse located in Manteno, Illinois. (*Id.*) The Respondent hired the Complainant on May 13, 2013, and she worked there as a Quality Engineer for less than three months. (*Id.*; Dep. at 37.)

The Complainant alleges that the Respondent terminated her for reporting that there had been numerous complaints that the men's bathroom had feces and urine on the floor and that ServiceMaster, the service provider for the Respondent's facility in Manteno, did not properly clean the bathroom. (Complainant's Response at 9, 30.) According to the Complainant, the deficiencies in ServiceMaster's performance posed a serious risk to the health and safety of the Respondent's employees and to the public. (*Id.* at 10.) Moreover, the Complainant alleges that the Respondent sabotaged her efforts to bring the facility into compliance with the Act. (*Id.*) Finally, the Complainant asserts that she raised numerous issues with the management that corresponded to her role as Quality Engineer, and she emphasizes that failing to address those issues violated the Act and other health and safety laws. (*Id.* at 30.) The Complainant argues that

---

[1] In its Motion to Strike, counsel for the Complainant alleged that the Respondent acted in bad faith by relying on a deposition transcript from the Complainant's parallel lawsuit in federal district court. As discussed in the Order dated March 29, 2017, I granted the parties an extension of sixty (60) days to finish discovery and conduct the Complainant's deposition for both this case and the parallel case pending in federal district court, which involves similar facts. Counsel for the Complainant was aware that the Respondent was deposing the Complainant and was also aware that the discovery deadlines in both cases were aligned. Moreover, in the cover letter attached to its Amended Notice of Plaintiff's Deposition, the Respondent listed both this case number and the case number of the Complainant's case in federal district court and informed the Complainant that it "intends to take your deposition in the above-referenced matters. In addition to your pending federal lawsuit, this deposition will also cover claims at issue in your pending appeal with the Department of Labor." The record reveals that counsel for the Complainant was copied on the letter. The Respondent argues that it would be duplicative to depose the Complainant a second time in this matter, adding unnecessary cost to this litigation. The Respondent's argument has merit. As counsel for the Complainant knew about the deposition before it occurred and requiring as second deposition would cause undue delay and expense, counsel for the Complainant's motion to strike the deposition is **DENIED.** The Complainant's deposition and corresponding exhibits are admitted into the record.

2

she was subjected to retaliation and discrimination for doing her job, and that the Respondent's reasons for terminating her were pretext for such retaliation and discrimination.[2] (*Id.*)

The Respondent does not dispute that it is a covered entity under the Act. (Respondent's MSD at 10.) The Respondent also does not contest that it hired the Complainant to work as a Quality Engineer to bring its warehouse into compliance with applicable food-safety regulations. It argues that the Complainant never engaged in protected activity, however. Moreover, the Respondent asserts that she had a hostile and uncooperative attitude and that there were consistent problems with her work performance. (Respondent's MSD at 1-2.) According to the Respondent, after identifying performance problems in the Complainant's first two months of employment, it placed her on a performance improvement plan ("PIP"). (*Id.* at 2.) The Respondent asserts that she demonstrated no marked improvement in her work performance while on the PIP, and, therefore, it terminated her employment on August 9, 2013. (*Id.*) In the Respondent's view, the Complainant never reported an alleged violation of the Act, and therefore never engaged in protected activity. Moreover, the Respondent argues that the Complainant's identification of compliance issues was not a contributing factor in her termination. (*Id.* at 3.) Rather, the Respondent argues that it would have terminated the Complainant for her inability to work effectively with others even absent any alleged protected activity. (*Id.*)

## SUMMARY DECISION STANDARD

The standard for summary decision under the Rules of Practice and Procedure for Administrative Hearings Before the Office of Administrative Law Judges is similar to the standard that governs summary judgment in federal courts under Fed. R. Civ. P. 56. *Saporito v. Central Locating Services, Ltd.*, ARB No. 05-004, slip op. at 4 (Feb. 28, 2006). An administrative law judge "shall grant summary decision if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to summary decision as a matter of law. The judge should state on the record the reasons for granting or denying the motion." 29 C.F.R. § 18.72(a) (2015). A material fact is one whose existence affects the outcome of the case. *Reddy v. Medquist, Inc.*, ARB No. 04-123, slip op. at 4 (Sep. 30, 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party creates a genuine issue of fact by producing sufficient evidence to require a hearing to resolve the parties' differing versions. (*Id.*)

The party moving for summary judgment has the burden of establishing the "absence of evidence to support the nonmoving party's case." *Celotex v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The regulations provide that a party may accomplish this by citing to materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "[s]howing that the materials cited do not establish

---

[2] The Complainant also alleges that her supervisor, Kelvin Walsh, and the Respondent discriminated against her based on her race and sex and treated her differently from other similarly situated nonblack managers. That claim is not the subject of this litigation; rather, it is the subject of a parallel lawsuit filed by the Complainant in the U.S. District Court for the Central District of Illinois.

the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." 29 C.F.R. § 18.72(c)(i)-(ii) (2015).

Once the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. In deciding on the motion, I must view the evidence in the light most favorable to the non-moving party. *Lee v. Schneider Nat'l, Inc.*, ARB No. 02-102, slip op. at 2 (Aug. 23, 2003).

APPLICABLE LAW

In 2011, Congress amended the Food, Drug, and Cosmetic Act, 21 U.S.C. § 1021, through passage of the Food Safety and Modernization Act, a bill designed to comprehensively reform food safety laws. *See* Pub. L. No. 111-353, 124 Stat. 3885 (2011) (codified as amended at 21 U.S.C. § 301, *et seq.*). Section 1012 of the Food, Drug, and Cosmetic Act provides protection for an employee from retaliation because the employee has engaged in protected activity pertaining to a violation or alleged violation of the Food, Drug, and Cosmetic Act or any order, rule, regulation, standard, or ban under the Food, Drug, and Cosmetic Act. The provision of the Food Safety and Modernization Act relevant to this case provides that:

> No entity engaged in the manufacture, processing, packing, transporting, distribution, reception, holding, or importation of food may discharge an employee or otherwise discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because the employee, whether at the employee's initiative or in the ordinary course of the employee's duties (or any person acting pursuant to a request of the employee)-
>
>> (1) provided, caused to be provided, or is about to provide or cause to be provided to the employer, the Federal Government, or the attorney general of a State information relating to any violation of, or any act or omission the employee reasonably believes to be a violation of any provision of this Act [21 USCS §§ 301 et seq.] or any order, rule, regulation, standard, or ban under this Act [21 USCS §§ 301 et seq.], or any order, rule, regulation, standard, or ban under this Act [21 USCS §§ 301 et seq.];
>>
>> (2) testified or is about to testify in a proceeding concerning such violation;
>>
>> (3) assisted or participated or is about to assist or participate in such a proceeding; or
>>
>> (4) objected to, or refused to participate in, any activity, policy, practice, or assigned task that the employee (or other such person) reasonably believed to be in violation of any provision of this Act [21 USCS §§ 301 et seq.], or any order, rule, regulation, standard,

4

or ban under this Act [21 USCS §§ 301 et seq.].

21 U.S.C. § 399d(a).

The regulations implementing the Act provide that a "determination that a violation has occurred may be made only if the complainant has demonstrated by a preponderance of the evidence that protected activity was a contributing factor in the adverse action alleged in the complaint." 29 C.F.R. § 1987.109(a). A contributing factor is "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Williams v. Domino's Pizza*, ARB No. 09-092, slip op. at 6 (ARB Jan. 31, 2011); *Marano v. Dep't of Justice*, 2 F.3d 1137, 1140 (Fed. Cir. 1993). If the Complainant satisfies her burden, then the burden shifts to the Respondent to demonstrate "by clear and convincing evidence that it would have taken the same adverse action in the absence of any protected activity." 29 C.F.R. § 1987.109(b).

These are the same burdens set forth in the whistleblower provisions of the Wendell H. Ford Aviation Investment and Reform Act for the 21st Century ("AIR 21"). 49 U.S.C. § 42121(b)(2)(B)(iii) and (iv) (2014); *Palmer v. Canadian National Railway/Illinois Central Railroad Co.*, Case No. 16-035, slip op. at 39, n. 166 (ARB Sept. 30, 2016) (*en banc*). In order to prevail on her case, the Complainant must show by a preponderance of the evidence that she engaged in a protected activity, that the Respondent took an adverse action against her, and that her protected activity was a contributing factor in the adverse action. *Palmer, supra*, slip op. at 52. If the Complainant satisfies these elements, then the burden shifts to the Respondent to show by clear and convincing evidence that it would have taken the same adverse action regardless of the Complainant's protected activity. (*Id.*) Thus, under the Act, the Respondent can prevail if it demonstrates either: (1) that the Complainant cannot establish one of the three aforementioned elements; or (2) that it would have taken the same action it did regardless of her protected activity.

<u>Summary of the Relevant Evidence</u>

The Complainant testified by video deposition on May 24, 2017, and by continued deposition on June 16, 2017 (hereinafter "Dep."). The Respondent hired the Complainant to work as a Quality Engineer at its Mars warehouse in Manteno, Illinois. The Complainant testified that she interviewed with Paula Hise, Kenco's Vice President of Operations, and Kelvin Walsh, former General Manager of Kenco's Manteno facility, and received an offer the same day she interviewed. (Dep. at 33, 35-36; MSDX[3] B at 1; MSDX C at 1.) The Complainant agreed that her employment began on May 13, 2014, and ended on August 9, 2013. (Dep. at 37.)

At her deposition, the Complainant agreed that the Quality Engineer, as described in the second sentence of the job description, "works with the Kenco site and senior management, KMS best practices and customer quality to develop, implement and maintain best practices for meeting FDA regulatory requirements, key quality system processes, quality engineering methodologies, systems and practices to meet the operating system's continuous improvement

---

[3] "MSDX" refers to exhibits A-C that were attached to the Respondent's Motion for Summary Decision.

5

strategies," (RDX 3;[4] Dep. at 42.) She further agreed that the Quality Engineer position was a new position at the Respondent's Manteno location, and she was the only individual in that position. (Dep. at 42-45.) Moreover, the Complainant agreed that a major part of her role as the Quality Engineer was to identify things that needed to be remediated and create processes to help remediate them. (Dep. at 65.)

The Complainant testified that, to the best of her recollection, her position reported to the manager and "had a dotted line to corporate." (Dep. at 41.) She also testified that she reported to Ms. Hise. (Dep. at 33.) Later on during her deposition, she agreed that she reported to Kevin Walsh throughout her employment. (Dep. at 66.) On his declaration, Mr. Walsh testified that he hired the Complainant and directly supervised her during her employment. (MSDX B at 1.)

ServiceMaster was the Respondent's third-party cleaning vendor. On May 21, 2013, the Complainant wrote an e-mail to Brian Davis, Director of Procurement, with a copy to Kevin Moses, in which she stated that the "services that ServiceMaster" was providing were "less than acceptable." (Bate Stamp at 1622; MSDX B at 1742.) Her e-mail stated that she was scheduled to meet with ServiceMaster at 11:30 a.m. She then added: "There are ears that are listening with baited breath and to avoid conflict and ill will, my conversation was limited:)." (*Id.*) At her deposition, she explained that the main issue with ServiceMaster was that there was fecal matter in the bathroom, raising the possibility "that they would use the same mop from the fecal matter that they used to clean the bathroom and use that mop throughout the whole facility," which she stated caused "cross-contamination" and a public-health and safety issue. (Dep. at 91-93; Declaration of Mary Madison.)

Edith McCurry, former "HR Administrator assisting the HR/Office/Accounting Manager" for the Respondent's Manteno facility, also stated that an employee reported to her "that there was an infestation of flies in the men's bathroom." (Declaration of Edith McCurry).[5] In her opinion, the "infestation was an off shoot of the poor sanitation and exposed human waste in the men's bathroom." (*Id.*) Mr. Szplett also stated that "[e]mployees had been complaining about the sanitary conditions of the bathrooms" and the bathroom "consistently had feces on the floor of the men's bathroom." (Declaration of Leonard Szplett).

On May 21, 2013, the Complainant, Mr. Walsh, Mike Mazello and two people from ServiceMaster met to discuss the deficiencies in ServiceMaster's services. (Dep. at 89-90.) The Complainant agreed that she prepared and signed a Memorandum of Understanding ("MOU"), dated May 22, 2013, following her meeting with ServiceMaster on May 21, 2013. (RDX 5 at 1-2; Dep. at 135-137.) She agreed that she received a letter, dated May 24, 2013, written from Tim McGrath at ServiceMaster to the Complainant, regarding the MOU dated May 22, 2013. (Dep. at 137-139; RDX 5 at 3.) The letter stated the following:

---

[4] "RDX" refers to the Respondent's Deposition Exhibits, which were numbered, attached to, and referenced during the Complainant's depositions on May 24, 2017, and June 16, 2017.

[5] I note that the Declaration of Edith McCurry and the Declaration of Leonard Szplett contain many identical statements, which creates the appearance that they may have been drafted by counsel for the Complainant. While I have considered this factor in reviewing their declarations, I also note that both individuals signed their declarations under penalty of perjury.

This is in response to the MOU we received from you May 22. We thank you for meeting with us this week and pointing out your expectations regarding our housekeeping and sanitation services that ServiceMaster is providing for Kenco. It is now and always has been our desire and intention to work with you as partners and share the same concerns for your facility as you do. Since 1999 at the opening of your facility, we have been there trying to provide all the services that have been asked of us. We are proud of our record and reputation at Kenco and in our community at large and as we are aware that no business is perfect we are willing and desirous to correct any deficiencies that might on occasion arise if given the opportunity.

You currently receive on a daily basis a performance report filled out by the housekeepers that describe the task being performed and the frequency of these tasks. In addition I will include CLEANING DETAILS, HOUSEKEEPER/SANITIZER RESPONSIBILITIES, also a sample CLEANING QUALITY INDICATOR that we will perform monthly and return to you.

In response to our meeting, we have discussed the areas of concern with our employees and have assigned specific responsibilities to address the glass, the garbage cans and the dusting of the ledges in the hallways. Our supervisor has already washed the walls in the hallways and some of the marks do not remove without damaging the paint. I would suggest that the wall washing be added to the schedule on a quarterly basis. As for the darkness of the grout on the edges of the hallway floors I would ask for some time to work on that as is requires special tools and chemicals.

(Dep. at 137-139; RDX 5 at 3.)

On May 23, 2013, merely two days after the meeting with ServiceMaster, and one day after the date of the MOU, the Complainant sent a letter to Mr. Davis stating that it was her belief that ServiceMaster was "seriously not interested in retaining their contract with us," adding that "[a]s to date there has not been improvement in the areas discussed that could have been easily rectified." (RDX 5 at 5; Dep. at 142, 147.) She further added:

So!!!!!!!!!!!

When you come, it is my belief that you will not be 'skeered' to give them the real business of seeing the door!!

(RDX 5 at 5; Dep. at 145.) The Complainant testified that she wrote that because ServiceMaster had still not purchased a new bucket and mop. (Dep. at 142-144.) Mr. Davis responded by e-mail on May 23, 2013, writing:

7

> Easy now… give them an opportunity to improve and let's keep in
> mind they have a pretty long history with the site and that the
> previous 3PL may have operated with a different set of
> expectations; I'd like to keep the relationship in a "collaborative"
> mode more than a "confrontational" mode as much as possible.
> Let's make a solid effort to work with them to effect change first.

(RDX 5 at 4; Dep. at 144.)

　　　In response to Mr. Davis's directive, the Complainant sent Mr. Davis the following e-mail on May 23, 2013:

> YEP, GOTCHA…… Realizing their relationship it is a definite
> given that have to "PIP" time; but honestly It is my belief they are
> not going to make [it], as they have not done any differently. Easy
> fix things like clean the glass!!!!!!!!!!!!!! So we have to be ready
> when Mars come for their audit in the next 45-60 days and ............
> we are a little under the GUN!!

(RDX 5 at 4; Dep. at 148.) At her deposition, she explained that in referring to "PIP" in her e-mail, she meant that that ServiceMaster should have been put on a PIP. (Dep. at 149-152.)

　　　According to the Complainant, on June 24, 2013, Mr. Walsh told her to "relax" her "standards." (Dep. at 114; Declaration of Mary Madison.) She testified that the conversation with Mr. Walsh took place in Mr. Walsh's office and, in her view, "the gist of the conversation, at some point …was like I just need you – you know -- in short, to relax your standards." She stated that Mr. Walsh told her if there were "any problems or repercussions" he would take responsibility. She testified that she told him that she "could not do that… because they were not my standards to relax, it was a compliance issue." (Dep. at 339.) When asked which standards Mr. Walsh told her to "relax," she replied, "[t]he bathrooms" and later clarified that to mean "sanitation" and cleanliness of the facility. (Dep. at 108, 113, 341-342.) She testified that after she "reported" the conversation, "things became progressively worse." (Dep. at 337-338.)

　　　In her continued deposition, when questioned further about which standards Mr. Walsh told her to relax, the Complainant offered the following testimony:

> A: … The standards that I had always purported to be followed
> were those of compliance to the FDA standards, the Codex
> Alimentarius, state and public health law.
> Q: And so which of those was he telling you not to comply with?
> A: I'm not sure, but any one of them.
> Q: Well, what did he tell you then?
> A: He told me –
> Q: He told you you need to relax your standards with regard to
> what? How did that even come up in conversation?

8

> A: I don't know why he brought that up in conversation because it
> was really inappropriate.
> Q: And he did talk to you about relaxing your standards any other
> time besides that meeting?
> A: No. Because after that, I went straight to Ms. Paula and Kevin
> Moses and I told them that this is what occurred.
> Q: Right. And then you got a response from Paula. We already
> talked about that in the last deposition. You got a response from
> Paula as well?
> A: Right.

(Dep. at 342-344.) The Complainant testified that she interpreted the conversation with Mr.
Walsh as meaning that she was "supposed to not be either concerned—as concerned and/or
perhaps just turn a blind eye to the situation." (Dep. at 346.) She stated that she said, "No," when
asked whether Mr. Walsh ever again asked her to relax her standards. (*Id.*)

The Complainant testified that she complained to Mr. Moses, Ms. Hise, Ms. McCurry,
and Mr. Szplett about her conversation with Mr. Walsh. (Dep. at 114-115.) She stated that when
she told Ms. Hise about it, Ms. Hise told her that she "shouldn't be asked" to relax her standards.
(Dep. at 114-115.) She could not recall what Ms. McCurry and Mr. Szplett told her after she told
them about Mr. Walsh telling her to relax her standards. (*Id.*) She stated that she told Mr. Moses
that Mr. Walsh had asked her to relax her "standards and not follow the law." (Dep. at 107.) In
response, she stated that Mr. Moses said that he would "see what he could do" and he "tried to
schedule some meetings." (Dep. at 108.) She agreed that, thereafter, Mr. Moses scheduled
conference calls involving both of them and Mr. Walsh. (Dep. at 109.)

In his declaration, Mr. Walsh stated that while the Complainant "often complained about
ServiceMaster's cleaning services," at no time did he "perceive her to be complaining about a
violation of the Food Safety Modernization Act." (MSDX B at 2.) Mr. Walsh stated that he never
told the Complainant "not to follow the law." (MSDX B at 3.)

The Complainant further agreed that, on June 25, 2013, she received an e-mail from
Paula Hise, the Vice President of Operations, which stated the following:

> Mary, I just ran into Brian in the hallway. We had a quick chat
> about this. Before sending any documentation to ServiceMaster
> related to the outcomes of your pending meeting, let's run it by
> Ann first. It's always a good idea to have our legal counsel review
> any documentation. We are getting to a relatively serious point
> with the supplier.
>
> Kelvin and I also discussed the ten-day requirement on
> remediation. It may be that they won't be able to remediate every
> open item within ten days. Our expectation from them should be a
> written plan addressing our specific concerns with specific dates as
> to when each issue will be resolved, hopefully most within a ten-

9

> day period, but some items could take longer to remediate, and we
> need to be open to that possibility.

(RDX 5 at 7; Dep. at 160-161.)

The Complainant agreed that she responded to Ms. Hise's directive by writing the following e-mail:

> That's great a letter is being composed and it can be forwarded so
> that when we have the meeting it can be given out! We will then
> meet with them on Thursday afternoon and it is hopeful that a plan
> of action can be implemented. Not exactly sure what can't be
> cleaned in the ten (10) day time frame, as a good majority of it has
> been launched.

(RDX 5 at 6; Dep. at 162.)

Thereafter, the Complainant agreed that she received the following e-mail from Ms. Hise on June 26, 2013:

> Hi, Mary,
>
> We may have our wires crossed here. We assumed that you would
> draft a letter <u>after</u> your meeting with ServiceMaster to confirm the
> actions and timelines jointly agreed upon during the meeting, but
> before circulating the letter, please run it past Ann first.

(Dep. at 163; RDX 5 at 6.)

The Complainant testified that she drafted and sent a letter to Mr. McGrath at ServiceMaster on June 27, 2013, at the direction of Mr. Walsh. (RDX 5 at 13-14; Dep. at 163.) The letter included, *inter alia,* the following statement from the Complainant to ServiceMaster: "*Therefore, be it known as a matter of concern this continued egregious conduct is unacceptable and it must cease and desist immediately.*" (RDX 5 at 14; Dep. at 165) (emphasis in original). Moreover, she wrote, "As the goodwill and business reputation of Kenco/Mars can be adversely affected and damaged by not fulfilling the current quality mandates that can result in serious illness and even death, therefore, prompting unwarranted litigious exchanges." (RDX 5 at 14; Dep. at 165.) She explained that, in the letter, she "just drafted re-expectations about what was going on." (Dep. at 163.)

When asked if anyone reviewed the letter before she sent it to ServiceMaster, she replied, "I gave it to Kelvin." (Dep. at 164.) Again, when asked, "When you drafted this letter, before you actually sent it off to Timothy McGrath at ServiceMaster, did anybody at Kenco review it first, or did you provide it to people after you sent it?" the Complainant responded, "I'm not sure. I did whatever Kelvin told me to do in regards to this letter." When questioned further regarding whether she had anyone at Kenco review the letter, she replied, "I'm sure—I can't really say."

10

(Dep. at 166.) In her continued deposition, when asked, yet again, whether she gave it to anyone to review, she stated, "The only person that I probably would have shown it to would have been either Mr. Walsh or Mr. Moses, but I can't—I don't recall that detail of the situation." (Dep. at 308-310.)

In response to the Complainant's letter to ServiceMaster, Mr. Davis wrote to Mr. Walsh on the same day, June 27, 2013, and stated the following:

> Please see attached, and whatever you do please do not let Mary threaten the supplier with "litigious exchanges" again... The last thing we need is a lawsuit brought by overzealousness.

(RDX 5 at 11.) At her deposition, the Complainant explained that she "was just trying to get compliance with the mandates, and the reality of the situation is that if someone had gotten sick, it would have affected the goodwill of all the company..." (Dep. at 168.)

On the following day, June 28, 2013, Ms. Hise wrote the following e-mail to the Complainant:

> Hi Mary,
> Here would be my suggestion for closing this issue. I do not believe that any correspondence other than your MOU has been sent to Kenco to ServiceMaster documenting infractions. With that said, I believe you have a copy of the Kenco contract with ServiceMaster? If not, you can obtain one from Len, who should have a copy of it. I would suggest that you create a simple spreadsheet. Column A describes what services they are currently obligated to perform. Column B should be the services we want them to perform. Once you have that on paper, then let's the three of us get together for a quick call to review and make sure we're all in agreement. Then we can provide that document to ServiceMaster, and they can evaluate what any additional costs may be.
>
> Sound okay?

(RDX 5 at 17-18; Dep. at 170-171.)

The Complainant agreed that she sent a seven-paragraph e-mail to Ms. Hise on June 28, 2013, regarding the MOU with ServiceMaster. (RDX 5 at 16-17; Dep. at 172.) Consistent with that statement, Ms. Hise stated that on or about June 28, 2013, the Complainant sent her an e-mail "suggesting in part that she felt she had been asked to relax her standards." (MSDX C at 1.) Specifically, the e-mail reveals that the Complainant wrote, *inter alia*, "We are merely discussing basic health and sanitation rules and principles. The general populous of people here are in an at-risk class for communicable disease. The cleanliness of the restrooms, garbage cans, and eating areas are below par. In addition, Kelvin stated that the standards should be relaxed relating to

11

what is required for compliance as that is not Mars focus." (RDX 5 at 16.) Moreover, the Complainant wrote that her "concern progressively arose out of being asked to relax" her "standards to accommodate the current state of affairs and to quintessentially document things in fashion that will achieve these results." (*Id.*) She added, "First, this has taken me aback that it would be asked of me to do such a thing when it is so simple to just do the correct thing, the correct way, the first time." (*Id.*)

Ms. Hise stated that she "immediately" responded to the Complainant's concerns and explained to the Complainant that she "was not being asked to relax her standards; that she was being asked to adjust her approach and work in a more collaborative and team-oriented matter." (*Id.*) Ms. Hise also declared that she spoke with Mr. Walsh and "confirmed that on no occasion had Walsh asked Madison to relax her standards related to legal compliance." (*Id.* at 2.) The record reveals that Ms. Hise replied to the Complainant on Sunday, June 30, 2013, via e-mail, and wrote the following:

> Mary,
>
> I understand and appreciate your position and am grateful for your passion on the subject—truly. I firmly believe we are all (you, me, Brian Davis, Kelvin, the site management staff) on the same team and we have the same goals and objectives, although the way we pursue those goals and objectives might be a bit different. Further, everyone is coming from different perspectives –Brian from a risk management and supplier management perspective, Kelvin and I from an operational perspective, you from the Quality perspective. I'm confident we will get to where we need to be, but what we have to do is work together as a team, understanding that as GM, Kelvin is ultimately responsible for the overall facility operations, feel confident that we can voice our different opinions to one another, but then move forward together to execute the agreed upon direction. *No one is, or should be asking you, to relax your standards on cleanliness.* All we are asking is that we modify the approach with which we work with ServiceMaster. Part of our guiding principles is that we "Cultivate mutually beneficial partnerships with customers, associates and suppliers". So, we want to protect the supplier relationship if we can.
>
> We are both so busy—If you are still concerned about our direction in this area, then let's me, you and Kelvin get on the phone to discuss. We can accomplish in a short call much more than we can accomplish sending lengthy e-mails.

(RDX 5 at 15-16; Dep. at 173-174.)

The record further shows that Ms. Hise wrote an e-mail to Mr. Walsh on June 30, 2013, and stated, "I'm just keeping you in the loop. All I can say is that we need to keep an eye on that

90[-]day introductory period window. I hate to go there this early in the game, but man, she is wearing us out... (RDX 5 at 15; Dep. at 174.) Thereafter, on the same day, Mr. Walsh replied, "All I can say is I'll keep trying with her. She is really too valuable for us not to try. It's a good thing I have thick skin, LOL." (RDX 5 at 15.) At her deposition, when asked about this e-mail exchange, the Complainant testified that Mr. Walsh "didn't try" with her and his e-mail was "a farce." (Dep. at 175-177.)

The record reveals that Mr. Davis, Director of Procurement, e-mailed the Complainant on June 28, 2013, and noted that if it was necessary to change the level of service or performance expectations of ServiceMaster, or if it was deemed necessary to better define existing requirements, "we certainly can renegotiate the agreement." (RDX 5 at 20.) He added, "Once you have the changes to the agreement defined, and Kelvin and Paula are in agreement, please let me know and I will approach the supplier with them and renegotiate the agreement as needed." (*Id.*)

The Complainant testified that, during a meeting with ServiceMaster at some point in July, Mr. Walsh was allegedly berating her, hollering, and telling her that she was not giving Service Master a chance. (Dep. at 85, 90, 137, 312, 320.) She stated that Mr. Walsh told her that she "needed to outline" where Service Master was "deficient and give them some information to help them not be deficient and cure their deficiencies," which she stated that she had already done when she gave them a memorandum of understanding. (Dep. at 91.) The Complainant could not recall what Mr. Walsh said to her during the meeting, but she reiterated that he was "hollering" at her. (Dep. at 93.) The Complainant later testified that Mr. Walsh yelled at her in two meetings. (Dep. at 88-89.) However, in her continued deposition, when asked whether the July meeting with Service Master was the *only* time Mr. Walsh yelled at her, she replied, "That is correct." (Dep. at 320.) Ms. McCurry stated that she witnessed Mr. Walsh berate the Complainant at a HAACP meeting. (Declaration of Edith McCurry). She also alleged that the "whole situation of Mary all of the sudden being inept came less than two (2) weeks after Mary had reported Kelvin asking her to relax her standards and about billing for work ServiceMaster was not performing, as well as, falsifying sanitation logs." (*Id.*)

On July 8, 2013, Mr. Walsh gave the Complainant a Performance Improvement Plan ("PIP"). (RDX 4; MSDX B at 3.) On July 8 and July 9, Mr. Walsh and Len Szplett met with the Complainant to discuss the PIP. (Dep. at 205.) Mr. Szplett agreed that he was present at the meeting on July 8, 2013, when Mr. Walsh presented the Complainant with her PIP, but he was not aware of the purpose of the meeting. (Declaration of Leonard Szplett). The PIP identified the following job responsibilities and priorities that the Complainant needed to improve: (1) working collaboratively with fellow site managers; (2) demonstrating commitment with compassion; (3) communication with leadership; and (4) working outside of outlined job responsibilities. (RDX 4 at 1.) Moreover, the PIP identified the following five related competencies that the Complainant needed to improve: (1) effective communication; (2) leading of others; (3) time management; (4) interpersonal skills; and (5) project management. (RDX 4 at 2-3.) The PIP stated that a "follow up discussion" would be scheduled once the Complainant completed her "personal development plan," which needed to be presented to her manager within ten days of the date of the PIP. (RDX 4 at 4.) Moreover, the PIP warned the Complainant that the "required improvements must be made to the satisfaction of your manager within 30 days," and warned that if they were not made

13

within the allotted timeframe, the Complainant would be "subject to further disciplinary action, up to and including termination." (*Id.*) The Complainant, Mr. Walsh, and Ms. Hise all signed the PIP. (RDX 4.)

The Complainant agreed that she provided a written response to the PIP. (Dep. at 214; RDX 7.) According to Mr. Walsh, the Complainant's response to the PIP demonstrated her "inability to understand the problems we were having with her employment and in the 30[-] day period following the PIP, she did not improve." (MSDX B at 3.) Although the Complainant testified that Mr. Walsh "never offered" her "any strategy or any assistance to accomplish" what was outlined in the PIP, she agreed that he met with her twice to discuss the PIP. (Dep. at 203, 205, 213-214.) The Complainant further agreed that she provided a written response to the PIP, which she sent to Mr. Walsh, Ms. Hise, and Mr. Szplett. (Dep. at 214; RDX 7.) In her opinion, being placed on the PIP was "a tool that was used for an adverse employment decision." (Dep. at 215.) When asked whether she was an at-will employee and whether she knew what that meant, she replied, "Yes, uh-huh." (Dep. at 228.)

Mr. Szplett stated that the Complainant did not agree with what was written on her PIP and affirmed that in writing on her PIP. (Declaration of Leonard Szplett). The Complainant alleged that the PIP was "unlawful" because it was not consistent with the Respondent's policies and procedures. (Dep. at 234.) She thought it should have been "set up" like her Quality Engineer job description. (Dep. at 230-231; RDX 8.) She added that the job description had a "specific styling" that included a "document number," "title," and "date of the person who authored it... ." (Dep. at 231-232.) She added that it was her belief that the Respondent had a "progressive discipline policy," which required it to "identify the areas of concern" and then "come up with some type of remediation plan." (Dep. at 202-203.) She also testified that she thought the policy required establishing benchmarks and meetings, and she claimed that Mr. Walsh "never offered" her "any strategy or any assistance to accomplish" what was outlined in the PIP. (Dep. at 203, 214.) She testified that she did not know of anyone else who received a PIP, and, therefore, was not aware of anyone else who received a PIP that was different from hers. (Dep. at 238.)

After the Complainant was placed on the PIP, she e-mailed Mr. Matthew Chick and Tari Hart of Mars regarding an audit report. Thereafter, Mr. Walsh responded to the Complainant with the following e-mail:

> Mary,
>
> As covered during your performance review, you need to engage in dialogue with your follow site managers: specifically your site GM. If asked, I could have provided you detailed answers to your inquiries below. By going directly to the customer, it gives an appearance that Kenco does not have an understanding of the business. And/or it raises questions as to what measures may be lacking. In addition, it is Kenco's responsibility to ensure we are utilizing the resources provided by MARS. In final, to question the

> customer that their QA manual is dated was completely inappropriate.
>
> Going forward and until further notice, I need you to forward any requests you have for MARS to me first. I will then provide disposition.
>
> Your cooperation in this matter is expected.

(Dep. at 245-246; RDX 9.) When asked if she did not understand that her PIP set forth that she should not be communicating with outside vendors, she testified that she did not know that she was not supposed to communicate directly with Mars because Mars was not an outside vendor. (Dep. at 253-254.) She testified that she thought that she had permission from Mr. Walsh to respond directly to Mr. Chick. (Dep. at 256.) However, she agreed that she had never communicated with Mr. Chick before. (*Id.*) She testified that she repeatedly asked Mr. Walsh for information that she needed in order to remediate deficiencies and prepare for an impending audit. (Dep. at 121-123.) She alleged that there was a conspiracy between Tracie Clifford and Mr. Walsh and that Mr. Walsh was "intentionally and willfully withholding" information that she needed from the 2012 audit. (Dep. at 126-131, 265.)

The Complainant denied that her PIP was in place for thirty days, but agreed that she was given the PIP on July 8, and terminated on August 9. (Dep. at 241-242.) When asked, "Is there anything as you sit here today specifically that you can state that you did to change any of the behavior—the performance deficiencies that were identified in the performance improvement plan?" the Complainant replied, "I told you that I tried. Whatever it was, I told you I couldn't give you any specifics." (Dep. at 271.) The Complainant stated that she did not ask any questions when she was terminated. (Dep. at 243.) In her opinion, being placed on a PIP, being terminated, and Mr. Walsh "hollering" at her were adverse actions that she suffered after Mr. Walsh told her to relax her standards. (Dep. at 347.)

Mr. Szplett stated that after terminating the Complainant, Mr. Walsh "said that he was glad that 'the educated nigger bitch from Chicago was gone, so she could stop stirring up trouble down here.'" (Declaration of Leonard Szplett). The Complainant also testified that after she met with Mr. Szplett and Mr. Walsh, Mr. Szplett told her that Mr. Walsh referred to her "as some type of crazy black bitch or something like that." (Dep. at 84.) She stated that she learned of this comment after her termination. (*Id.*) The Complaint could not identify any other racially insensitive or derogatory comments made by Mr. Walsh. (Dep. at 85.)

Mr. Walsh stated that the Complainant was discharged three months after she was hired because of his "challenges" with her, including her "continued inability to communicate effectively or accept constructive criticism about her communication style, which alienated colleagues and outside vendors." (MSDX B at 3.) Moreover, he stated that she was a "time drain" and her "work product" was ineffective. (*Id.*)

Ms. Hise stated that she observed the Complainant's performance, communicated with the Complainant via phone and e-mail, and, on several occasions, assisted with providing

15

feedback and guidance regarding the Complainant's work. (MSDX C at 1.) She declared that on "several occasions," the Complainant sent her "unnecessarily lengthy emails that were not user friendly," and specifically cited an occasion when the Complainant sent her a 499 line-item project-time, and another when the Complainant forwarded her the pages of the regulations rather than providing a concise analysis of them. (MSDX C at 2.) Ms. Hise stated that she discussed the Complainant's performance problems with Mr. Walsh "throughout" the Complainant's "brief employment, including the ongoing performance issues that existed after" the Complainant received the PIP. (MSDX C at 2.) She added that she and Mr. Walsh, together, made the decision to terminate the Complainant. (*Id.*)

## Summary Decision Analysis

### I. PROTECTED ACTIVITY

The Respondent argues in its motion for summary decision that the record fails to create a triable issue of fact regarding whether the Complainant engaged in protected activity under the Act. The gist of the Respondent's argument is that although the Complainant may have complained, her complaints were not understood to be complaints that it was in violation of the Act. Mr. Walsh stated that while the Complainant "often complained about ServiceMaster's cleaning services, at no time during her employment" did he "perceive her to be complaining about a violation of the Food Safety Modernization Act." (MSDX B at 2.)

Although Mr. Walsh did not consider the Complainant's complaints to be violations of the Act, his perception of the nature of the complaints is not dispositive. Indeed, the Complainant did not need to establish an actual violation; her belief that a violation had occurred needed only to be subjectively and objectively reasonable.

The Complainant alleges that she brought to Mr. Walsh's attention deficiencies in ServiceMaster's cleaning services, particularly ServiceMaster's deficiency in cleaning the men's bathroom at the Respondent's facility. (Complainant's Response at 30). The record reveals that on May 21, 2013, the Complainant wrote an e-mail to Brian Davis, Director of Procurement, with a copy to Kevin Moses, in which she stated that the "services that ServiceMaster" was providing were "less than acceptable." (MSDX B at 1742.) At her deposition, she explained that, in her opinion, the same mop being used in the bathroom was being used to clean the Respondent's facility, which created "cross-contamination" and a public health and safety issue. (Dep. at 91-93; Declaration of Mary Madison.) Ms. McCurry and Mr. Szplett also stated that employees had complained to them that there were sanitation problems in the men's bathroom. (Declaration of Edith McCurry; Declaration of Leonard Szplett.)

I find that the record is such that it creates a genuine issue of material fact regarding whether the Complainant subjectively believed that the conditions in the men's room constituted a violation of the Act, whether such belief was objectively reasonable, and whether she engaged in protected activity by complaining about this to Respondent.

II. ADVERSE ACTIONS AGAINST THE COMPLAINANT

The record reveals that the Respondent placed the Complainant on a PIP on July 8, 2013, and terminated her on August 9, 2013. Therefore, I find that there is sufficient evidence on this issue to withstand a motion for summary decision.

III. THE COMPLAINANT'S PROTECTED ACTIVITY WAS NOT A CONTRIBUTING FACTOR IN THE RESPONDENT'S DECISION TO TERMINATE HER

Although there is sufficient evidence in the materials presented to demonstrate an issue for hearing regarding whether the Complainant engaged in protected activity and whether the Respondent took adverse personnel actions against her, the evidence must also be sufficient to create a triable issue as to whether her protected activity contributed to her termination. As made clear by the Board in *Palmer, supra,* the first step of analysis in a case of retaliatory dismissal under the STAA "involves answering a question about what happened: did the employee's protected activity play a role, any role, in the adverse action?" *Palmer, supra,* at 52. The Board also made clear that on this question, the Complainant has the burden of proof to persuade the administrative law judge "based on a review of all the relevant, admissible evidence, that it is more likely than not that the employee's protected activity was a contributing factor in the employer's adverse action."

The ARB has described a contributing factor as "any factor which, alone or in connection with other factors, tends to affect in any way the outcome of the decision." *Sievers v. Alaska Airlines, Inc.,* ARB No. 05-109, ALJ No. 2004-AIR-028, slip op. at 4 (ARB Jan. 30, 2008). The Complainant can succeed by providing either direct or indirect proof of contribution. (*Id.*) Direct evidence is evidence that conclusively links the protected activity and the adverse action. (*Id.* at 4-5.) Alternatively, the Complainant may provide circumstantial evidence by proving by a preponderance of the evidence that retaliation was the true reason for terminating her employment. For example, the Complainant may show that the Respondent's proffered reason for termination was not the true reason, but instead "pretext." *Riess v. Nucor Corp.,* ARB 08-137, 2008-STA-011, slip op. at 6 (ARB Nov. 30, 2010). If the Complainant proves pretext, it may be inferred that her protected activity contributed to the termination. (*Id.*)

Under the first approach, the Complainant must produce evidence that directly links his protected activities and termination. The ARB has described direct evidence as "smoking gun" evidence that "conclusively links the protected activity and the adverse action and does not rely on inference." *Williams v. Domino's Pizza,* ARB No. 09-092, slip op. at 6 (ARB Jan. 31, 2011).

The only direct, or "smoking gun" evidence the Complainant offers is the fact that she was terminated after Mr. Walsh allegedly told her to "relax" her "standards" on June 24, 2013, meaning her bathroom and sanitation standards, as they related to the Respondent's contract with ServiceMaster. (Dep. at 108, 113-114,337-339, 341-342; Declaration of Mary Madison.) Specifically, she stated that after that alleged conversation with Mr. Walsh, "things became progressively worse." (Dep. at 337-338.)

17

Even assuming that the Complainant was told "to relax her standards," however, the statement must be viewed in context. The evidence of record reveals that the Respondent took the Complainant's sanitation complaints seriously and took fairly quick action. After the Complainant told Mr. Davis and Kevin Moses that ServiceMaster's services were "less than acceptable," the Complainant, Mr. Walsh, and Mr. Mazello met with two people from ServiceMaster on May 21, 2013, to discuss the deficiencies in ServiceMaster's services. (Dep. at 89-90.) After that meeting, the Complainant sent ServiceMaster a MOU the next day, May 22, 2013.

Thereafter, the evidence demonstrates that the Complainant became impatient with ServiceMaster and sought to impose her own time frame on remediation. On May 23, 2013, merely two days after the meeting with ServiceMaster, and one day after the date of the MOU, the Complainant sent a letter to Mr. Davis stating that it was her belief that ServiceMaster was "seriously not interested in retaining their contract with us," adding that "[a]s to date there has not been improvement in the areas discussed that could have been easily rectified." (RDX 5 at 5; Dep. at 142, 147.)

In sum, the Complainant appears to have had the opinion that ServiceMaster was not acting to remediate the problems it had acknowledged and agreed to rectify. Understandably, her approach did not go over well with management. The evidence reveals that Mr. Davis responded to the Complainant, and stated that it was necessary to give ServiceMaster an opportunity to improve, that the vendor had a long history with the Respondent, that he wanted to keep the relationship "collaborative," and that he wanted to "make a solid effort to work with them to effect change first." (RDX 5 at 4; Dep. at 144.) In response, the Complainant stated that it was her "belief they are not going to make [any changes], as they have not done any differently." (RDX 5 at 4; Dep. at 148.) The communication between the Complainant and Mr. Davis demonstrates that Mr. Davis was taking the Complainant's sanitation complaints seriously, but he wanted the Complainant to work collaboratively with ServiceMaster and give ServiceMaster the opportunity to correct its deficiencies. It does not show that the complaints, themselves, had caused any negative reaction, or that the Respondent was not interested in hearing them.

On May 24, 2013, Tim McGrath from ServiceMaster responded to the MOU, in writing, with steps it was taking to improve its services. The letter emphasized that ServiceMaster had been working with the Respondent since 1999, demonstrating the longstanding relationship between the two entities. (RDX 5 at 3.) Moreover, he stated that he had discussed the Complainant's concerns with his employees, assigned specific responsibilities to staff to address those concerns, and made suggestions for future quarterly cleaning. (*Id.*) Once again, this evidence demonstrates that ServiceMaster was trying to work with the Complainant, and the Respondent, to address and remedy the Complainant's concerns regarding sanitation.

The record also reveals that Ms. Hise was concerned with the Complainant's tone, approach, and communication style, rather than her message, and never deterred the Complainant from attempting to correct the deficiencies in ServiceMaster's services. In fact, Ms. Hise acknowledged that the Respondent was "getting to a relatively serious point with the supplier" and, on two occasions, specifically requested that the Complainant send outgoing communications to legal counsel prior to sending them to ServiceMaster. (RDX 5 at 6-77; Dep.

18

at 160-161, 163.) Moreover, on June 28, 2013, Ms. Hise e-mailed the Complainant and provided suggestions for how to manage the relationship with ServiceMaster. (RDX 5 at 17-18; Dep. at 170-171.) She specifically asked the Complainant to review the Respondent's contract with ServiceMaster and create a spreadsheet that included one column identifying the services ServiceMaster was obligated to perform under the contract, and another column identifying the desired services. Ms. Hise stated that once the Complainant did that, she and Mr. Walsh would meet with the Complainant to "review" it and make sure they were "all in agreement" before providing the document to ServiceMaster. Once that was done, she explained, ServiceMaster could evaluate and identify any additional costs. (RDX 5 at 17-18; Dep. at 170-171.) Ms. Hise's actions, as evidenced by her e-mail communications with the Complainant, demonstrate that she was taking the Complainant's complaints seriously and she wanted to remedy ServiceMaster's deficiencies in a way that did not violate any existing agreements. Moreover, it is evident that she wanted the Complainant to work collaboratively with her and with Mr. Walsh, to ensure that everyone was in agreement regarding how best to move forward.

Thereafter, on June 28, 2013, the Complainant e-mailed Ms. Hise and stated, in part, that she felt that she had been asked to relax her standards. (RDX 5 at 16-17; Dep. at 172; MSDX C at 1.) Significantly, Ms. Hise responded directly to the Complainant's concerns and explained "that she was not being asked to relax her standards; that she was being asked to adjust her approach and work in a more collaborative and team-oriented matter." (*Id.*) Ms. Hise also declared that she spoke with Mr. Walsh and "confirmed that on no occasion had Walsh asked Madison to relax her standards related to legal compliance." (*Id.* at 2.) Mr. Walsh stated that at "no time" did he tell the Complainant "not to follow the law." (MSDX B at 3.)

For purposes of summary decision, which grants to the non-moving party the benefits of reasonable inferences, it will be assumed that that Mr. Walsh did tell the Complainant to "relax her standards." However, these words cannot be judged out of context. Clearly, the Respondent took steps to make clear to the Complainant that she was not being told to overlook violations of the Act. Ms. Hise told the Complainant, via e-mail, "No one is, or should be asking you, to relax your standards on cleanliness. All we are asking is that we modify the approach with which we work with ServiceMaster. Part of our guiding principles is that we 'Cultivate mutually beneficial partnerships with customers, associates and suppliers.' So, we want to protect the supplier relationship if we can." (RDX 5 at 15-16; Dep. at 173-174.)

In sum, even if the Complainant subjectively thought that Mr. Walsh told her to relax her legal standards when his words were first spoken, the evidence of records is rather conclusive that the Respondent took steps to clarify its position, and that its position was not to ignore the law, but seek to work with ServiceMaster in the most effective way to bring its facility into compliance. Ms. Hise's e-mails and responses, the authenticity of which is not seriously challenged, demonstrate that she appreciated the Complainant's complaints and concerns about ServiceMaster, and that nobody was suggesting that she relax her standards, in the sense that she was being asked to look the other way. Ms. Hise merely told the Complainant that she wanted her to have a collaborative and team-oriented approach to resolving the problem.

The evidence further shows that Mr. Davis, the Director of Procurement, was working with the Complainant to determine whether it was necessary to change the Respondent's existing agreement with ServiceMaster. Mr. Davis was concerned that changing the level of service that ServiceMaster was providing might require renegotiating the agreement. By e-mail dated June 28, 2013, he wrote to the Complainant that "we certainly can renegotiate the agreement." (RDX 5 at 20.) His concerns were entirely legitimate; he simply asked the Complainant to define the needed changes and ensure that Mr. Walsh and Ms. Hise agreed with those proposed changes. After that, he stated, he would "approach the supplier" and "renegotiate the agreement as needed." (*Id.*) Thus, contrary to the Complainant's allegation that she was asked to improperly relax her standards as shorthand for ignoring the law, the evidence is unrefuted that the Respondent was taking her concerns seriously and offering to renegotiate the contract with ServiceMaster to ensure its compliance under the Act.

On July 8, 2013, Mr. Walsh gave the Complainant a PIP, which warned her of possible termination if her performance did not improve. The PIP outlined deficiencies in the Complainant's performance and highlighted areas of necessary improvement, including communicating effectively, working with others, managing time, and improving interpersonal skills. (RDX 4.) Even despite the challenges the he was having with the Complainant, the evidence reveals that Mr. Walsh was trying to give her an opportunity to improve. In an e-mail dated June 30, 2013, written before the Complainant was placed on a PIP, but after Ms. Hise suggested that they keep an eye on the "90[-] day introductory period window," Mr. Walsh told Ms. Hise that he would "keep trying with her," and he stated that the Complainant was "really too valuable for us not to try." (RDX 5 at 15.) Thus, even despite any frustrations that Mr. Walsh had with the Complainant, it appears as though he demonstrated a willingness to work with her to ensure the Respondent's compliance under the Act.

Significantly, while the PIP mentioned ServiceMaster, it did so in the context of the Complainant's communication style. (RDX 4.) When the Complainant failed to improve her performance thirty days after she was placed on the PIP, she was terminated. There is no evidence, either direct or circumstantial, to show that the Complainant's protected activity contributed to the Respondent's decision to terminate her. Rather, the evidence shows that the Respondent took the Complainant's concerns about sanitation seriously and made conscious efforts to work with its cleaning vendor to address and remedy those concerns.

In sum, the only compelling evidence the Complainant has offered in support of her claim that her alleged protected activity contributed to her termination is Mr. Walsh's statement telling her to relax her standards. However, viewed in context, the record overwhelmingly refutes the meaning that the Complainant attempts to give to these few words: that she was being asked to overlook violations of the Act. Rather, the evidence supports, and the Complainant has failed to produce any evidence to significantly challenge, the conclusion that the Respondent took her safety complaints seriously and was working to address them in a manner that it thought the most effective with its service provider. To the extent that she relies on these words to buttress her case of retaliatory dismissal, I find that she had not produced any evidence to successfully withstand the evidence the Respondent has produced, which demonstrates that she was not being told to overlook safety concerns, and those safety concerns that she communicated were dealt with seriously.

Moreover, I find that there is a paucity of evidence other than these words to support her claim. Animus is one form of circumstantial evidence "[R]idicule, openly hostile actions or threatening statements," may serve as circumstantial evidence of retaliation. *Timmons v. Mattingly Testing Services,* 1995-ERA-00040 (ARB June 21, 1996.) In this regard, the statements attributed to Walsh by others [6] are extremely reprehensible. If true, these statements undoubtedly demonstrate racial animus. However, there is no evidence suggesting that his animus was related to the Complainant's FDA complaints or her protected activities under the Act.

### IV. THE RESPONDENT HAS PROVEN THAT EVEN IF THE COMPLAINANT HAD NOT ENGAGED IN PROTECTED ACTIVITY, IT WOULD HAVE TAKEN THE SAME ADVERSE ACTION AGAINST HER

Even assuming, *arguendo*, that the Complainant could demonstrate by a preponderance of the evidence that her protected activity contributed to the Respondent's decision to terminate her, the Respondent has presented a compelling body of evidence showing that it would have placed the Complainant on a PIP and terminated her even if she had not engaged in protected activity. 29 C.F.R. § 1987.109(b).[7]

On the record before me, although the Complainant has testified that she tried to improve her performance and change her behavior, the evidence demonstrates that she was not satisfactorily performing her job duties. While the Complainant is entitled to reasonable inferences in her favor, she is not entitled to all possible suggestions or speculations in her favor. I do note that Edith McCurry and Leonard Szplett stated that they had never seen the Complainant display an unprofessional attitude and that she was "knowledgeable, competent, even toned, easy to work with and a team player." (Declaration of Leonard Szplett; Declaration of Edith McCurry). While I take their declarations to be their own genuinely held beliefs, and consistent with their own experience, the Complainant's written communications reveal that her tone was not always even. The documents of record show that the Complainant's communication style was often less than diplomatic, if not scolding, in tone, that she had difficulty performing the functions of her job even after receiving guidance and templates from supervisors, and that she did not follow directives from senior management.

To illustrate, the evidence reveals that the Complainant failed to follow Ms. Hise's directive to have legal counsel review external communications prior to sending them to ServiceMaster. Twice, on June 25, 2013 and June 26, 2013, Ms. Hise wrote to the Complainant

---

[6] The record contains a statement by Mr. Szplett, in which he stated that after terminating the Complainant, Mr. Walsh "said that he was glad that 'the educated nigger bitch from Chicago was gone, so she could stop stirring up trouble down here.'" (Declaration of Leonard Szplett). The Complainant also reported that Mr. Szplett told her that Mr. Walsh said something to that effect. (Dep. at 84.)

[77] As outlined previously, the Board has made clear the Complainant must show by a preponderance of the evidence that her protected activity was a contributing factor in the adverse action. *Palmer, supra,* slip op. at 52. If the Complainant satisfies this element, then the burden shifts to the Respondent to show by clear and convincing evidence that it would have taken the same adverse action regardless of the Complainant's protected activity. (*Id.*)

and specifically told her to have legal counsel review any outgoing communications related to ServiceMaster. Specifically, on June 25, 2013, Ms. Hise e-mailed the Complainant and stated, "Before sending any documentation to ServiceMaster related to the outcomes of your pending meeting, let's run it by Ann first. It's always a good idea to have our legal counsel review any documentation. We are getting to a relatively serious point with the supplier." (RDX 5 at 7; Dep. at 160-161.) Thereafter, on June 26, 2013, Ms. Hise sent the Complainant another e-mail stating that it was her impression that the Complainant was going to draft a letter after the scheduled meeting with ServiceMaster "to confirm the actions and timelines jointly agreed upon during the meeting," but, she asked the Complainant to "please" "run" the letter "past Ann first." (Dep. at 163; RDX 5 at 6.) Thus, the evidence clearly shows that on two occasions, Ms. Hise directed the Complainant to have legal counsel review external communications prior to disseminating them to ServiceMaster.

As opposed to following Ms. Hise's directive, the next day, on June 27, 2013, the Complainant drafted and sent a letter to Mr. McGrath at ServiceMaster, which stated, *inter alia, "Therefore, be it known as a matter of concern this continued egregious conduct is unacceptable and it must cease and desist immediately."* (RDX 5 at 14; Dep. at 165.) Moreover, she wrote, "As the goodwill and business reputation of Kenco/Mars can be adversely affected and damaged by not fulfilling the current quality mandates that can result in serious illness and even death, therefore, prompting unwarranted litigious exchanges." (RDX 5 at 14; Dep. at 165.) There is no question that the Complainant used a threatening tone in her letter to ServiceMaster.

On this issue, the Complainant has not alleged that she did, in fact, have legal counsel review her outgoing communications. Indeed, she could not finally recall whether she had anyone review the letter before she sent it to ServiceMaster. In one instance, she claimed that she gave it to Mr. Walsh. (Dep. at 164.) In another instance, however, she was "not sure," and she could not "really say" whether anyone reviewed the letter. (Dep. at 166.) In her continued deposition, when asked again whether she gave it to anyone to review, she stated, "The only person that I probably would have shown it to would have been either Mr. Walsh or Mr. Moses, but I can't—I don't recall that detail of the situation." (Dep. at 308-310.) On the other hand, the Respondent has presented evidence strongly indicating that the Complainant did *not* have legal counsel or Mr. Walsh review the letter. In response to the Complainant's letter, Mr. Davis forwarded the Complainant's communications to Mr. Walsh on June 27, 2013, and wrote, "whatever you do please do not let Mary threaten the supplier with 'litigious exchanges' again… The last thing we need is a lawsuit brought by overzealousness." (RDX 5 at 11.) The e-mail from Mr. Davis suggests that the language the Complainant used in her e-mail to ServiceMaster shocked him. Moreover, the evidence reveals that the Respondent was genuinely concerned that the Complainant's language and approach could cause unwanted litigation with ServiceMaster. There is no documentary or testimonial evidence demonstrating that the Complainant followed Ms. Hise's directive to have legal counsel review her letter to ServiceMaster before she disseminated it. The Complainant's own uncertain testimony on this issue is not sufficient to create a genuine issue of fact.

Moreover, the Respondent has submitted numerous e-mails that document the Complainant's impolitic communication style. She used exclamation marks, wrote in capitalized letters, and often used confusing and scolding language. (*See e.g.* RDX 5.) When asked whether

22

she thought her e-mails were clear and concise, the Complainant testified that she "[g]enerally" "tried to limit them to a couple of sentences, maybe one or two paragraphs at the most." She stated that when the e-mails contained "any lengthy expounding on any subject matter," it was because she was trying to "fill in a gap or something..." (Dep. at 209; RDX 4.) She explained that she did not write the government regulations, so she was "not at liberty and I don't have the ability to add or take away from what is being required..." (Dep. at 209.)

While it is true that the Complainant did not write the regulations, the Respondent hired her as the Quality Engineer so that she could help bring its warehouse into compliance with applicable food-safety regulations. Her job description specifically stated that she was to "develop, implement and maintain best practices for meeting FDA regulatory requirements, key quality system processes, quality engineering methodologies, systems and practices to meet the operating system's continuous improvement strategies." (RDX 3; Dep. at 42.) As the Respondent wrote in the Complainant's PIP, the Complainant needed "to communicate through simple terms which are summarized and understandable for fellow coworkers to understand.... This cannot be achieved by responding to inquires with elongated government requirements which seemed to be cut/copied from various websites." (RDX 4 at 2.) In sum, the evidence shows that the Respondent was concerned with the Complainant's communication style and ability to synthesize the regulations into a understandable, digestible format. Clearly the Respondent raised this issue with the Complainant during her PIP and noted that it was imperative for her to understand the regulations and communicate them in an intelligible manner.

The Respondent has shown other instances where the Complainant's communication style and difficulty in understanding her job duties affected her ability to perform the basic functions of her job. For example, on June 17, 2013, the Complainant sent an e-mail to Mr. Walsh and William Schwerin, asking them to complete a Business Continuity Plan that was twenty-two pages long. (Dep. at 179-182; RDX 5 at 29.) In response, Mr. Walsh wrote, "Hi Mary, I'm really not familiar or understanding what is being asked." (Dep. at 180-184; RDX 5 at 29.) In response, the Complainant wrote, "Hope this helps!" and simply pasted a lengthy, seven-page, description of business continuity planning. (RDX 5 at 23-30; Dep. at 184-186.) She testified that she drafted the first two paragraphs of text, but she was "not sure" from where she copied the rest of text. (Dep. at 186.) Thereafter, on July 3, 2013, Mr. Walsh replied, "Mary, I really don't have time to go through this. Please summarize." (RDX 5 at 23; Dep. at 186.) In response, the Complainant did not provide a summary, but, rather, e-mailed Mr. Walsh the following:

> Bringing to your remembrance when we were speaking. It was discussed that a BCP is a plan of action in the event a disaster happens what would you do? How will you mitigate the disaster? Identifying the components of the business and the economic impact of each. Who are the key persons? The information was provide[d] so that you could have the best picture of what is being asked; Not having a handle on the business and its dynamics disallows a full picture for me.

(RDX 5 at 23; Dep. at 186.) The Complainant's response shows that she was unable to provide her supervisor with the information he requested in the manner, style, format, and length that he desired.

The Respondent has evidenced other instances in which the Complainant needed guidance in completing basic tasks required of her job. For example, on June 20, 2013, the Complainant wrote an e-mail to Ms. Hise and attached a project plan, which consisted of charts totaling twenty-six pages. (RDX 5 at 54; BS 1787-1816; Dep. at 188.) Ms. Hise replied, thanked the Complainant for the draft, and wrote, *inter alia*, "I'll be honest. I can't follow a project plan that has 499 line items on it. I need something simpler that hits the high points." (RDX 5 at 83; BS 1816; Dep. at 189.) Ms. Hise further added, "I've developed a sample of what I'm looking for—on the attached spreadsheet, see the tab called 'Paula's Sample'. I need to provide Mars with the high level gaps that have been identified and a timeline--without overwhelming them with the detail." (*Id.*) Ms. Hise asked the Complainant if she could respond with a revised project plan by the end of the day on July 3. (*Id.*) Thereafter, on July 3, 2013, the Complainant replied to Ms. Hise via e-mail with an updated project plan, which consisted of charts totaling sixteen pages. (RDX 5 at 86-BS 1820-1836; Dep. at 189-190.) Even after being give a template to use as a sample, the Complainant did not seem to grasp what Ms. Hise was asking of her.

The Respondent has further demonstrated that when Mr. Walsh and Ms. Hise placed the Complainant on a PIP, they identified areas where the Complainant needed to improve her performance. (RDX 4.) The PIP provided specific examples of how the Complainant's performance up until July 8, 2013, was subpar. Although the Complainant testified that she though the PIP was "unlawful," when pressed to provide examples of why it was unlawful, she simply explained that it was not on company letterhead, it was not formatted the way her job description was, and it did not have a "document number," "title," or "date of the person who authored it." (Dep. at 231-232.) In her view, the Respondent was not following its own "progressive discipline policy," which required it to "identify the areas of concern" and then "come up with some type of remediation plan." (Dep. at 202-203.) However, contrary to her testimony, Mr. Walsh did meet with the Complainant, on two occasions, to discuss her PIP. (RDX 4.) Moreover, her PIP identified specific competencies that the Complainant needed to improve. (*Id.*) Thus, I find no colorable evidence to support the Complainant's allegation that the Respondent's PIP was "unlawful" or somehow invalid. The Respondent has provided ample evidence to justify its decision to place the Complainant on a PIP and require her to communicate in more simple terms, collaborate with internal and external customers, and work within and understand compliance requirements and procedures. The Complainant has not presented any significant evidence to the contrary, even when viewed in the context of summary decision.

In sum, the Respondent has submitted clear and convincing evidence that it would have terminated the Complainant regardless of whether she engaged in protected activity. The e-mails of record, the authenticity of which has not been seriously questioned, document that the Respondent had a legitimate, factual basis to conclude that the Complainant did not follow instructions, did not communicate effectively, did not complete the tasks she was hired to do, and did not demonstrate the expertise required of the Quality Engineer position. The Complainant has not produced any persuasive evidence to suggest that the reasons for her termination were

24

pretextual. Nor has she created any genuine issue of fact regarding her job performance or the written materials documenting her performance. Her allegation that the Respondent did not follow proper procedures in terminating her lacks any persuasive factual basis.

## CONCLUSION

Having reviewed the record before me on the Respondent's motion for summary decision, and viewing the facts in the light most favorable to the Complainant, I find that the record is sufficient to create a genuine issue of fact regarding whether the Complainant engaged in protected activity before she was terminated. However, the record before me does not create a genuine issue of material fact as to whether the Complainant's protected activity was a contributing factor in the Respondent's decision to terminate her. The Complainant's allegation that Mr. Walsh told her to "relax her standards," when viewed in context, does not support a reasonable inference that she was being told to overlook food-safety regulations. To the extent that she has produced evidence of an animus in the alleged statements of Mr. Walsh, these statements, if true, reflect an animus that is of a type different from the employee-protection provisions of the Act. Further, the Respondent has produced a large body of compelling evidence to show that even if the Complainant had *not* engaged in protected activity, it would have taken the same adverse action against her based on legitimate, non-discriminatory reasons. This body of evidence would constitute clear and convincing evidence at hearing, and it has not been challenged in any way that creates a genuine issue of fact. Accordingly, I find that, based on the materials presented, the Respondent is entitled to summary decision as a matter of law.

## **ORDER**

The Respondent is entitled to summary decision as a matter of law. The claim of Mary Madison is hereby **DISMISSED**. The hearing scheduled to begin in Chicago, Illinois on December 11, 2017, is **CANCELLED**.



Digitally signed by John P. Sellers III
DN: CN=John P. Sellers III,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Cincinnati, S=OH, C=US
Location: Cincinnati OH

JOHN P. SELLERS, III
Administrative Law Judge

**NOTICE OF APPEAL RIGHTS**: To appeal, you must file a Petition for Review ("Petition") with the Administrative Review Board ("Board") within fourteen (14) days of the date of issuance of the administrative law judge's decision. The Board's address is: Administrative Review Board, U.S. Department of Labor, Suite S-5220, 200 Constitution Avenue, NW, Washington DC 20210, for traditional paper filing. Alternatively, the Board offers an Electronic File and Service Request (EFSR) system. The EFSR for electronic filing (eFile) permits the submission of forms and documents to the Board through the Internet instead of using postal

mail and fax. The EFSR portal allows parties to file new appeals electronically, receive electronic service of Board issuances, file briefs and motions electronically, and check the status of existing appeals via a web-based interface accessible 24 hours every day. No paper copies need be filed.

An e-Filer must register as a user, by filing an online registration form. To register, the e-Filer must have a valid e-mail address. The Board must validate the e-Filer before he or she may file any e-Filed document. After the Board has accepted an e-Filing, it is handled just as it would be had it been filed in a more traditional manner. e-Filers will also have access to electronic service (eService), which is simply a way to receive documents, issued by the Board, through the Internet instead of mailing paper notices/documents.

Information regarding registration for access to the EFSR system, as well as a step by step user guide and FAQs can be found at: https://dol-appeals.entellitrak.com. If you have any questions or comments, please contact: Boards-EFSR-Help@dol.gov

Your Petition is considered filed on the date of its postmark, facsimile transmittal, or e-filing; but if you file it in person, by hand-delivery or other means, it is filed when the Board receives it. *See* 29 C.F.R. § 1987.110(a). Your Petition must specifically identify the findings, conclusions or orders to which you object. You may be found to have waived any objections you do not raise specifically. *See* 29 C.F.R. § 1987.110(a).

At the time you file the Petition with the Board, you must serve it on all parties as well as the Chief Administrative Law Judge, U.S. Department of Labor, Office of Administrative Law Judges, 800 K Street, NW, Suite 400-North, Washington, DC 20001-8002. You must also serve the Assistant Secretary, Occupational Safety and Health Administration and, in cases in which the Assistant Secretary is a party, on the Associate Solicitor for Occupational Safety and Health. *See* 29 C.F.R. § 1987.110(a).

If filing paper copies, you must file an original and four copies of the petition for review with the Board, together with one copy of this decision. In addition, within 30 calendar days of filing the petition for review you must file with the Board an original and four copies of a supporting legal brief of points and authorities, not to exceed thirty double-spaced typed pages, and you may file an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which the appeal is taken, upon which you rely in support of your petition for review. If you e-File your petition and opening brief, only one copy need be uploaded.

Any response in opposition to a petition for review must be filed with the Board within 30 calendar days from the date of filing of the petitioning party's supporting legal brief of points and authorities. The response in opposition to the petition for review must include an original and four copies of the responding party's legal brief of points and authorities in opposition to the petition, not to exceed thirty double-spaced typed pages, and may include an appendix (one copy only) consisting of relevant excerpts of the record of the proceedings from which appeal has been taken, upon which the responding party relies. If you e-File your responsive brief, only one copy need be uploaded.

Upon receipt of a legal brief filed in opposition to a petition for review, the petitioning party may file a reply brief (original and four copies), not to exceed ten double-spaced typed pages, within such time period as may be ordered by the Board. If you e-File your reply brief, only one copy need be uploaded.

If no Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor pursuant to 29 C.F.R. §§ 1987.109(e) and 1987.110(b). Even if a Petition is timely filed, the administrative law judge's decision becomes the final order of the Secretary of Labor unless the Board issues an order within thirty (30) days of the date the Petition is filed notifying the parties that it has accepted the case for review. *See* 29 C.F.R. § 1987.110(b).

As outlined previously, the Board has made clear the Complainant must show by a preponderance of the evidence that she her protected activity was a contributing factor in the adverse action. *Palmer, supra,* slip op. at 52. If the Complainant satisfies these elements, then the burden shifts to the Respondent to show by clear and convincing evidence that it would have taken the same adverse action regardless of the Complainant's protected activity. (*Id.*)

# SERVICE SHEET

Case Name:  **MADISON MARY v. KENCO LOGISTICS**

Case Number: **2016FDA00004**

Document Title: **Decision and Order**

I hereby certify that a copy of the above-referenced document was sent to the following this 22nd day of November, 2017:



Digitally signed by APRIL COOK
DN: CN=APRIL COOK, OU=LEGAL
ASSISTANT, O=US DOL Office of
Administrative Law Judges, L=Cincinnati,
S=OH, C=US
Location: Cincinnati OH

**APRIL COOK**
LEGAL ASSISTANT

Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Regional Administrator
Region 5
U. S. Department of Labor, OSHA
Room 3244
230 South Dearborn Street
CHICAGO IL 60604
*{Hard Copy - Regular Mail}*

Administrative Review Board
U. S. Dept. of Labor
Suite S-5220, FPB
200 Constitution Ave., N.W.
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Associate Solicitor
Division of Fair Labor Standards
Office of the Solicitor
U.S. Department of Labor
200 Constitution Avenue, N.W., Room N-2716
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Counsel for Whistleblower Programs
Division of Fair Labor Standards
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave, NW, Room N-2716
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Chicago Regional Solicitor
Regional Solicitor
U. S. Department of Labor
Room 844
230 South Dearborn Street
CHICAGO IL 60604
*{Hard Copy - Regular Mail}*

**SERVICE SHEET** continued (2016FDA00004 Case Decision)    Page: 2

Mary Madison
9758 S. Charles
CHICAGO IL 60643
　　　　　*{Hard Copy - Regular Mail}*

Jordan TraVille Hoffman, Esq.
11528 S.. Halsted Street
CHICAGO IL 60628
　　　　　*{Hard Copy - Regular Mail}*

Scott Simmons, Esq.
Miller & Martin PLLC
832 Georgia Ave., Suite 1000
CHATTANOOGA TN 37402
　　　　　*{Hard Copy - Regular Mail}*

Kenco Logistics
1125 West Sycamore Road
MANTENO IL 60950
　　　　　*{Hard Copy - Regular Mail}*

Tim Crouse
Reg. Supervisory Investigator
USDOL, OSHA, Room 3244
230 South Dearborn Street
CHICAGO IL 60604
　　　　　*{Hard Copy - Regular Mail}*

Julia P Argentieri, Esq.
Jody Wilner Moran, Esq.
Jackson Lewis, P.C.
150 N. Michigan Ave., Suite 2500
CHICAGO IL 60601
　　　　　*{Hard Copy - Regular Mail}*

Kathryn Montgomery-Moran
Jackson Lewis, P.C.
150 N. Michigan, Suite 2500
CHICAGO IL 60601
　　　　　*{Hard Copy - Regular Mail}*



**U.S. DEPARTMENT OF LABOR**
OFFICE OF ADMINISTRATIVE LAW JUDGES
36 E. 7TH STREET
CINCINNATI, OHIO 45202

OFFICIAL BUSINESS

Jordan Hoffman, Esq.
2711 E. New York Ave., Suite 205
Aurora, IL 60502

UNITED STATES POSTAGE
PITNEY BOWES

02 1P    $ 000.880
0001680790   DEC. 01 2017
MAILED FROM ZIP CODE 45202

APPENDIX A

SECTION XI

**UNITED STATES
DEPARTMENT OF LABOR**

RECEIVED
AUG 23 2017
Office of Administrative Law Judges
Cincinnati, Ohio

In the Matter of:                    )
                                     )
    **MARY MADISON,**                )
                                     )        **Case No. 2016-FDA-4**
        **Complainant,**          )
                                     )
**v.**                               )
                                     )
    **KENCO LOGISTICS**              )
                                     )
        **Respondent.**           )

**RESPONDENT'S MOTION FOR RECONSIDERATION OF THE
AUGUST 16, 2017 RULING**

Respondent Kenco Logistics Services, LLC hereby submits the following request for reconsideration of the Order dated August 16, 2017 finding Respondent's Motion for Summary Decision untimely:

1. On August 11, 2017 Respondent filed a Motion for Summary Decision.

2. On August 14, 2017 Complainant filed an Objection to the Motion.

3. On August 16, 2017 the Department entered an Order declining to consider Respondent's Motion for Summary Decision based on timeliness.

4. On August 17, 2017 Respondent filed a response brief articulating the reasons why Respondent believes that Respondent's Motion for Summary Decision was timely filed, or alternatively, why Respondent had good cause for understanding August 11, 2017 to be an appropriate deadline.

5. The Department's August 16, 2017 ruling was issued prior to receiving and reviewing Respondent's response to the Objection.

1

6. Respondent therefore requests that the Department reconsider its August 16, 2017 ruling, if it deems appropriate, in light of the additional pertinent information presented in Respondent's brief submitted on August 17, 2017.

WHEREFORE, for all the reasons stated herein, Respondent requests that the Department reconsider its ruling dated August 16, 2017 in order to consider Respondent's response submitted on August 17, 2017 and grant such further relief as is just and proper.

DATED:  August 23, 2017                    Respectfully submitted,


**KENCO LOGISTICS SERVICES, LLC**


By: _____
              One of its Attorneys


Jody Wilner Moran
Julia P. Argentieri
Jackson Lewis P.C.
150 North Michigan Avenue
Suite 2500
Chicago, Illinois 60601
Telephone:    (312) 787-4949
Facsimile:    (312)787-4995

2

## CERTIFICATE OF SERVICE

The undersigned attorney, hereby certifies that on August 23, 2017, I submitted a copy of the foregoing *Respondent's Motion for Reconsideration of the August 16, 2017 Ruling* via hand delivery, and mail to:

> U.S. Department of Labor, Office of Administrative Law Judges
> Attention: April Cook, Paralegal Specialist to Judge Sellers
> 36 E. 7th Street, Suite 2525
> Cincinnati, Ohio 45202

A copy was also sent via electronic and U.S. mail to:

> Attorney Jordan Hoffman, Counsel for Complainant
> 2711 E. New York Ave. Suite 205
> Aurora, IL 60502


By: _____
    One of the Attorneys for Respondent

3

APPENDIX A

SECTION XII

 Jordan Hoffman <jthoffmanlaw@gmail.com>

## MARY MADISON V. KENCO LOGISTICS - 2016-FDA-4-
3 messages

---

**Jordan Hoffman** <jthoffmanlaw@gmail.com>                    Mon, Aug 21, 2017 at 4:23 PM
To: "Cook, April - OALJ" <cook.april@dol.gov>

Dear Ms. Cook,

You left a voice message for me earlier today concerning the order that was entered in this matter 4 or 5 days ago.  To date, I have not received the order in the mail.  I had previously requested that you fax it to the same number that you have been leaving voice messages for me, i.e., (888) 958-4529.  Additionally, I had also requested that if you needed to call me that you do so on my mobile phone. Thank you in advance for your cooperation.


The Law Office of
Jordan T. Hoffman, P.C.
2711 East New York St., Suite 205
Aurora, IL 60502
888.958.4529 Phone and Facsimile
jthoffmanlaw@gmail.com

*"Balancing the Scales of Justice"*

www.attyjthoffman.com

- CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

---

**Cook, April - OALJ** <cook.april@dol.gov>                    Tue, Aug 22, 2017 at 10:12 AM
To: Jordan Hoffman <jthoffmanlaw@gmail.com>


I tried again this morning to fax the order and it won't go through


**From:** Jordan Hoffman [mailto:jthoffmanlaw@gmail.com]
**Sent:** Monday, August 21, 2017 5:23 PM
**To:** Cook, April - OALJ
**Subject:** MARY MADISON V. KENCO LOGISTICS - 2016-FDA-4-

[Quoted text hidden]

---

**Jordan Hoffman** <jthoffmanlaw@gmail.com>                    Tue, Aug 22, 2017 at 11:00 AM
To: "Cook, April - OALJ" <cook.april@dol.gov>

SA-85

Dear Ms. Cook,

Can you please call me on my cell phone 773.490.8940.

That is so odd, as I received a fax this last night and this morning on the 888.958.4529.

Thank you


The Law Office of
Jordan T. Hoffman, P.C.
2711 East New York St., Suite 205
Aurora, IL 60502
888.958.4529 Phone and Facsimile
jthoffmanlaw@gmail.com

*"Balancing the Scales of Justice"*

www.attyjthoffman.com

- CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

[Quoted text hidden]

SA-86

APPENDIX A

SECTION XIII

**U.S. Department of Labor**

Office of Administrative Law Judges
36 E. 7th St., Suite 2525
Cincinnati, Ohio 45202

(513) 684-3252
(513) 684-6108 (FAX)



# FAX TRANSMISSION

**To:**   Jordan Hoffman, Esq.
Julie Argentieri, Esq.

**Fax Number:**  (888) 958-4259
**(312) 787-4995**

**From:**   April Cook, Paralegal Specialist to Judge Sellers

**No. of Pages (including cover sheet):** ·· 5
**Date:  August 16, 2017**

.

**Note:**

*Please call (513) 684-3252 if this fax is incomplete or illegible*

U.S. Department of Labor    Office of Administrative Law Judges
                            36 E. 7th St., Suite 2525
                            Cincinnati, Ohio 45202

                            (513) 684-3252
                            (513) 684-6108 (FAX)



                                                          **Issue Date: 16 August 2017**

Case No. 2016-FDA-00004

*In the Matter of:*

**MARY MADISON,**
        Complainant,

        v.

**KENCO LOGISTICS,**
        Respondent.

### ORDER DENYING RESPONDENT'S
### MOTION FOR SUMMARY DECISION

        The above-captioned claim is currently scheduled for hearing on September 13, 2017, in Chicago, Illinois. By e-mail received on August 11, 2017, Kenco Logistics (the "Respondent") filed a Motion for Summary Decision. The same day, also by e-mail, the Respondent filed a Motion to Extend the Deadline for Pre-Hearing Exchanges and Re-Set The Hearing Pending Ruling of Respondent's Motion for Summary Decision. On August 14, 2017, the Complainant filed a Motion to Strike and Objection to Evidence.

        At the outset, I note that neither party requested, nor has the undersigned granted, permission to file papers electronically or via facsimile.[1] The parties are hereby **ORDERED** to file all future correspondence in writing, to the address listed above. Electronic and facsimile filings will no longer be accepted.

        The Notice of Hearing and Prehearing Order, issued on December 13, 2016, stated that dispositive motions must be filed "no later than thirty (45) workdays before hearing." Moreover, it stated, "Response to such motion must be filed by the party opposing such motion no later than fourteen (14) workdays after receipt of the motion." The undersigned acknowledges the clerical error printed in the Notice of Hearing, as it is unclear whether the parties had thirty (30) or forty-five (45) workdays to file dispositive motions. Nonetheless, even assuming that the Notice of Hearing stated that dispositive motions were due "no later than thirty (30) workdays before hearing," the Respondent's motion was untimely. There is simply insufficient time for the Complainant to respond to, and for the undersigned to rule on, the merits of the Respondent's motion prior to the hearing. Consequently, the Respondent's Motion for Summary Decision is hereby **DENIED.**

---

[1] *See* The Rules of Practice and Procedure for Hearings before the Office of Administrative Law Judges at 29 C.F.R. § 18.30.

In its Motion to Extend the Deadline for Pre-Hearing Exchanges and Re-Set The Hearing Pending Ruling of Respondent's Motion for Summary Decision, the Respondent stated that it "believes that it is in the interest of both parties and the Department of Labor to avoid submitting pre-hearing materials or conducting a hearing until it becomes known whether or not the Administrative Law Judge finds that a hearing is necessary in order to resolve any disputed issues of fact in this case." I interpret this as a request to continue the hearing pending resolution of the Respondent's Motion for Summary Decision. The Complainant has objected to this request. As the Respondent's Motion for Summary Decision has been denied as untimely, the Respondent's request to re-set the hearing date is also **DENIED**. The hearing will proceed as scheduled on September 13, 2017.

Finally, the Respondent requested additional time to submit its prehearing exchange. The Notice of Hearing provides that the parties are required to submit prehearing exchanges at least twenty (20) workdays prior to the hearing. To date, the undersigned has not received a prehearing exchange from either party. Therefore, the parties are hereby **ORDERED** to file with the undersigned, in writing, and send to opposing counsel their prehearing exchanges no later than **Friday, September 1, 2017.**

Any objections to specific exhibits will be addressed on the record at the hearing on September 13, 2017.

SO ORDERED.



Digitally signed by John P. Sellers III
DN: CN=John P. Sellers III,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Cincinnati, S=OH, C=US
Location: Cincinnati OH

JOHN P. SELLERS, III
Administrative Law Judge

## SERVICE SHEET

Case Name: **MADISON_MARY_v_KENCO_LOGISTICS_**

Case Number: **2016FDA00004**

Document Title: **Order Denying Respondent's Motion for Summary Decision**

I hereby certify that a copy of the above-referenced document was sent to the following this 16th day of August, 2017:



Digitally signed by APRIL COOK
DN: CN=APRIL COOK, OU=U'I DAI
ASSISTANT, O=US DOL Office of
Administrative Law Judges, L=Cincinnati,
S=OH, C=US
Location: Cincinnati OH

**APRIL COOK**
LEGAL ASSISTANT

Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Counsel for Whistleblower Programs
Division of Fair Labor Standards
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave, NW, Room N-2716
WASHINGTON DC 20210
*{Hard Copy - Regular Mail}*

Chicago Regional Solicitor
Regional Solicitor
U. S. Department of Labor
Room 844
230 South Dearborn Street
CHICAGO IL 60604
*{Hard Copy - Regular Mail}*

Mary Madison
9758 S. Charles
CHICAGO IL 60643
*{Hard Copy - Regular Mail}*

Jordan TraVille Hoffman, Esq.
11528 S.. Halsted Street
CHICAGO IL 60628
*{Hard Copy - Regular Mail}*

Scott Simmons, Esq.
Miller & Martin PLLC
832 Georgia Ave., Suite 1000
CHATTANOOGA TN 37402
*{Hard Copy - Regular Mail}*

Kenco Logistics
1125 West Sycamore Road
MANTENO IL 60950
*{Hard Copy - Regular Mail}*

Tim Crouse
Reg. Supervisory Investigator
USDOL, OSHA, Room 3244
230 South Dearborn Street
CHICAGO IL 60604
*{Hard Copy - Regular Mail}*

**SERVICE SHEET** continued (2016FDA00004 Order)          Page: 2

Julia P Argentieri, Esq.
Jody Wilner Moran, Esq.
Jackson Lewis, P.C.
150 N. Michigan Ave., Suite 2500
CHICAGO IL 60601
          *[Hard Copy - Regular Mail]*

 **Gmail**                                      **Jordan Hoffman <jthoffmanlaw@gmail.com>**

## Madison v Kenco

**Argentieri, Julia P. (Chicago)** <Julia.Argentieri@jacksonlewis.com>          Mon, Aug 21, 2017 at 7:09
                                                                                                                              PM
To: Jordan Hoffman <jthoffmanlaw@gmail.com>
Cc: "Moran, Jody Wilner (Chicago)" <MoranJ@jacksonlewis.com>, "Watkins, Brittany (Chicago)"
<Brittany.Watkins@jacksonlewis.com>

Mr. Hoffman:
Attached please find the order entered last week on August 16, along with our motion for a brief extension
that we discussed with you via phone earlier this evening. Please let us know if you have any questions
and please confirm your receipt. Also, we look forward to hearing from you further once you have spoken
to your client regarding a settlement demand and discussing the possibility of resolution.

Thanks,

Julie Argentieri

Julia P. Argentieri
**Attorney at Law**
**Jackson Lewis P.C.**
150 North Michigan Avenue
Suite 2500
Chicago, IL 60601
Direct: (312) 803-2533 | Main: (312) 787-4949
Julia.Argentieri@jacksonlewis.com  |  www.jacksonlewis.com
*Jackson Lewis P.C. is included in the AmLaw 100 and Global 100 law firm rankings.*

Confidentiality Note: This e-mail, and any attachment to it, contains privileged and confidential information intended only for the use of the
individual(s) or entity named on the e-mail. If the reader of this e-mail is not the intended recipient, or the employee or agent responsible for
delivering it to the intended recipient, you are hereby notified that reading it is strictly prohibited. If you have received this e-mail in error,
please immediately return it to the sender and delete it from your system. Thank you.

**2 attachments**

                               **Cisco_fax.tif**
                               85K

**FAX TRANSMISSION**

**Respondent's Motion to Extend Hearing Date 082217.docx**
22K

APPENDIX A

SECTION XIV

**U.S. Department of Labor**

Office of Administrative Law Judges
36 E. 7th St., Suite 2525
Cincinnati, Ohio 45202

(513) 684-3252
(513) 684-6108 (FAX)



**Issue Date: 03 May 2016**

Case No. 2016-FDA-4

In the Matter of:
MARY MADISON,
     Complainant,

     v.

KENCO LOGISTICS,
     Respondent.

## PRELIMINARY ORDER

     This action is being conducted under the Section 402 of the FDA Food Safety Modernization Act, P.l. 111-353 (Jan. 4, 2011), codified at Federal, Food, Drug, and Cosmetic Act, 21 U.S.C. § 399d.

     This matter has been assigned to the undersigned for a hearing. The undersigned would like to schedule a conference call in this matter. Therefore,

     **IT IS HEREBY ORDERED** that the parties mutually confer and advise the undersigned by **May 13, 2016** of dates convenient to schedule the conference call.

     **IT IS FURTHER ORDERED** that all future correspondence, pleadings, motions, etc., be directed to the undersigned at the address shown on this letterhead.



Digitally signed by John P. Sellers III
DN: CN=John P. Sellers III,
OU=Administrative Law Judge, O=US
DOL Office of Administrative Law
Judges, L=Cincinnati, S=OH, C=US
Location: Cincinnati OH

JOHN P. SELLERS, III
Administrative Law Judge

## SERVICE SHEET

Case Name: **MADISON_MARY_v_KENCO_LOGISTICS_**

Case Number: **2016FDA00004**

Document Title: **Preliminary Orfder**

I hereby certify that a copy of the above-referenced document was sent to the following this 3rd day of May, 2016:



Digitally signed by APRIL COOK
DN: CN=APRIL COOK, OU=LEGAL
ASSISTANT, O=US DOL Office of
Administrative Law Judges, L=Cincinnati,
S=OH, C=US.
Location: Cincinnati OH

**APRIL COOK**
LEGAL ASSISTANT

Director
Directorate of Whistleblower Protection Programs
U S Department of Labor, OSHA
Room N 4618 FPB
200 CONSTITUTION AVE NW
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

Counsel for Whistleblower Programs
Division of Fair Labor Standards
Office of the Solicitor
U.S. Department of Labor
200 Constitution Ave, NW, Room N-2716
WASHINGTON DC 20210
        *{Hard Copy - Regular Mail}*

Mary Madison
9758 S. Charles
CHICAGO IL 60643
        *{Hard Copy - Regular Mail}*

Jordan TraVille Hoffman, Esq.
11528 S.. Halsted Street
CHICAGO IL 60628
        *{Hard Copy - Regular Mail}*

Scott Simmons, Esq.
Miller & Martin PLLC
832 Georgia Ave., Suite 1000
CHATTANOOGA TN 37402
        *{Hard Copy - Regular Mail}*

Kenco Logistics
1125 West Sycamore Road
MANTENO IL 60950
        *{Hard Copy - Regular Mail}*

Tim Crouse
Reg. Supervisory Investigator
USDOL, OSHA, Room 3244
230 South Dearborn Street
CHICAGO IL 60604
        *{Hard Copy - Regular Mail}*

APPENDIX B

### § 17.10 How does the Secretary make efforts to accommodate intergovernmental concerns?

(a) If a state process provides a state process recommendation to the Department through its single point of contact, the Secretary either—

(1) Accepts the recommendation;

(2) Reaches a mutually agreeable solution with the state process; or

(3) Provides the single point of contact with such written explanation of the decision, as the Secretary in his or her discretion deems appropriate. The Secretary may also supplement the written explanation by providing the explanation to the single point of contact by telephone, other telecommunication, or other means.

(b) In any explanation under paragraph (a)(3) of this section, the Secretary informs the single point of contact that:

(1) The Department will not implement its decision for at least ten days after the single point of contact receives the explanation; or

(2) The Secretary has reviewed the decision and determined that, because of unusual circumstances, the waiting period of at least ten days is not feasible.

(c) For purposes of computing the waiting period under paragraph (b)(1) of this section, a single point of contact is presumed to have received written notification 5 days after the date of mailing of such notification.

### § 17.11 What are the Secretary's obligations in interstate situations?

(a) The Secretary is responsible for:

(1) Identifying proposed Federal financial assistance that have an impact on interstate areas;

(2) Notifying appropriate officials and entities in states which have adopted a process and which select the Department's program or activity.

(3) Making efforts to identify and notify the affected state, areawide, regional, and local officials and entities in those states that have not adopted a process under the Order or do not select the Department's program or activity;

(4) Responding pursuant to § 17.10 of this part if the Secretary receives a recommendation from a designated areawide agency transmitted by a single point of contact, in cases in which the review, coordination, and communication with the Department have been delegated.

(b) The Secretary uses the procedures in § 17.10 if a state process provides a state process recommendation to the Department through a single point of contact.

### § 17.12 How may a state simplify, consolidate, or substitute federally required state plans?

(a) As used in this section:

(1) *Simplify* means that a state may develop its own format, choose its own submission date, and select the planning period for a state plan.

(2) *Consolidate* means that a state may meet statutory and regulatory requirements by combining two or more plans into one document and that the state can select the format, submission date, and planning period for the consolidated plan.

(3) *Substitute* means that a state may use a plan or other document that it has developed for its own purposes to meet Federal requirements.

(b) If not consistent with law, a state may decide to try to simplify, consolidate, or substitute federally required state plans without prior approval by the Secretary.

(c) The Secretary reviews each state plan that a state has simplified, consolidated, or substituted and accepts the plan only if its contents meet Federal requirements.

### § 17.13 May the Secretary waive any provision of these regulations?

In an emergency, the Secretary may waive any provision of these regulations.

## PART 18—RULES OF PRACTICE AND PROCEDURE FOR ADMINISTRATIVE HEARINGS BEFORE THE OFFICE OF ADMINISTRATIVE LAW JUDGES

### Subpart A—General

Sec.
18.1   Scope of rules.
18.2   Definitions.
18.3   Service and filing of documents.
18.4   Time computations.

SA-99

18.5  Responsive pleadings—answer and re-
    quest for hearing.
18.6  Motions and requests.
18.7  Prehearing statements.
18.8  Prehearing conferences.
18.9  Consent order or settlement; settle-
    ment judge procedure.
18.10  Parties, how designated.
18.11  Consolidation of hearings.
18.12  Amicus curiae.
18.13  Discovery methods.
18.14  Scope of discovery.
18.15  Protective orders.
18.16  Supplementation of responses.
18.17  Stipulations regarding discovery.
18.18  Written interrogatories to parties.
18.19  Production of documents and other
    evidence; entry upon land for inspection
    and other purposes; and physical and
    mental examination.
18.20  Admissions.
18.21  Motion to compel discovery.
18.22  Depositions.
18.23  Use of depositions at hearings.
18.24  Subpoenas.
18.25  Designation of administrative law
    judge.
18.26  Conduct of hearings.
18.27  Notice of hearing.
18.28  Continuances.
18.29  Authority of administrative law judge.
18.30  Unavailability of administrative law
    judge.
18.31  Disqualification.
18.32  Separation of functions.
18.33  Expedition.
18.34  Representation.
18.35  Legal assistance.
18.36  Standards of conduct.
18.37  Hearing room conduct.
18.38  Ex parte communications.
18.39  Waiver of right to appear and failure
    to participate or to appear.
18.40  Motion for summary decision.
18.41  Summary decision.
18.42  Expedited proceedings.
18.43  Formal hearings.
18.44  [Reserved]
18.45  Official notice.
18.46  In camera and protective orders.
18.47  Exhibits.
18.48  Records in other proceedings.
18.49  Designation of parts of documents.
18.50  Authenticity.
18.51  Stipulations.
18.52  Record of hearings.
18.53  Closing of hearings.
18.54  Closing the record.
18.55  Receipt of documents after hearing.
18.56  Restricted access.
18.57  Decision of the administrative law
    judge.
18.58  Appeals.
18.59  Certification of official record.

Subpart B—Rules of Evidence

GENERAL PROVISIONS

18.101  Scope.
18.102  Purpose and construction.
18.103  Rulings on evidence.
18.104  Preliminary questions.
18.105  Limited admissibility.
18.106  Remainder of or related writings or
    recorded statements.

OFFICIAL NOTICE

18.201  Official notice of adjudicative facts.

PRESUMPTIONS

18.301  Presumptions in general.
18.302  Applicability of state law.

RELEVANCY AND ITS LIMITS

18.401  Definition of *relevant evidence*.
18.402  Relevant evidence generally admis-
    sible; irrelevant evidence inadmissible.
18.403  Exclusion of relevant evidence on
    grounds of confusion or waste of time.
18.404  Character evidence not admissible to
    prove conduct; exceptions; other crimes.
18.405  Methods of proving character.
18.406  Habit; routine practice.
18.407  Subsequent remedial measures.
18.408  Compromise and offers to com-
    promise.
18.409  Payment of medical and similar ex-
    penses.
18.410  Inadmissibility of pleas, plea discus-
    sion, and related statements.
18.411  Liability insurance.

PRIVILEGES

18.501  General rule.

WITNESSES

18.601  General rule of competency.
18.602  Lack of personal knowledge.
18.603  Oath or affirmation.
18.604  Interpreters.
18.605  Competency of judge as witness.
18.606  [Reserved]
18.607  Who may impeach.
18.608  Evidence of character and conduct of
    witness.
18.609  Impeachment by evidence of convic-
    tion of crime.
18.610  Religious beliefs or opinions.
18.611  Mode and order of interrogation and
    presentation.
18.612  Writing used to refresh memory.
18.613  Prior statements of witnesses.
18.614  Calling and interrogation of wit-
    nesses by judge.
18.615  Exclusion of witnesses.

OPINIONS AND EXPERT TESTIMONY

18.701  Opinion testimony by lay witnesses.
18.702  Testimony by experts.

18.703 Bases of opinion testimony by experts.
18.704 Opinion on ultimate issue.
18.705 Disclosure of facts or data underlying expert opinion.
18.706 Judge appointed experts.

HEARSAY

18.801 Definitions.
18.802 Hearsay rule.
18.803 Hearsay exceptions; availability of declarant immaterial.
18.804 Hearsay exceptions; declarant unavailable.
18.805 Hearsay within hearsay.
18.806 Attacking and supporting credibility of declarant.

AUTHENTICATION AND IDENTIFICATION

18.901 Requirement of authentication or identification.
18.902 Self-authentication.
18.903 Subscribing witness' testimony unnecessary.

CONTENTS OF WRITINGS, RECORDINGS, AND PHOTOGRAPHS

18.1001 Definitions.
18.1002 Requirement of original.
18.1003 Admissibility of duplicates.
18.1004 Admissibility of other evidence of contents.
18.1005 Public records.
18.1006 Summaries.
18.1007 Testimony or written admission of party.
18.1008 Functions of the judge.

APPLICABILITY

18.1101 Applicability of the rules.
18.1102 [Reserved]
18.1103 Title.
18.1104 Effective date.
APPENDIX TO SUBPART B—REPORTER'S NOTES

AUTHORITY: 5 U.S.C. 301; 5 U.S.C. 551–553; 5 U.S.C. 571 note; E.O. 12778; 57 FR 7292.

SOURCE: 48 FR 32538, July 15, 1983, unless otherwise noted.

## Subpart A—General

### § 18.1  Scope of rules.

(a) *General application.* These rules of practice are generally applicable to adjudicatory proceedings before the Office of Administrative Law Judges, United States Department of Labor. Such proceedings shall be conducted expeditiously and the parties shall make every effort at each stage of a proceeding to avoid delay. To the extent that these rules may be inconsistent with a rule of special application as provided by statute, executive order, or regulation, the latter is controlling. The Rules of Civil Procedure for the District Courts of the United States shall be applied in any situation not provided for or controlled by these rules, or by any statute, executive order or regulation.

(b) *Waiver, modification, or suspension.* Upon notice to all parties, the administrative law judge may, with respect to matters pending before him or her, modify or waive any rule herein upon a determination that no party will be prejudiced and that the ends of justice will be served thereby. These rules may, from time to time, be suspended, modified or revoked in whole or part.

### § 18.2  Definitions.

For purposes of these rules:

(a) *Adjudicatory proceeding* means a judicial-type proceeding leading to the formulation of a final order;

(b) *Administrative law judge* means an administrative law judge appointed pursuant to the provisions of 5 U.S.C. 3105 (provisions of the rules in this part which refer to administrative law judges may be applicable to other Presiding Officers as well);

(c) *Administrative Procedure Act* means those provisions of the Administrative Procedure Act, as codified, which are contained in 5 U.S.C. 551 through 559;

(d) *Complaint* means any document initiating an adjudicatory proceeding, whether designated a complaint, appeal or an order for proceeding or otherwise;

(e) *Hearing* means that part of a proceeding which involves the submission of evidence, either by oral presentation or written submission;

(f) *Order* means the whole or any part of a final procedural or substantive disposition of a matter by the administrative law judge in a matter other than rulemaking;

(g) *Party* includes a person or agency named or admitted as a party to a proceeding;

(h) *Person* includes an individual, partnership, corporation, association, exchange or other entity or organization;

(i) *Pleading* means the complaint, the answer to the complaint, any supplement or amendment thereto, and any reply that may be permitted to any answer, supplement or amendment;

(j) *Respondent* means a party to an adjudicatory proceeding against whom findings may be made or who may be required to provide *relief or take remedial action;*

(k) *Secretary* means the Secretary of Labor and includes any administrator, commissioner, appellate body, board, or other official thereunder for purposes of appeal of recommended or final decisions of administrative law judges;

(l) *Complainant* means a person who is seeking relief from any act or omission in violation of a statute, executive order or regulation;

(m) The term *petition* means a written request, made by a person or party, for some affirmative action;

(n) The term *Consent Agreement* means any written document containing a specified proposed remedy or other relief acceptable to all parties;

(o) *Commencement of Proceeding* is the filing of a request for hearing, order of reference, or referral of a claim for hearing.

### § 18.3  Service and filing of documents.

(a) *Generally.* Except as otherwise provided in this part, copies of all documents shall be served on all parties of record. All documents should clearly designate the docket number, if any, and short title of the matter. If the matter involves a program administered by the Office of Workers' Compensation Programs (OWCP), the document should contain the OWCP number in addition to the docket number. All documents to be filed shall be delivered or mailed to the Chief Docket Clerk, Office of Administrative Law Judges (OALJ), 800 K Street, NW., Suite 400, Washington, DC 20001–8002, or to the OALJ Regional Office to which the proceeding may have been transferred for hearing. Each document filed shall be clear and legible.

(b) *How made; by parties.* All documents shall be filed with the Office of Administrative Law Judges, except that notices of deposition, depositions, interrogatories, requests for admis-

sions, and answers and responses thereto, shall not be so filed unless the presiding judge so orders, the document is being offered into evidence, the document is submitted in support of a motion or a response to a motion, filing is required by a specialized rule, or there is some other compelling reason for its submission. Whenever under this part service by a party is required to be made upon a party represented by an attorney or other representative the service shall be made upon the attorney or other representative unless service upon the party is ordered by the presiding administrative law judge. Service of any document upon any party may be made by personal delivery or by mailing a copy to the last known address. The person serving the document shall certify to the manner and date of service.

(c) *By the Office of Administrative Law Judges.* Service of notices, orders, decisions and all other documents, except complaints, shall be made by regular mail to the last known address.

(d) *Service of complaints.* Service of complaints or charges in enforcement proceedings shall be made either: (1) By delivering a copy to the individual, partner, officer of a corporation, or attorney of record; (2) by leaving a copy at the principal office, place of business, or residence; (3) by mailing to the last known address of such individual, partner, officer or attorney. If done by certified mail, service is complete upon mailing. If done by regular mail, service is complete upon receipt by addressee.

(e) *Form of pleadings.* (1) Every pleading shall contain a caption setting forth the name of the agency under which the proceeding is instituted, the title of the proceeding, the docket number assigned by the Office of Administrative Law Judges, and a designation of the type of pleading or paper (e.g., complaint, motion to dismiss, etc.). The pleading or papers shall be signed and shall contain the address and telephone number of the party or person representing the party. Although there are no formal specifications for documents, they should be typewritten when possible on standards size (8½×11) paper legal size (8½×14)

paper will not be accepted after July 31, 1983.

(2) Illegible documents, whether handwritten, typewritten, photocopied, or otherwise will not be accepted. Papers may be reproduced by any duplicating process, provided all copies are clear and legible.

(f) *Filing and service by facsimile*—(1) *Filing by a party; when permitted.* Filings by a party may be made by facsimile (fax) when explicitly permitted by statute or regulation, or when directed or permitted by the administrative law judge assigned to the case. If prior permission to file by facsimile cannot be obtained because the presiding administrative law judge is not available, a party may file by facsimile and attach a statement of the circumstances requiring that the document be filed by facsimile rather than by regular mail. That statement does not ensure that the filing will be accepted, but will be considered by the presiding judge in determining whether the facsimile will be accepted *nunc pro tunc* as a filing.

(2) *Service by facsimile; when permitted.* Service upon a party by another party or by the administrative law judge may be made by facsimile (fax) when explicitly permitted by statute or regulation, or when the receiving party consents to service by facsimile.

(3) *Service sheet and proof of service.* Docments filed or served by facsimile (fax) shall include a service sheet which states the means by which filing and/or service was made. A facsimile transmission report generated by the sender's facsimile equipment and which indicates that the transmission was successful shall be presumed adequate proof of filing or service.

(4) *Cover sheet.* Filings or service by facsimile (fax) shall include a cover sheet that identifies the sender, the total number of pages transmitted, and the caption and docket number of the case, if known.

(5) *Originals.* Documents filed or served by facsimile (fax) shall be presumed to be accurate reproductions of the original document until proven otherwise. The party proferring the document shall retain the original in the event of a dispute over authenticity or the accuracy of the trans-

mission. The original document need not be submitted unless so ordered by the presiding judge, or unless an original signature is required by statute or regulation. If an original signature is required to be filed, the date of the facsimile transmission shall govern the effective date of the filing provided that the document containing the original signature is filed within ten calendar days of the facsimile transmission.

(6) *Length of document.* Documents filed by facsimile (fax) should not exceed 12 pages including the cover sheet, the service sheet and all accompanying exhibits or appendices, except that this page limitation may be exceeded if prior permission is granted by the presiding judge or if the document's length cannot be conformed because of statutory or regulatory requirements.

(7) *Hours for filing by facsimile.* Filings by facsimile (fax) should normally be made between 8:00 am and 5:00 pm, local time at the receiving location.

(g) *Filing and service by courier service.* Documents transmitted by courier service shall be deemed transmitted by regular mail in proceedings before the Office of Administrative Law Judges.

[48 FR 32538, July 15, 1983, as amended at 56 FR 54708, Oct. 22, 1991; 59 FR 41876, Aug. 15, 1994; 60 FR 26970, May 19, 1995]

**§ 18.4  Time computations.**

(a) *Generally.* In computing any period of time under these rules or in an order issued hereunder the time begins with the day following the act, event, or default, and includes the last day of the period, unless it is a Saturday, Sunday or legal holiday observed by the Federal Government in which case the time period includes the next business day. When the period of time prescribed is seven (7) days or less, intermediate Saturdays, Sundays, and holidays shall be excluded in the computation.

(b) *Date of entry of orders.* In computing any period of time involving the date of the entry of an order, the date of entry shall be the date the order is served by the Chief Docket Clerk.

(c) *Computation of time for delivery by mail.* (1) Documents are not deemed filed until received by the Chief Clerk at the Office of Administrative Law

Judges. However, when documents are filed by mail, five (5) days shall be added to the prescribed period.

(2) Service of all documents other than complaints is deemed effected at the time of mailing.

(3) Whenever a party has the right or is required to take some action within a prescribed period after the service of a pleading, notice, or other document upon said party, and the pleading, notice or document is served upon said party by mail, five (5) days shall be added to the prescribed period.

(d) *Filing or service by facsimile.* Filing or service by facsimile (fax) is effective upon receipt of the entire document by the receiving facsimile machine. For purposes of filings by facsimile the time printed on the transmission by the facsimile equipment constitutes the date stamp of the Chief Docket Clerk.

[48 FR 32538, July 15, 1983, as amended at 59 FR 41877, Aug. 15, 1994]

### § 18.5 Responsive pleadings—answer and request for hearing.

(a) *Time for answer.* Within thirty (30) days after the service of a complaint, each respondent shall file an answer.

(b) *Default.* Failure of the respondent to file an answer within the time provided shall be deemed to constitute a waiver of his right to appear and contest the allegations of the complaint and to authorize the administrative law judge to find the facts as alleged in the complaint and to enter an initial or final decision containing such findings, appropriate conclusions, and order.

(c) *Signature required.* Every answer filed pursuant to these rules shall be signed by the party filing it or by at least one attorney, in his or her individual name, representing such party. The signature constitutes a certificate by the signer that he or she has read the answer; that to the best of his or her knowledge, information and belief there is good ground to support it; and that it is not interposed for delay.

(d) *Content of answer*—(1) *Orders to show cause.* Any person to whom an order to show cause has been directed and served shall respond to the same by filing an answer in writing. Arguments opposing the proposed sanction should be supported by reference to specific circumstances or facts surrounding the basis for the order to show cause.

(2) *Complaints.* Any respondent contesting any material fact alleged in a complaint, or contending that the amount of a proposed penalty or award is excessive or inappropriate or contending that he or she is entitled to judgment as a matter of law, shall file an answer in writing. An answer shall include:

(i) A statement that the respondent admits, denies, or does not have and is unable to obtain sufficient information to admit or deny each allegation; a statement of lack of information shall have the effect of a denial; any allegation not expressly denied shall be deemed to be admitted;

(ii) A statement of the facts supporting each affirmative defense.

(e) *Amendments and supplemental pleadings.* If and whenever determination of a controversy on the merits will be facilitated thereby, the administrative law judge may, upon such conditions as are necessary to avoid prejudicing the public interest and the rights of the parties, allow appropriate amendments to complaints, answers, or other pleadings; provided, however, that a complaint may be amended once as a matter of right prior to the answer, and thereafter if the administrative law judge determines that the amendment is reasonably within the scope of the original complaint. When issues not raised by the pleadings are reasonably within the scope of the original complaint and are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings, and such amendments may be made as necessary to make them conform to the evidence. The administrative law judge may, upon reasonable notice and such terms as are just, permit supplemental pleadings setting forth transactions, occurrences or events which have happened since the date of the pleadings and which are relevant to any of the issues involved.

### § 18.6 Motions and requests.

(a) *Generally.* Any application for an order or any other request shall be made by motion which, unless made

during a hearing or trial, shall be made in writing unless good cause is established to preclude such submission, shall state with particularity the grounds therefor, and shall set forth the relief or order sought. Motions or requests made during the course of any hearing or appearance before an administrative law judge shall be stated orally and made part of the transcript. Whether made orally or in writing, all parties shall be given reasonable opportunity to state an objection to the motion or request.

(b) *Answers to motions.* Within ten (10) days after a motion is served, or within such other period as the administrative law judge may fix, any party to the proceeding may file an answer in support or in opposition to the motion, accompanied by such affidavits or other evidence as he or she desires to rely upon. Unless the administrative law judge provides otherwise, no reply to an answer, response to a reply, or any further responsive document shall be filed.

(c) *Oral arguments or briefs.* No oral argument will be heard on motions unless the administrative law judge otherwise directs. Written memoranda or briefs may be filed with motions or answers to motions, stating the points and authorities relied upon in support of the position taken.

(d) *Motion for order compelling answer: sanctions.* (1) A party who has requested admissions or who has served interrogatories may move to determine the sufficiency of the answers or objections thereto. Unless the objecting party sustains his or her burden of showing that the objection is justified, the administrative law judge shall order that an answer be served. If the administrative law judge determines that an answer does not comply with the requirements of these rules, he or she may order either that the matter is admitted or that an amended answer be served.

(2) If a party or an officer or agent of a party fails to comply with a subpoena or with an order, including, but not limited to, an order for the taking of a deposition, the production of documents, or the answering of interrogatories, or requests for admissions, or any other order of the administrative law judge, the administrative law judge, for the purpose of permitting resolution of the relevant issues and disposition of the proceeding without unnecessary delay despite such failure, may take such action in regard thereto as is just, including but not limited to the following:

(i) Infer that the admission, testimony, documents or other evidence would have been adverse to the non-complying party;

(ii) Rule that for the purposes of the proceeding the matter or matters concerning which the order or subpoena was issued be taken as established adversely to the non-complying party;

(iii) Rule that the non-complying party may not introduce into evidence or otherwise rely upon testimony by such party, officer or agent, or the documents or other evidence, in support of or in opposition to any claim or defense;

(iv) Rule that the non-complying party may not be heard to object to introduction and use of secondary evidence to show what the withheld admission, testimony, documents, or other evidence should have shown.

(v) Rule that a pleading, or part of a pleading, or a motion or other submission by the non-complying party, concerning which the order or subpoena was issued, be stricken, or that a decision of the proceeding be rendered against the non-complying party, or both.

**§ 18.7  Prehearing statements.**

(a) At any time prior to the commencement of the hearing, the administrative law judge may order any party to file a prehearing statement of position.

(b) A prehearing statement shall state the name of the party or parties on whose behalf it is presented and shall briefly set forth the following matters, unless otherwise ordered by the administrative law judge:

(1) Issues involved in the proceeding;

(2) Facts stipulated pursuant to the procedures together with a statement that the party or parties have communicated or conferred in a good faith effort to reach stipulation to the fullest extent possible;

(3) Facts in dispute;

(4) Witnesses, except to the extent that disclosure would be privileged, and exhibits by which disputed facts will be litigated;

(5) A brief statement of applicable law;

(6) The conclusion to be drawn;

(7) Suggested time and location of hearing and estimated time required for presentation of the party's or parties' case;

(8) Any appropriate comments, suggestions or information which might assist the parties in preparing for the hearing or otherwise aid in the disposition of the proceeding.

§ 18.8 **Prehearing conferences.**

(a) *Purpose and scope.* (1) Upon motion of a party or upon the administrative law judge's own motion, the judge may direct the parties or their counsel to participate in a conference at any reasonable time, prior to or during the course of the hearing, when the administrative law judge finds that the proceeding would be expedited by a prehearing conference. Such conferences normally shall be conducted by conference telephonic communication unless, in the opinion of the administrative law judge, such method would be impractical, or when such conferences can be conducted in a more expeditious or effective manner by correspondence or personal appearance. Reasonable notice of the time, place and manner of the conference shall be given.

(2) At the conference, the following matters shall be considered:

(i) The simplification of issues;

(ii) The necessity of amendments to pleadings;

(iii) The possibility of obtaining stipulations of facts and of the authenticity, accuracy, and admissibility of documents, which will avoid unnecessary proof;

(iv) The limitation of the number of expert or other witnesses;

(v) Negotiation, compromise, or settlement of issues;

(vi) The exchange of copies of proposed exhibits;

(vii) The identification of documents or matters of which official notice may be requested;

(viii) A schedule to be followed by the parties for completion of the actions decided at the conference; and

(ix) Such other matters as may expedite and aid in the disposition of the proceeding.

(b) *Reporting.* A prehearing conference will be stenographically reported, unless otherwise directed by the administrative law judge.

(c) *Order.* Actions taken as a result of a conference shall be reduced to a written order, unless the administrative law judge concludes that a stenographic report shall suffice, or, if the conference takes place within 7 days of the beginning of the hearing, the administrative law judge elects to make a statement on the record at the hearing summarizing the actions taken.

§ 18.9 **Consent order or settlement; settlement judge procedure.**

(a) *Generally.* At any time after the commencement of a proceeding, the parties jointly may move to defer the hearing for a reasonable time to permit negotiation of a settlement or an agreement containing findings and an order disposing of the whole or any part of the proceeding. The allowance of such deferment and the duration thereof shall be in the discretion of the administrative law judge, after consideration of such factors as the nature of the proceeding, the requirements of the public interest, the representations of the parties and the probability of reaching an agreement which will result in a just disposition of the issues involved.

(b) *Content.* Any agreement containing consent findings and an order disposing of a proceeding or any part thereof shall also provide:

(1) That the order shall have the same force and effect as an order made after full hearing;

(2) That the entire record on which any order may be based shall consist solely of the complaint, order of reference or notice of administrative determination (or amended notice, if one is filed), as appropriate, and the agreement;

(3) A waiver of any further procedural steps before the administrative law judge; and

**Office of the Secretary of Labor**                    **§ 18.9**

(4) A waiver of any right to challenge or contest the validity of the order entered into in accordance with the agreement.

(c) *Submission.* On or before the expiration of the time granted for negotiations, the parties or their authorized representative or their counsel may:

(1) Submit the proposed agreement containing consent findings and an order for consideration by the administrative law judge, or

(2) Notify the administrative law judge that the parties have reached a full settlement and have agreed to dismissal of the action, or

(3) Inform the administrative law judge that agreement cannot be reached.

(d) *Disposition.* In the event an agreement containing consent findings and an order is submitted within the time allowed therefor, the administrative law judge, within thirty (30) days thereafter, shall, if satisfied with its form and substance, accept such agreement by issuing a decision based upon the agreed findings.

(e)(1) *Settlement judge procedure; purpose.* This paragraph establishes a voluntary process whereby the parties may use a settlement judge to mediate settlement negotiations. A settlement judge is an active or retired administrative law judge who convenes and presides over settlement conferences and negotiations, confers with the parties jointly and/or individually, and seeks voluntary resolution of issues. Unlike a presiding judge, a settlement judge does not render a formal judgment or decision in the case; his or her role is solely to facilitate fair and equitable solutions and to provide an assessment of the relative merits of the respective positions of the parties.

(2) *How initiated.* A settlement judge may be appointed by the Chief Administrative Law judge upon a request by a party or the presiding administrative law judge. The Chief Administrative Law Judge has sole discretion to decide whether to appoint a settlement judge, except that a settlement judge shall not be appointed when—

(i) A party objects to referral of the matter to a settlement judge;

(ii) Such appointment is inconsistent with a statute, executive order, or regulation;

(iii) The proceeding arises pursuant to Title IV of the Federal Mine Safety and Health Act, 30 U.S.C. 901 *et seq.*, also known as the Black Lung Benefits Act.

(3) *Selection of settlement judge.* (i) The selection of a settlement judge is at the sole discretion of the Chief Administrative Law Judge, provided that the individual selected—

(A) Is an active or retired administrative law judge, and

(B) Is not the administrative law judge assigned to hear and decide the case.

(ii) The settlement judge shall not be appointed to hear and decide the case.

(4) *Duration of proceeding.* Unless the Chief Administrative Law Judge directs otherwise, settlement negotiations under this section shall not exceed thirty days from the date of appointment of the settlement judge, except that with the consent of the parties, the settlement judge may request an extension from the Chief Administrative Law Judge. The negotiations will be terminated immediately if a party unambiguously indicates that it no longer wishes to participate, or if in the judgment of the settlement judge, further negotiations would be fruitless or otherwise inappropriate.

(5) *General powers of the settlement judge.* The settlement judge has the power to convene settlement conferences; to require that parties, or representatives of the parties having the authority to settle, participate in conferences; and to impose other reasonable requirements on the parties to expedite an amicable resolution of the case, provided that all such powers shall terminate immediately if negotiations are terminated pursuant to paragraph (e)(4).

(6) *Suspension of discovery.* Requests for suspension of discovery during the settlement negotiations shall be directed to the presiding administrative law judge who shall have sole discretion in granting or denying such requests.

(7) *Settlement conference.* In general the settlement judge should communicate with the parties by telephone

195

conference call. The settlement judge may, however, schedule a personal conference with the parties when:

(i) The settlement judge is scheduled to preside in other proceedings in a place convenient to all parties and representatives involved;

(ii) The offices of the attorneys or other representatives of the parties, and the settlement judge, are in the same metropolitan area; or

(iii) The settlement judge, with the concurrence of the Chief Administrative Law Judge, determines that a personal meeting is necessary for a resolution of substantial issues, and represents a prudent use of resources.

(8) *Confidentiality of settlement discussions.* All discussions between the parties and the settlement judge shall be off-the-record. No evidence regarding statements or conduct in the proceedings under this section is admissible in the instant proceeding or any subsequent administrative proceeding before the Department, except by stipulation of the parties. Documents disclosed in the settlement process may not be used in litigation unless obtained through appropriate discovery or subpoena. The settlement judge shall not discuss any aspect of the case with any administrative law judge or other person, nor be subpoenaed or called as a witness in any hearing of the case or any subsequent administrative proceedings before the Department with respect to any statement or conduct during the settlement discussions.

(9) *Contents of consent order or settlement agreement.* Any agreement disposing of all or part of the proceeding shall be written and signed by a parties. Such agreement shall conform to the requirements of paragraph (b) of this section.

(10) *Report of the settlement.* If a settlement is reached, the parties shall report to the presiding judge in writing within seven working days of the termination of negotiations. The report shall include a copy of the settlement agreement and/or proposed consent order. If a settlement is not reached, the parties shall report this to the presiding judge without further elaboration.

(11) *Review of agreement by presiding judge.* A settlement agreement arrived

at with the help of a settlement judge shall be treated by the presiding judge as would be any other settlement agreement.

(12) *Non-reviewable decisions.* Decisions concerning whether a settlement judge should be appointed, the selection of a particular settlement judge, or the termination of proceedings under this section, are not subject to review by Department officials.

[48 FR 32538, July 15, 1983, as amended at 58 FR 38500, July 16, 1993; 64 FR 47089, Aug. 27, 1999]

§ 18.10  **Parties, how designated.**

(a) The term *party* whenever used in these rules shall include any natural person, corporation, association, firm, partnership, trustee, receiver, agency, public or private organization, or governmental agency. A party who seeks relief or other affirmative action shall be designated as *plaintiff, complainant* or *claimant,* as appropriate. A party against whom relief or other affirmative action is sought in any proceeding shall be designated as a *defendant* or *respondent,* as appropriate. When a party to the proceeding, the Department of Labor shall be either a party or party-in-interest.

(b) Other persons or organizations shall have the right to participate as parties if the administrative law judge determines that the final decision could directly and adversely affect them or the class they represent, and if they may contribute materially to the disposition of the proceedings and their interest is not adequately represented by existing parties.

(c) A person or organization wishing to participate as a party under this section shall submit a petition to the administrative law judge within fifteen (15) days after the person or organization has knowledge of or should have known about the proceeding. The petition shall be filed with the administrative law judge and served on each person or organization who has been made a party at the time of filing. Such petition shall concisely state: (1) Petitioner's interest in the proceeding, (2) how his or her participation as a party will contribute materially to the disposition of the proceeding, (3) who will appear for petitioner, (4) the issues on

which petitioner wishes to participate, and (5) whether petitioner intends to present witnesses.

(d) If objections to the petition are filed, the administrative law judge shall then determine whether petitioners have the requisite interest to be a party in the proceedings, as defined in paragraphs (a) and (b) of this section, and shall permit or deny participation accordingly. Where petitions to participate as parties are made by individuals or groups with common interests, the administrative law judge may request all such petitioners to designate a single representative, or he or she may recognize one or more of such petitioners. The administrative law judge shall give each such petitioner written notice of the decision on his or her petition. If the petition is denied, he or she shall briefly state the grounds for denial and shall then treat the petition as a request for participation as amicus curiae. The administrative law judge shall give written notice to each party of each petition granted.

### § 18.11  Consolidation of hearings.

When two or more hearings are to be held, and the same or substantially similar evidence is relevant and material to the matters at issue at each such hearing, the Chief Administrative Law Judge or the administrative law judge assigned may, upon motion by any party or on his or her own motion, order that a consolidated hearing be conducted. Where consolidated hearings are held, a single record of the proceedings may be made and the evidence introduced in one matter may be considered as introduced in the others, and a separate or joint decision shall be made, at the discretion of the administrative law judge as appropriate.

### § 18.12  Amicus curiae.

A brief of an amicus curiae may be filed only with the written consent of all parties, or by leave of the administrative law judge granted upon motion, or on the request of the administrative law judge, except that consent or leave shall not be required when the brief is presented by an officer of an agency of the United States, or by a state, territory or commonwealth. The amicus curiae shall not participate in any way in the conduct of the hearing, including the presentation of evidence and the examination of witnesses.

### § 18.13  Discovery methods.

Parties may obtain discovery by one or more of the following methods: Depositions upon oral examination or written questions; written interrogatories; production of documents or other evidence for inspection and other purposes; and requests for admission. Unless the administrative law judge orders otherwise, the frequency or sequence of these methods is not limited.

### § 18.14  Scope of discovery.

(a) Unless otherwise limited by order of the administrative law judge in accordance with these rules, the parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the proceeding, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

(b) It is not ground for objection that information sought will not be admissible at the hearing if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

(c) A party may obtain discovery of documents and tangible things otherwise discoverable under paragraph (a) of this section and prepared in anticipation of or for the hearing by or for another party's representative (including his or her attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of his or her case and that he or she is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the administrative law judge shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the proceeding.

**§ 18.15  Protective orders.**

(a) Upon motion by a party or the person from whom discovery is sought, and for good cause shown, the administrative law judge may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:

(1) The discovery not be had;

(2) The discovery may be had only on specified terms and conditions, including a designation of the time or place;

(3) The discovery may be had only by a method of discovery other than that selected by the party seeking discovery;

(4) Certain matters not relevant may not be inquired into, or that the scope of discovery be limited to certain matters;

(5) Discovery be conducted with no one present except persons designated by the administrative law judge; or

(6) A trade secret or other confidential research, development or commercial information may not be disclosed or be disclosed only in a designated way.

**§ 18.16  Supplementation of responses.**

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(a) A party is under a duty to supplement timely his response with respect to any question directly addressed to:

(1) The identity and location of persons having knowledge of discoverable matters; and

(2) The identity of each person expected to be called as an expert witness at the hearing, the subject matter on which he or she is expected to testify and the substance of his or her testimony.

(b) A party is under a duty to amend timely a prior response if he or she later obtains information upon the basis of which:

(1) He or she knows the response was incorrect when made; or

(2) He or she knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(c) A duty to supplement responses may be imposed by order of the administrative law judge or agreement of the parties.

**§ 18.17  Stipulations regarding discovery.**

Unless otherwise ordered, a written stipulation entered into by all the parties and filed with the Chief Administrative Law Judge or the administrative law judge assigned may: (a) Provide that depositions be taken before any person, at any time or place, upon sufficient notice, and in any manner and when so taken may be used like other depositions, and (b) modify the procedures provided by these rules for other methods of discovery.

**§ 18.18  Written interrogatories to parties.**

(a) Any party may serve upon any other party written interrogatories to be answered in writing by the party served, or if the party served is a public or private corporation or a partnership or association or governmental agency, by any authorized officer or agent, who shall furnish such information as is available to the party. A copy of the interrogatories, answers, and all related pleadings shall be served on all parties to the proceeding. Copies of interrogatories and responses thereto shall not be filed with the Office of Administrative Law Judges unless the presiding judge so orders, the document is being offered into evidence, the document is submitted in support of a motion or a response to a motion, filing is required by a specialized rule, or there is some other compelling reason for its submission.

(b) Each interrogatory shall be answered separately and fully in writing under oath or affirmation, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer. The answers and objections shall be signed by the person making them. The party upon whom the interrogatories were served shall serve a copy of the answer and objections upon all parties to the proceeding within thirty (30) days after service of the interrogatories, or within such shorter or

198

longer period as the administrative law judge may allow.

(c) An interrogatory otherwise proper is not necessarily objectionable merely because an answer to the interrogatory involves an opinion or contention that relates to fact or the application of law to fact, but the administrative law judge may order that such an interrogatory need not be answered until after designated discovery has been completed or until a prehearing conference or other later time.

[48 FR 32538, July 15, 1983, as amended at 59 FR 41877, Aug. 15, 1994]

**§18.19  Production of documents and other evidence; entry upon land for inspection and other purposes; and physical and mental examination.**

(a) Any party may serve on any other party a request to:

(1) Produce and permit the party making the request, or a person acting on his or her behalf, to inspect and copy any designated documents, or to inspect and copy, test, or sample any tangible things which are in the possession, custody, or control of the party upon whom the request is served; or

(2) Permit entry upon designated land or other property in the possession or control of the party upon whom the request is served for the purpose of inspection and measuring, photographing, testing, or for other purposes as stated in paragraph (a)(1) of this section.

(3) Submit to a physical or mental examination by a physician.

(b) The request may be served on any party without leave of the administrative law judge.

(c) The request shall:

(1) Set forth the items to be inspected either by individual item or by category;

(2) Describe each item or category with reasonable particularity;

(3) Specify a reasonable time, place, and manner of making the inspection and performing the related acts;

(4) Specify the time, place, manner, conditions, and scope of the physical or mental examination and the person or persons by whom it is to be made. A report of examining physician shall be made in accordance with Rule 35(b) of the Federal Rules of Civil Procedure, title 28 U.S.C., as amended.

(d) The party upon whom the request is served shall serve on the party submitting the request a written response within thirty (30) days after service of the request.

(e) The response shall state, with respect to each item or category:

(1) That inspection and related activities will be permitted as requested; or

(2) That objection is made in whole or in part, in which case the reasons for objection shall be stated.

(f) A copy of each request for production and each written response shall be served on all parties, but shall not be filed with the Office of Administrative Law Judges unless the presiding judge so orders, the document is being offered into evidence, the document is submitted in support of a motion or a response to a motion, filing is required by a specialized rule, or there is some other compelling reason for its submission.

[48 FR 32538, July 15, 1983, as amended at 59 FR 41877, Aug. 15, 1994]

**§18.20  Admissions.**

(a) A party may serve upon any other party a written request for the admission, for purposes of the pending action only, of the genuineness and authenticity of any relevant document described in or attached to the request, or for the admission of the truth of any specified relevant matter of fact.

(b) Each matter of which an admission is requested is admitted unless, within thirty (30) days after service of the request or such shorter or longer time as the administrative law judge may allow, the party to whom the request is directed serves on the requesting party:

(1) A written statement denying specifically the relevant matters of which an admission is requested;

(2) A written statement setting forth in detail the reasons why he or she can neither truthfully admit nor deny them; or

(3) Written objections on the ground that some or all of the matters involved are privileged or irrelevant or that the request is otherwise improper in whole or in part.

(c) An answering party may not give lack of information or knowledge as a reason for failure to admit or deny unless the party states that he or she has made reasonable inquiry and that the information known or readily obtainable by him or her is insufficient to enable the party to admit or deny.

(d) The party who has requested the admissions may move to determine the sufficiency of the answers or objections. Unless the administrative law judge determines that an objection is justified, he or she shall order that an answer be served. If the administrative law judge determines that an answer does not comply with the requirements of this section, he or she may order either that the matter is admitted or that an amended answer be served. The administrative law judge may, in lieu of these orders, determine that final disposition of the request be made at a prehearing conference or at a designated time prior to hearing.

(e) Any matter admitted under this section is conclusively established unless the administrative law judge on motion permits withdrawal or amendment of the admission.

(f) Any admission made by a party under this section is for the purpose of the pending action only and is not an admission by him or her for any other purpose nor may it be used against him or her in any other proceeding.

(g) A copy of each request for admission and each written response shall be served on all parties, but shall not be filed with the Office of Administrative Law Judges unless the presiding judge so orders, the document is being offered into evidence, the document is submitted in support of a motion or a response to a motion, filing is required by a specialized rule, or there is some other compelling reason for its submission.

[48 FR 32538, July 15, 1983, as amended at 59 FR 41877, Aug. 15, 1994]

### § 18.21 Motion to compel discovery.

(a) If a deponent fails to answer a question propounded or a party upon whom a request is made pursuant to §§ 18.18 through 18.20, or a party upon whom interrogatories are served fails to respond adequately or objects to the request, or any part thereof, or fails to

permit inspection as requested, the discovering party may move the administrative law judge for an order compelling a response or inspection in accordance with the request.

(b) The motion shall set forth:

(1) The nature of the questions or request;

(2) The response or objections of the party upon whom the request was served; and

(3) Arguments in support of the motion.

(c) For purposes of this section, an evasive answer or incomplete answer or response shall be treated as a failure to answer or respond.

(d) In ruling on a motion made pursuant to this section, the administrative law judge may make and enter a protective order such as he or she is authorized to enter on a motion made pursuant to § 18.15(a).

### § 18.22 Depositions.

(a) *When, how, and by whom taken.* The deposition of any witness may be taken at any stage of the proceeding at reasonable times. Depositions may be taken by oral examination or upon written interrogatories before any person having power to administer oaths.

(b) *Application.* Any party desiring to take the deposition of a witness shall indicate to the witness and all other parties the time when, the place where, and the name and post office address of the person before whom the deposition is to be taken; the name and address of each witness; and the subject matter concerning which each such witness is expected to testify.

(c) *Notice.* Notice shall be given for the taking of a deposition, which shall not be less than five (5) days written notice when the deposition is to be taken within the continental United States and not less than twenty (20) days written notice when the deposition is to be taken elsewhere. A copy of the Notice shall not be filed with the Office of Administrative Law Judges unless the presiding judge so orders, the document is being offered into evidence, the document is submitted in support of a motion or a response to a motion, filing is required by a specialized rule, or there is some other compelling reason for its submission.

**Office of the Secretary of Labor**                    **§ 18.23**

(d) *Taking and receiving in evidence.* Each witness testifying upon deposition shall be sworn, and any other party shall have the right to cross-examine. The questions propounded and the answers thereto, together with all objections made, shall be reduced to writing; read by or to, and subscribed by the witness; and certified by the person administering the oath. Subject to such objections to the questions and answers as were noted at the time of taking the deposition and which would have been valid if the witness were personally present and testifying, such deposition may be read and offered in evidence by the party taking it as against any party who was present or represented at the taking of the deposition or who had due notice thereof.

(e) *Motion to terminate or limit examination.* During the taking of a deposition, a party or deponent may request suspension of the deposition on grounds of bad faith in the conduct of the examination, oppression of a deponent or party or improper questions propounded. The deposition will then be adjourned. However, the objecting party or deponent must immediately move the administrative law judge for a ruling on his or her objections to the deposition conduct or proceedings. The administrative law judge may limit the scope or manner of the taking of the deposition.

[48 FR 32538, July 15, 1983; 49 FR 2739, Jan. 20, 1984; 59 FR 41877, Aug. 15, 1994]

**§ 18.23   Use of depositions at hearings.**

(a) *Generally.* At the hearing, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof in accordance with any one of the following provisions:

(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness.

(2) The deposition of expert witnesses, particularly the deposition of physicians, may be used by any party for any purpose, unless the administrative law judge rules that such use would be unfair or a violation of due process.

(3) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or duly authorized agent of a public or private corporation, partnership, or association which is a party, may be used by any other party for any purpose.

(4) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the presiding officer finds:

(i) That the witness is dead; or

(ii) That the witness is out of the United States or more than 100 miles from the place of hearing unless it appears that the absence of the witness was procured by the party offering the deposition; or

(iii) That the witness is unable to attend to testify because of age, sickness, infirmity, or imprisonment; or

(iv) That the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or

(v) Upon application and notice, that such exceptional circumstances exist at to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open hearing, to allow the deposition to be used.

(5) If only part of a deposition is offered in evidence by a party, any other party may require him or her to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.

(6) Substitution of parties does not affect the right to use depositions previously taken; and, when a proceeding in any hearing has been dismissed and another proceeding involving the same subject matter is afterward brought between the same parties or their representatives or successors in interest, all depositions lawfully taken and duly filed in the former proceeding may be used in the latter as if originally taken therefor.

(b) *Objections to admissibility.* Except as provided in this paragraph, objection may be made at the hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying.

201

(1) Objections to the competency of a witness or to the competency, relevancy, or materiality of testimony are not waived by failure to make them before or during the taking of the deposition, unless the ground of the objection is one which might have been obviated or removed if presented at that time.

(2) Errors and irregularities occurring at the oral examination in the manner of taking the deposition, in the form of the questions or answers, in the oath or affirmation, or in the conduct of parties and errors of any kind which might be obviated, removed, or cured if promptly presented, are waived unless reasonable objection thereto is made at the taking of the deposition.

(3) Objections to the form or written interrogatories are waived unless served in writing upon the party propounding them.

(c) *Effect of taking or using depositions.* A party shall not be deemed to make a person his or her own witness for any purpose by taking his or her deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, but this shall not apply to the use by any other party of a deposition as described in paragraph (a)(2) of this section. At the hearing, any party may rebut any relevant evidence contained in a deposition whether introduced by him or her or by any other party.

§ 18.24   **Subpoenas.**

(a) Except as provided in paragraph (b) of this section, the Chief Administrative Law Judge or the presiding administrative law judge, as appropriate, may issue subpoenas as authorized by statute or law upon written application of a party requiring attendance of witnesses and production of relevant papers, books, documents, or tangible things in their possession and under their control. A subpoena may be served by certified mail or by any person who is not less than 18 years of age. A witness, other than a witness for the Federal Government, may not be required to attend a deposition or hearing unless the mileage and witness fee applicable to witnesses in courts of the United States for each date of attendance is paid in advance of the date of the proceeding.

(b) If a party's written application for subpoena is submitted three (3) working days or less before the hearing to which it relates, a subpoena shall issue at the discretion of the Chief Administrative Law Judge or presiding administrative law judge, as appropriate.

(c) *Motion to quash or limit subpoena.* Within ten (10) days of receipt of a subpoena but no later than the date of the hearing, the person against whom it is directed may file a motion to quash or limit the subpoena, setting forth the reasons why the subpoena should be withdrawn or why it should by limited in scope. Any such motion shall be answered within ten (10) days of service, and shall be ruled on immediately thereafter. The order shall specify the date, if any, for compliance with the specifications of the subpoena.

(d) *Failure to comply.* Upon the failure of any person to comply with an order to testify or a subpoena, the party adversely affected by such failure to comply may, where authorized by statute or by law, apply to the appropriate district court for enforcement of the order or subpoena.

§ 18.25   **Designation of administrative law judge.**

Hearings shall be held before an administrative law judge appointed under 5 U.S.C. 3105 and assigned to the Department of Labor. The presiding judge shall be designated by the Chief Administrative Law Judge.

§ 18.26   **Conduct of hearings.**

Unless otherwise required by statute or regulations, hearings shall be conducted in conformance with the Administrative Procedure Act, 5 U.S.C. 554.

§ 18.27   **Notice of hearing.**

(a) *Generally.* Except when hearings are scheduled by calendar call, the administrative law judge to whom the matter is referred shall notify the parties by mail of a day, time, and place set for hearing thereon or for a prehearing conference, or both. No date

earlier than fifteen (15) days after the date of such notice shall be set for such hearing or conference, except by agreement of the parties. Service of such notice shall be made by regular, first-class mail, unless under the circumstances it appears to the administrative law judge that certified mail, mailgram, telephone, or any combination of these methods should be used instead.

(b) *Change of date, time and place.* The Chief Administrative Law Judge or the administrative law judge assigned to the case may change the time, date and place of the hearing, or temporarily adjourn a hearing, on his or her own motion or for good cause shown by a party. The parties shall be given not less than ten (10) days notice of the new hearing date, unless they agree to such change without such notice.

(c) *Place of hearing.* Unless otherwise required by statute or regulation, due regard shall be given to the convenience of the parties and the witnesses in selecting a place for the hearing.

### § 18.28  Continuances.

(a) *When granted.* Continuances will only by granted in cases of prior judicial commitments or undue hardship, or a showing of other good cause.

(b) *Time limit for requesting.* Except for good cause arising thereafter, requests for continuances must be filed within fourteen (14) days prior to the date set for hearing.

(c) *How filed.* Motions for continuances shall be in writing. At least 3″ x 3½″ of blank space shall be provided on the last page of the motion to permit space for the entry of an order by the administrative law judge. Copies shall be served on all parties. Any motions for continuances made within ten (10) days of the date of the scheduled proceeding shall, in addition to the written request, be telephonically conveyed to the administrative law judge or a member of his or her staff and to all other parties. Motions for continuances, based on reasons not reasonably ascertainable prior thereto, may also be made on the record at calendar calls, prehearing conferences or hearings.

(d) *Ruling.* Time permitting, the administrative law judge shall issue a written order in advance of the scheduled proceeding date which either allows or denies the request. Otherwise the ruling may be made orally by telephonic communication to the party requesting same who shall be responsible for telephonically notifying all other parties. Oral orders shall be confirmed in writing.

[48 FR 32538, July 15, 1983; 49 FR 2739, Jan. 20, 1984]

### § 18.29  Authority of administrative law judge.

(a) *General powers.* In any proceeding under this part, the administrative law judge shall have all powers necessary to the conduct of fair and impartial hearings, including, but not limited to, the following:

(1) Conduct formal hearings in accordance with the provisions of this part;

(2) Administer oaths and examine witnesses;

(3) Compel the production of documents and appearance of witnesses in control of the parties;

(4) Compel the appearance of witnesses by the issuance of subpoenas as authorized by statute or law;

(5) Issue decisions and orders;

(6) Take any action authorized by the Administrative Procedure Act;

(7) Exercise, for the purpose of the hearing and in regulating the conduct of the proceeding, such powers vested in the Secretary of Labor as are necessary and appropriate therefor;

(8) Where applicable, take any appropriate action authorized by the Rules of Civil Procedure for the United States District Courts, issued from time to time and amended pursuant to 28 U.S.C. 2072; and

(9) Do all other things necessary to enable him or her to discharge the duties of the office.

(b) *Enforcement.* If any person in proceedings before an adjudication officer disobeys or resists any lawful order or process, or misbehaves during a hearing or so near the place thereof as to obstruct the same, or neglects to produce, after having been ordered to do so, any pertinent book, paper or document, or refuses to appear after having been subpoenaed, or upon appearing refuses to take the oath as a

witness, or after having taken the oath refuses to be examined according to law, the administrative law judge responsible for the adjudication, where authorized by statute or law, may certify the facts to the Federal District Court having jurisdiction in the place in which he or she is sitting to request appropriate remedies.

§ 18.30  Unavailability of administrative law judge.

In the event the administrative law judge designated to conduct the hearing becomes unavailable, the Chief Administrative Law Judge may designate another administrative law judge for the purpose of further hearing or other appropriate action.

§ 18.31  Disqualification.

(a) When an administrative law judge deems himself or herself disqualified to preside in a particular proceeding, such judge shall withdraw therefrom by notice on the record directed to the Chief Administrative Law Judge.

(b) Whenever any party shall deem the administrative law judge for any reason to be disqualified to preside, or to continue to preside, in a particular proceeding, that party shall file with the administrative law judge a motion to recuse. The motion shall be supported by an affidavit setting forth the alleged grounds for disqualification. The administrative law judge shall rule upon the motion.

(c) In the event of disqualification or recusal of an administrative law judge as provided in paragraph (a) or (b) of this section, the Chief Administrative Law Judge shall refer the matter to another administrative law judge for further proceedings.

§ 18.32  Separation of functions.

No officer, employee, or agent of the Federal Government engaged in the performance of investigative or prosecutorial functions in connection with any proceeding shall, in that proceeding or a factually related proceeding, participate or advise in the decision of the administrative law judge, except as a witness or counsel in the proceedings.

§ 18.33  Expedition.

Hearings shall proceed with all reasonable speed, insofar as practicable and with due regard to the convenience of the parties.

§ 18.34  Representation.

(a) *Appearances.* Any party shall have the right to appear at a hearing in person, by counsel, or by other representative, to examine and cross-examine witnesses, and to introduce into the record documentary or other relevant evidence, except that the participation of any intervenor shall be limited to the extent prescribed by the administrative law judge.

(b) Each attorney or other representative shall file a notice of appearance. Such notice shall indicate the name of the case or controversy, the docket number if assigned, and the party on whose behalf the appearance is made.

(c) *Rights of parties.* Every party shall have the right of timely notice and all other rights essential to a fair hearing, including, but not limited to, the rights to present evidence, to conduct such cross-examination as may be necessary for a full and complete disclosure of the facts, and to be heard by objection, motion, and argument.

(d) *Rights of participants.* Every participant shall have the right to make a written or oral statement of position. At the discretion of the administrative law judge, participants may file proposed findings of fact, conclusions of law and a post hearing brief.

(e) *Rights of witnesses.* Any person compelled to testify in a proceeding in response to a subpoena may be accompanied, represented, and advised by counsel or other representative, and may purchase a transcript of his or her testimony.

(f) *Office of the Solicitor.* The Department of Labor shall be represented by the Solicitor of Labor or his or her designee and shall participate to the degree deemed appropriate by the Solicitor.

(g) *Qualifications*—(1) *Attorneys.* An attorney at law who is admitted to practice before the Federal courts or before the highest court of any State, the District of Columbia, or any territory or commonwealth of the United States, may practice before the Office

of Administrative Law Judges. An attorney's own representation that he or she is in good standing before any of such courts shall be sufficient proof thereof, unless otherwise ordered by the administrative law judge. Any attorney of record must file prior notice in writing of intent to withdraw as counsel.

(2) *Persons not attorneys.* Any citizen of the United States who is not an attorney at law shall be admitted to appear in a representative capacity in an adjudicative proceeding. An application by a person not an attorney at law for admission to appear in a proceeding shall be submitted in writing to the Chief Administrative Law Judge prior to the hearing in the proceedings or to the administrative law judge assigned at the commencement of the hearing. The application shall state generally the applicant's qualifications to appear in the proceedings. The administrative law judge may, at any time, inquire as to the qualification or ability of such person to render legal assistance.

(3) *Denial of authority to appear.* The administrative law judge may deny the privilege of appearing to any person, within applicable statutory constraints, e.g. 5 U.S.C. 555, who he or she finds after notice of and opportunity for hearing in the matter does not possess the requisite qualifications to represent others; or is lacking in character or integrity; has engaged in unethical or improper professional conduct; or has engaged in an act involving moral turpitude. No provision hereof shall apply to any person who appears on his or her own behalf or on behalf of any corporation, partnership, or association of which the person is a partner, officer, or regular employee.

(h) *Authority for representation.* Any individual acting in a representative capacity in any adjudicative proceeding may be required by the administrative law judge to show his or her authority to act in such capacity. A regular employee of a party who appears on behalf of the party may be required by the administrative law judge to show his or her authority to so appear.

[48 FR 32538, July 15, 1983; 49 FR 2739, Jan. 20, 1984]

### § 18.35   Legal assistance.

The Office of Administrative Law Judges does not have authority to appoint counsel, nor does it refer parties to attorneys.

### § 18.36   Standards of conduct.

(a) All persons appearing in proceedings before an administrative law judge are expected to act with integrity, and in an ethical manner.

(b) The administrative law judge may exclude parties, participants, and their representatives for refusal to comply with directions, continued use of dilatory tactics, refusal to adhere to reasonable standards of orderly and ethical conduct, failure to act in good faith, or violation of the prohibition against ex parte communications. The administrative law judge shall state in the record the cause for suspending or barring an attorney or other representative from participation in a particular proceeding. Any attorney or other representative so suspended or barred may appeal to the Chief Judge but no proceeding shall be delayed or suspended pending disposition of the appeal; provided, however, that the administrative law judge shall suspend the proceeding for a reasonable time for the purpose of enabling the party to obtain another attorney or representative.

### § 18.37   Hearing room conduct.

Proceedings shall be conducted in an orderly manner. The consumption of food or beverage, smoking, or rearranging of courtroom furniture, unless specifically authorized by the administrative law judge, are prohibited.

[48 FR 32538, July 15, 1983; 49 FR 2739, Jan. 20, 1984]

### § 18.38   Ex parte communications.

(a) The administrative law judge shall not consult any person, or party, on any fact in issue unless upon notice and opportunity for all parties to participate. Communications by the Office of Administrative Law Judges, the assigned judge, or any party for the sole purpose of scheduling hearings or requesting extensions of time are not considered ex-parte communications, except that all other parties shall be

notified of such request by the requesting party and be given an opportunity to respond thereto.

(b) *Sanctions.* A party or participant who makes a prohibited ex parte communication, or who encourages or solicits another to make any such communication, may be subject to any appropriate sanction or sanctions, including, but not limited to, exclusion from the proceedings and adverse ruling on the issue which is the subject of the prohibited communication.

### § 18.39   Waiver of right to appear and failure to participate or to appear.

(a) *Waiver of right to appear.* If all parties waive their right to appear before the administrative law judge or to present evidence or argument personally or by representative, it shall not be necessary for the administrative law judge to give notice of and conduct an oral hearing. A waiver of the right to appear and present evidence and allegations as to facts and law shall be made in writing and filed with the Chief Administrative Law Judge or the administrative law judge. Where such a waiver has been filed by all parties and they do not appear before the administrative law judge personally or by representative, the administrative law judge shall make a record of the relevant written evidence submitted by the parties, together with any pleadings they may submit with respect to the issues in the case. Such documents shall be considered as all of the evidence in the case, and the decision shall be based on them.

(b) *Dismissal—Abandonment by Party.* A request for hearing may be dismissed upon its abandonment or settlement by the party or parties who filed it. A party shall be deemed to have abandoned a request for hearing if neither the party nor his or her representative appears at the time and place fixed for the hearing and either (a) prior to the time for hearing such party does not show good cause as to why neither he or she nor his or her representative can appear or (b) within ten (10) days after the mailing of a notice to him or her by the administrative law judge to show cause, such party does not show good cause for such failure to appear and fails to notify the administrative

law judge prior to the time fixed for hearing that he or she cannot appear. A default decision, under § 18.5(b), may be entered against any party failing, without good cause, to appear at a hearing.

### § 18.40   Motion for summary decision.

(a) Any party may, at least twenty (20) days before the date fixed for any hearing, move with or without supporting affidavits for a summary decision on all or any part of the proceeding. Any other party may, within ten (10) days after service of the motion, serve opposing affidavits or countermove for summary decision. The administrative law judge may set the matter for argument and/or call for submission of briefs.

(b) Filing of any documents under paragraph (a) of this section shall be with the administrative law judge, and copies of such documents shall be served on all parties.

(c) Any affidavits submitted with the motion shall set forth such facts as would be admissible in evidence in a proceeding subject to 5 U.S.C. 556 and 557 and shall show affirmatively that the affiant is competent to testify to the matters stated therein. When a motion for summary decision is made and supported as provided in this section, a party opposing the motion may not rest upon the mere allegations or denials of such pleading. Such response must set forth specific facts showing that there is a genuine issue of fact for the hearing.

(d) The administrative law judge may enter summary judgment for either party if the pleadings, affidavits, material obtained by discovery or otherwise, or matters officially noticed show that there is no genuine issue as to any material fact and that a party is entitled to summary decision. The administrative law judge may deny the motion whenever the moving party denies access to information by means of discovery to a party opposing the motion.

### § 18.41   Summary decision.

(a) *No genuine issue of material fact.* (1) Where no genuine issue of a material fact is found to have been raised, the administrative law judge may issue a decision to become final as provided by the statute or regulations under which

the matter is to be heard. Any final decision issued as a summary decision shall conform to the requirements for all final decisions.

(2) An initial decision and a final decision made under this paragraph shall include a statement of:

(i) Findings of fact and conclusions of law, and the reasons therefor, on all issues presented; and

(ii) Any terms and conditions of the rule or order.

(3) A copy of any initial decision and final decision under this paragraph shall be served on each party.

(b) *Hearings on issue of fact.* Where a genuine question of material fact is raised, the administrative law judge shall, and in any other case may, set the case for an evidentiary hearing.

**§ 18.42  Expedited proceedings.**

(a) When expedited proceedings are required by statute or regulation, or at any time after commencement of a proceeding, any party may move to advance the scheduling of a proceeding.

(b) Except when such proceedings are required or as otherwise directed by the Chief Administrative Law Judge or the administrative law judge assigned, any party filing a motion under this section shall:

(1) Make the motion in writing;

(2) Describe the circumstances justifying advancement;

(3) Describe the irreparable harm that would result if the motion is not granted; and

(4) Incorporate in the motion affidavits to support any representations of fact.

(c) Service of a motion under this section shall be accomplished by personal delivery or by telephonic or telegraphic communication followed by mail. Service is complete upon personal delivery or mailing.

(d) Except when such proceedings are required, or unless otherwise directed by the Chief Administrative Law Judge or the administrative law judge assigned, all parties to the proceeding in which the motion is filed shall have ten (10) days from the date of service of the motion to file an opposition in response to the motion.

(e) Following the timely receipt by the administrative law judge of statements in response to the motion, the administrative law judge may advance pleading schedules, prehearing conferences, and the hearing, as deemed appropriate: provided, however, that a hearing on the merits shall not be scheduled with less than five (5) working days notice to the parties, unless all parties consent to an earlier hearing.

(f) When expedited hearings are required by statute or regulation, such hearing shall be scheduled within sixty (60) days from the receipt of request for hearing or order of reference. The decision of the administrative law judge shall be issued within twenty (20) days after receipt of the transcript of any oral hearing or within twenty (20) days after the filing of all documentary evidence if no oral hearing is conducted.

**§ 18.43  Formal hearings.**

(a) *Public.* Hearings shall be open to the public. However, in unusual circumstances, the administrative law judge may order a hearing or any part thereof closed, where to do so would be in the best interests of the parties, a witness, the public or other affected persons. Any order closing the hearing shall set forth the reasons for the decision. Any objections thereto shall be made a part of the record.

(b) *Jurisdiction.* The administrative law judge shall have jurisdiction to decide all issues of fact and related issues of law.

(c) *Amendments to conform to the evidence.* When issues not raised by the request for hearing, prehearing stipulation, or prehearing order are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence may be made on motion of any party at any time; but failure to so amend does not affect the result of the hearing of these issues. The administrative law judge may grant a continuance to enable the objecting party to meet such evidence.

**§ 18.44  [Reserved]**

**§ 18.45  Official notice.**

Official notice may be taken of any material fact, not appearing in evidence in the record, which is among the traditional matters of judicial notice: Provided, however, that the parties shall be given adequate notice, at the hearing or by reference in the administrative law judge's decision, of the matters so noticed, and shall be given adequate opportunity to show the contrary.

**§ 18.46  In camera and protective orders.**

(a) *Privileges.* Upon application of any person the administrative law judge may limit discovery or introduction of evidence or issue such protective or other orders as in his or her judgment may be consistent with the objective of protecting privileged communications.

(b) *Classified or sensitive matter.* (1) Without limiting the discretion of the administrative law judge to give effect to any other applicable privilege, it shall be proper for the administrative law judge to limit discovery or introduction of evidence or to issue such protective or other orders as in his or her judgment may be consistent with the objective of preventing undue disclosure of classified or sensitive matter. Where the administrative law judge determines that information in documents containing sensitive matter should be made available to a respondent, he or she may direct the party to prepare an unclassified or nonsensitive summary or extract of the original. The summary or extract may be admitted as evidence in the record.

(2) If the administrative law judge determines that this procedure is inadequate and that classified or otherwise sensitive matter must form part of the record in order to avoid prejudice to a party, he or she may advise the parties and provide opportunity for arrangements to permit a party or a representative to have access to such matter. Such arrangements may include obtaining security clearances or giving counsel for a party access to sensitive information and documents subject to assurances against further disclosure.

**§ 18.47  Exhibits.**

(a) *Identification.* All exhibits offered in evidence shall be numbered and marked with a designation identifying the party or intervenor by whom the exhibit is offered.

(b) *Exchange of exhibits.* When written exhibits are offered in evidence, one copy must be furnished to each of the parties at the hearing, and one copy to the administrative law judge, unless the parties previously have been furnished with copies or the administrative law judge directs otherwise. If the administrative law judge has not fixed a time for the exchange of exhibits the parties shall exchange copies of exhibits at the earliest practicable time, preferably before the hearing, or at the latest at the commencement of the hearing.

(c) *Substitution of copies for original exhibits.* The administrative law judge may permit a party to withdraw original documents offered in evidence and substitute true copies in lieu thereof.

**§ 18.48  Records in other proceedings.**

In case any portion of the record in any other proceeding or civil or criminal action is offered in evidence, a true copy of such portion shall be presented for the record in the form of an exhibit unless the administrative law judge directs otherwise.

**§ 18.49  Designation of parts of documents.**

Where relevant and material matter offered in evidence is embraced in a document containing other matter not material or relevant and not intended to be put in evidence, the participant offering the same shall plainly designate the matter so offered, segregating and excluding insofar as practicable the immaterial or irrelevant parts. If other matter in such document is in such bulk or extent as would necessarily encumber the record, such document will not be received in evidence, but may be marked for identification, and if properly authenticated, the relevant and material parts thereof may be read into the record, or if the administrative law judge so directs, a true copy of such matter in proper form shall be received in evidence as an exhibit, and copies shall be delivered

by the participant offering the same to the other parties or their attorneys appearing at the hearing, who shall be afforded an opportunity to examine the entire document and to offer in evidence in like manner other material and relevant portions thereof.

### § 18.50  Authenticity.

The authenticity of all documents submitted as proposed exhibits in advance of the hearing shall be deemed admitted unless written objection thereto is filed prior to the hearing, except that a party will be permitted to challenge such authenticity at a later time upon a clear showing of good cause for failure to have filed such written objection.

### § 18.51  Stipulations.

The parties may by stipulation in writing at any stage of the proceeding, or orally made at hearing, agree upon any pertinent facts in the proceeding. It is desirable that the facts be thus agreed upon so far as and whenever practicable. Stipulations may be received in evidence at a hearing or prior thereto, and when received in evidence, shall be binding on the parties thereto.

### § 18.52  Record of hearings.

(a) All hearings shall be mechanically or stenographically reported. All evidence upon which the administrative law judge relies for decision shall be contained in the transcript of testimony, either directly or by appropriate reference. All exhibits introduced as evidence shall be marked for identification and incorporated into the record. Transcripts may be obtained by the parties and the public from the official reporter at rates not to exceed the applicable rates fixed by the contract with the reporter.

(b) *Corrections.* Corrections to the official transcript will be permitted upon motion. Motions for correction must be submitted within ten (10) days of the receipt of the transcript unless additional time is permitted by the administrative law judge. Corrections of the official transcript will be permitted only when errors of substance are involved and only upon approval of the administrative law judge.

### § 18.53  Closing of hearings.

The administrative law judge may hear arguments of counsel and may limit the time of such arguments at his or her discretion, and may allow briefs to be filed on behalf of either party but shall closely limit the time within which the briefs for both parties shall be filed, so as to avoid unreasonable delay.

### § 18.54  Closing the record.

(a) When there is a hearing, the record shall be closed at the conclusion of the hearing unless the administrative law judge directs otherwise.

(b) If any party waives a hearing, the record shall be closed on the date set by the administrative law judge as the final date for the receipt of submissions of the parties to the matter.

(c) Once the record is closed, no additional evidence shall be accepted into the record except upon a showing that new and material evidence has become available which was not readily available prior to the closing of the record. However, the administrative law judge shall make part of the record, any motions for attorney fees authorized by statutes, and any supporting documentation, any determinations thereon, and any approved correction to the transcript.

### § 18.55  Receipt of documents after hearing.

Documents submitted for the record after the close of the hearing will not be received in evidence except upon ruling of the administrative law judge. Such documents when submitted shall be accompanied by proof that copies have been served upon all parties, who shall have an opportunity to comment thereon. Copies shall be received not later than twenty (20) days after the close of the hearing except for good cause shown, and not less than ten (10) days prior to the date set for filing briefs. Exhibit numbers should be assigned by counsel or the party.

### § 18.56  Restricted access.

On his or her own motion, or on the motion of any party, the administrative law judge may direct that there be a restricted access portion of the record to contain any material in the

record to which public access is restricted by law or by the terms of a protective order entered in the proceedings. This portion of the record shall be place in a separate file and clearly marked to avoid improper disclosure and to identify it as a portion of the official record in the proceedings.

**§ 18.57  Decision of the administrative law judge.**

(a) *Proposed findings of fact, conclusions, and order.* Within twenty (20) days of filing of the transcript of the testimony or such additional time as the administrative law judge may allow, each party may file with the administrative law judge, subject to the judge's discretion under § 18.55, proposed findings of fact, conclusions of law, and order together with a supporting brief expressing the reasons for such proposals. Such proposals and brief shall be served on all parties, and shall refer to all portions of the record and to all authorities relied upon in support of each proposal.

(b) *Decision of the administrative law judge.* Within a reasonable time after the time allowed for the filing of the proposed findings of fact, conclusions of law, and order, or within thirty (30) days after receipt of an agreement containing consent findings and order disposing of the disputed matter in whole, the administrative law judge shall make his or her decision. The decision of the administrative law judge shall include findings of fact and conclusions of law, with reasons therefor, upon each material issue of fact or law presented on the record. The decision of the administrative law judge shall be based upon the whole record. It shall be supported by reliable and probative evidence. Such decision shall be in accordance with the regulations and rulings of the statute or regulation conferring jurisdiction.

**§ 18.58  Appeals.**

The procedures for appeals shall be as provided by the statute or regulation under which hearing jurisdiction is conferred. If no provision is made therefor, the decision of the administrative law judge shall become the final administrative decision of the Secretary.

**§ 18.59  Certification of official record.**

Upon timely receipt of either a notice or a petition, the Chief Administrative Law Judge shall promptly certify and file with the reviewing authority, appellate body, or appropriate United States District Court, a full, true, and correct copy of the entire record, including the transcript of proceedings.

## Subpart B—Rules of Evidence

SOURCE: 55 FR 13219, Apr. 9, 1990, unless otherwise noted.

GENERAL PROVISIONS

**§ 18.101  Scope.**

These rules govern formal adversarial adjudications of the United States Department of Labor conducted before a presiding officer.

(a) Which are required by Act of Congress to be determined on the record after opportunity for an administrative agency hearing in accordance with the Administrative Procedure Act, 5 U.S.C. 554, 556 and 557, or

(b) Which by United States Department of Labor regulation are conducted in conformance with the foregoing provisions, to the extent and with the exceptions stated in § 18.1101. *Presiding officer*, referred to in these rules as *the judge*, means an Administrative Law Judge, an agency head, or other officer who presides at the reception of evidence at a hearing in such an adjudication.

**§ 18.102  Purpose and construction.**

These rules shall be construed to secure fairness in administration, elimination of unjustifiable expense and delay, and promotion of growth and development of the law of evidence to the end that the truth may be ascertained and proceedings justly determined.

**§ 18.103  Rulings on evidence.**

(a) *Effect of erroneous ruling.* Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

(1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context; or

(2) *Offer of proof.* In case the ruling is one excluding evidence, the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. A substantial right of the party is affected unless it is more probably true than not true that the error did not materially contribute to the decision or order of the judge. Properly objected to evidence admitted in error does not affect a substantial right if explicitly not relied upon by the judge in support of the decision or order.

(b) *Record of offer and ruling.* The judge may add any other or further statement which shows the character of the evidence, the form in which it was offered, the objection made, and the ruling thereon. The judge may direct the making of an offer in question and answer form.

(c) *Plain error.* Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the judge.

**§ 18.104   Preliminary questions.**

(a) *Questions of admissibility generally.* Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the judge, subject to the provisions of paragraph (b) of this section. In making such determination the judge is not bound by the rules of evidence except those with respect to privileges.

(b) *Relevance conditioned on fact.* When the relevancy of evidence depends upon the fulfillment of a condition of fact, the judge shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition.

(c) *Weight and credibility.* This rule does not limit the right of a party to introduce evidence relevant to weight or credibility.

**§ 18.105   Limited admissibility.**

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the judge, upon request, shall restrict the evidence to its proper scope.

**§ 18.106   Remainder of or related writings or recorded statements.**

When a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it.

OFFICIAL NOTICE

**§ 18.201   Official notice of adjudicative facts.**

(a) *Scope of rule.* This rule governs only official notice of adjudicative facts.

(b) *Kinds of facts.* An officially noticed fact must be one not subject to reasonable dispute in that it is either:

(1) Generally known within the local area,

(2) Capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, or

(3) Derived from a not reasonably questioned scientific, medical or other technical process, technique, principle, or explanatory theory within the administrative agency's specialized field of knowledge.

(c) *When discretionary.* A judge may take official notice, whether requested or not.

(d) *When mandatory.* A judge shall take official notice if requested by a party and supplied with the necessary information.

(e) *Opportunity to be heard.* A party is entitled, upon timely request, to an opportunity to be heard as to the propriety of taking official notice and the tenor of the matter noticed. In the absence of prior notification, the request may be made after official notice has been taken.

(f) *Time of taking notice.* Official notice may be taken at any stage of the proceeding.

(g) *Effect of official notice.* An officially noticed fact is accepted as conclusive.

PRESUMPTIONS

**§ 18.301   Presumptions in general.**

Except as otherwise provided by Act of Congress, or by rules or regulations prescribed by the administrative agency pursuant to statutory authority, or pursuant to executive order, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

**§ 18.302   Applicability of state law.**

The effect of a presumption respecting a fact which is an element of a claim or defense as to which State law supplies the rule of decision is determined in accordance with State law.

RELEVANCY AND ITS LIMITS

**§ 18.401   Definition of *relevant evidence.***

*Relevant evidence* means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

**§ 18.402   Relevant evidence generally admissible; irrelevant evidence inadmissible.**

All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, pursuant to executive order, by these rules, or by other rules or regulations prescribed by the administrative agency pursuant to statutory authority. Evidence which is not relevant is not admissible.

**§ 18.403   Exclusion of relevant evidence on grounds of confusion or waste of time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of confusion of issues, or misleading the

judge as trier of fact, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**§ 18.404   Character evidence not admissible to prove conduct; exceptions; other crimes.**

(a) *Character evidence generally.* Evidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion, except evidence of the character of a witness, as provided in §§ 18.607, 18.608, and 18.609.

(b) *Other crimes, wrongs, or acts.* Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

**§ 18.405   Methods of proving character.**

(a) *Reputation of opinion.* In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) *Specific instances of conduct.* In cases in which character or a trait of character of a person is an essential element of a claim or defense, proof may also be made of specific instances of that person's conduct.

**§ 18.406   Habit; routine practice.**

Evidence of the habit of a person or of the routine practice of an organization, whether corroborated or not and regardless of the presence of eyewitnesses, is relevant to prove that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice.

**§ 18.407   Subsequent remedial measures.**

When, after an event, measures are taken which, if taken previously, would have made the event less likely

212

**Office of the Secretary of Labor** §18.601

to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

### §18.408 Compromise and offers to compromise.

Evidence of furnishing or offering or promising to furnish, or of accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, or negativing a contention of undue delay.

### §18.409 Payment of medical and similar expenses.

Evidence of furnishing or offering or promising to pay medical, hospital, or similar expenses occasioned by an injury is not admissible to prove liability for the injury.

### §18.410 Inadmissibility of pleas, plea discussion, and related statements.

Except as otherwise provided in this rule, evidence of the following is not admissible against the defendant who made the plea or was a participant in the plea discussions:

(a) A plea of guilty which was later withdrawn;

(b) A plea of nolo contendere;

(c) Any statement made in the course of any proceedings under Rule 11 of the Federal Rules of Criminal Procedure or comparable state procedure regarding either of the foregoing pleas; or

(d) Any statement made in the course of plea discussions with an attorney for the prosecuting authority which do not result in a plea of guilty or which result in a plea of guilty later withdrawn. However, such a statement is admissible in any proceeding wherein another statement made in the course of the same plea discussions has been introduced and the statement ought in fairness be considered contemporaneously with it.

### §18.411 Liability insurance.

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

### Privileges

### §18.501 General rule.

Except as otherwise required by the Constitution of the United States, or provided by Act of Congress, or by rules or regulations prescribed by the administrative agency pursuant to statutory authority, or pursuant to executive order, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

### Witnesses

### §18.601 General rule of competency.

Every person is competent to be a witness except as otherwise provided in these rules. However with respect to an element of a claim or defense as to which State law supplies the rule of decision, the competency of a witness

shall be determined in accordance with State law.

### § 18.602   Lack of personal knowledge.

A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may, but need not, consist of the witness' own testimony. This rule is subject to the provisions of §18.703, relating to opinion testimony by expert witnesses.

### § 18.603   Oath or affirmation.

Before testifying, every witness shall be required to declare that the witness will testify truthfully, by oath or affirmation administered in a form calculated to awaken the witness' conscience and impress the witness' mind with the duty to do so.

### § 18.604   Interpreters.

An interpreter is subject to the provisions of these rules relating to qualification as an expert and the administration of an oath or affirmation to make a true translation.

### § 18.605   Competency of judge as witness.

The judge presiding at the hearing may not testify in that hearing as a witness. No objection need be made in order to preserve the point.

### § 18.606   [Reserved]

### § 18.607   Who may impeach.

The credibility of a witness may be attacked by any party, including the party calling the witness.

### § 18.608   Evidence of character and conduct of witness.

(a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations:

(1) The evidence may refer only to character for truthfulness or untruthfulness, and

(2) Evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific instances of conduct.* Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in §18.609, may not be proved by extrinsic evidence. They may, however, in the discretion of the judge, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness, concerning the witness' character for truthfulness or untruthfulness, or concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

The giving of testimony by any witness does not operate as a waiver of the witness' privilege against self-incrimination when examined with respect to matters which relate only to credibility.

### § 18.609   Impeachment by evidence of conviction of crime.

(a) *General rule.* For the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a crime shall be admitted if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, or involved dishonesty or false statement, regardless of the punishment.

(b) *Time limit.* Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date.

(c) *Effect of pardon, annulment, or certificate of rehabilitation.* Evidence of a conviction is not admissible under this rule if:

(1) The conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedure based on a finding of the rehabilitation of the person convicted, and that person has not been convicted of a subsequent crime which was punishable by death or imprisonment in excess of one year, or

**Office of the Secretary of Labor**                      **§ 18.614**

(2) The conviction has been the subject of a pardon, annulment, or other equivalent procedure based on a finding of innocence.

(d) *Juvenile adjudications.* Evidence of juvenile adjudications is not admissible under this rule.

(e) *Pendency of appeal.* The pendency of an appeal therefrom does not render evidence of a conviction inadmissible. Evidence of the pendency of an appeal is admissible.

[55 FR 13219, Apr. 9, 1990; 55 FR 14033, Apr. 13, 1990]

**§ 18.610  Religious beliefs or opinions.**

Evidence of the beliefs or opinions of a witness on matters of religion is not admissible for the purpose of showing that by reason of their nature the witness' credibility is impaired or enhanced.

**§ 18.611  Mode and order of interrogation and presentation.**

(a) *Control by judge.* The judge shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to:

(1) Make the interrogation and presentation effective for the ascertainment of the truth,

(2) Avoid needless consumption of time, and

(3) Protect witnesses from harassment or undue embarrassment.

(b) *Scope of cross-examination.* Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The judge may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

(c) *Leading questions.* Leading questions should not be used on the direct examination of a witness except as may be necessary to develop the witness' testimony. Ordinarily leading questions should be permitted on cross-examination. When a party calls a hostile witness, an adverse party, or a witness identified with an adverse party, interrogation may be by leading questions.

**§ 18.612  Writing used to refresh memory.**

If a witness uses a writing to refresh memory for the purpose of testifying, either while testifying, or before testifying if the judge in the judge's discretion determines it is necessary in the interest of justice, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the judge shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto. Any portion withheld over objections shall be preserved and made available in the event of review. If a writing is not produced or delivered pursuant to order under this rule, the judge shall make any order justice requires.

**§ 18.613  Prior statements of witnesses.**

(a) *Examining witness concerning prior statement.* In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.

(b) *Extrinsic evidence of prior inconsistent statement of witness.* Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in § 18.801(d)(2).

**§ 18.614  Calling and interrogation of witnesses by judge.**

(a) *Calling by the judge.* The judge may, on the judge's own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called.

(b) *Interrogation by the judge.* The judge may interrogate witnesses,

whether called by the judge or by a party.

(c) *Objections.* Objections to the calling of witnesses by the judge or to interrogation by the judge must be timely.

### § 18.615 Exclusion of witnesses.

At the request of a party the judge shall order witnesses excluded so that they cannot hear the testimony of other witnesses, and the judge may make the order of the judge's own motion. This rule does not authorize exclusion of a party who is a natural person, or an officer or employee of a party which is not a natural person designated as its representative by its attorney, or a person whose presence is shown by a party to be essential to the presentation of the party's cause.

OPINIONS AND EXPERT TESTIMONY

### § 18.701 Opinion testimony by lay witnesses.

If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness and helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.

### § 18.702 Testimony by experts.

If scientific, technical, or other specialized knowledge will assist the judge as trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

### § 18.703 Bases of opinion testimony by experts.

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

### § 18.704 Opinion on ultimate issue.

Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the judge as trier of fact.

### § 18.705 Disclosure of facts or data underlying expert opinion.

The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on cross-examination.

### § 18.706 Judge appointed experts.

(a) *Appointment.* The judge may on the judge's own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The judge may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of the judge's own selection. An expert witness shall not be appointed by the judge unless the witness consents to act. A witness so appointed shall be informed of the witness' duties by the judge in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have an opportunity to participate. A witness so appointed shall advise the parties of the witness' findings, if any; the witness' deposition may be taken by any party; and the witness may be called to testify by the judge or any party. The witness shall be subject to cross-examination by each party, including a party calling the witness.

(b) *Compensation.* Expert witnesses so appointed are entitled to reasonable compensation in whatever sum the judge may allow. The compensation thus fixed is payable from funds which may be provided by law in hearings involving just compensation under the fifth amendment. In other hearings the compensation shall be paid by the parties in such proportion and at such time as the judge directs, and thereafter charged in like manner as other costs.

**Office of the Secretary of Labor** § 18.803

(c) *Parties' experts of own selection.* Nothing in this rule limits the parties in calling expert witnesses of their own selection.

HEARSAY

**§ 18.801 Definitions.**

(a) *Statement.* A *statement* is (1) an oral or written assertion, or (2) non-verbal conduct of a person, if it is intended by the person as an assertion.

(b) *Declarant.* A *declarant* is a person who makes a statement.

(c) *Hearsay. Hearsay* is a statement, other than one made by the declarant while testifying at the hearing, offered in evidence to prove the truth of the matter asserted.

(d) *Statements which are not hearsay.* A statement is not hearsay if:

(1) *Prior statement by witness.* The declarant testifies at the hearing and is subject to cross-examination concerning the statement, and the statement is—

(i) Inconsistent with the declarant's testimony, or

(ii) Consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, or

(iii) One of identification of a person made after perceiving the person; or

(2) *Admission by party-opponent.* The statement is offered against a party and is—

(i) The party's own statement in either an individual or a representative capacity, or

(ii) A statement of which the party has manifested an adoption or belief in its truth, or

(iii) A statement by a person authorized by the party to make a statement concerning the subject, or

(iv) A statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship, or

(v) A statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

**§ 18.802 Hearsay rule.**

Hearsay is not admissible except as provided by these rules, or by rules or regulations of the administrative agency prescribed pursuant to statutory authority, or pursuant to executive order, or by Act of Congress.

**§ 18.803 Hearsay exceptions; availability of declarant immaterial.**

(a) The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

(1) *Present sense impression.* A statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.

(2) *Excited utterance.* A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.

(3) *Then existing mental, emotional, or physical condition.* A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, and bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

(4) *Statements for purposes of medical diagnosis or treatment.* Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

(5) *Recorded recollection.* A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable the witness to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in the witness' memory and to reflect that knowledge correctly.

(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the

217

course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term *business* as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

(7) *Absence of entry in records kept in accordance with the provisions of paragraph (6)*. Evidence that a matter is not included in the memoranda reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness.

(8) *Public records and reports*. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth—

(i) The activities of the office or agency, or

(ii) Matters observed pursuant to duty imposed by law as to which matters there was a duty to report, or

(iii) Factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

(9) *Records of vital statistics*. Records or data compilations, in any form, of births, fetal deaths, deaths, or marriages, if the report thereof was made to a public office pursuant to requirements of law.

(10) *Absence of public record or entry*. To prove the absence of a record, report, statement, or data compilation, in any form, or the nonoccurrence or nonexistence of a matter of which a record, report, statement, or data compilation, in any form, was regularly made and preserved by a public office or agency, evidence in the form of a

certification in accordance with § 18.902, or testimony, that diligent search failed to disclose the record, report, statement, or date compilation, or entry.

(11) *Records of religious organizations*. Statements of births, marriages, divorces, deaths, legitimacy, ancestry, relationship by blood or marriage, or other similar facts of personal or family history, contained in a regularly kept record of a religious organization.

(12) *Marriage, baptismal, and similar certificates*. Statements of fact contained in a certificate that the maker performed a marriage or other ceremony or administered a sacrament, made by a clergyman, public official, or other person authorized by the rules or practices of a religious organization or by law to perform the act certified, and purporting to have been issued at the time of the act or within a reasonable time thereafter.

(13) *Family records*. Statements of fact concerning personal or family history contained in family Bibles, genealogies, charts, engravings on rings, inscriptions on family portraits, engravings on urns, crypts, or tombstones, or the like.

(14) *Records of documents affecting an interest in property*. The record of a document purporting to establish or affect an interest in property, as proof of the content of the original recorded document and its execution and delivery by each person by whom it purports to have been executed, if the record is a record of a public office and an applicable statute authorizes the recording of documents of that kind in that office.

(15) *Statements in documents affecting an interest in property*. A statement contained in a document purporting to establish or affect an interest in property if the matter stated was relevant to the purpose of the document, unless dealings with the property since the document was made have been inconsistent with the truth of the statement or the purport of the document.

(16) *Statements in ancient documents*. Statements in a document in existence twenty years or more the authenticity of which is established.

(17) *Market reports, commercial publications*. Market quotations, tabulations, lists, directories, or other published

compilations, generally used and relied upon by the public or by persons in particular occupations.

(18) *Learned treatises.* To the extent called to the attention of an expert witness upon cross-examination or relied upon by the expert witness in direct examination, statements contained in published treatises, periodicals, or pamphlets on a subject of history, medicine, or other science or art, established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by official notice.

(19) *Reputation concerning personal or family history.* Reputation among members of a person's family by blood, adoption, or marriage, or among a person's associates, or in the community, concerning a person's birth, adoption, marriage, divorce, death, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history.

(20) *Reputation concerning boundaries or general history.* Reputation in a community, arising before the controversy, as to boundaries of or customs affecting lands in the community, and reputation as to events of general history important to the community or State or nation in which located.

(21) *Reputation as to character.* Reputation of a person's character among associates or in the community.

(22) *Judgment of previous conviction.* Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of one year, to prove any fact essential to sustain the judgment. The pendency of an appeal may be shown but does not affect admissibility.

(23) *Judgment as to personal, family, or general history, or boundaries.* Judgments as proof of matters of personal, family or general history, or boundaries, essential to the judgment, if the same would be provable by evidence of reputation.

(24) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness to the aforementioned hear-

say exceptions, if the judge determines that (i) the statement is offered as evidence of a material fact; (ii) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and (iii) the general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

(25) *Self-authentication.* The self-authentication of documents and other items as provided in § 18.902.

(26) *Bills, estimates and reports.* In actions involving injury, illness, disease, death, disability, or physical or mental impairment, or damage to property, the following bills, estimates, and reports as relevant to prove the value and reasonableness of the charges for services, labor and materials stated therein and, where applicable, the necessity for furnishing the same, unless the sources of information or other circumstances indicate lack of trustworthiness, provided that a copy of said bill, estimate, or report has been served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it:

(i) Hospital bills on the official letterhead or billhead of the hospital, when dated and itemized.

(ii) Bills of doctors and dentists, when dated and containing a statement showing the date of each visit and the charge therefor.

(iii) Bills of registered nurses, licensed practical nurses and physical therapists, or other licensed health care providers when dated and containing an itemized statement of the days and hours of service and charges therefor.

(iv) Bills for medicine, eyeglasses, prosthetic device, medical belts or

similar items, when dated and itemized.

(v) Property repair bills or estimates, when dated and itemized, setting forth the charges for labor and material. In the case of an estimate, the party intending to offer the estimate shall forward with his notice to the adverse party, together with a copy of the estimate, a statement indicating whether or not the property was repaired, and, if so, whether the estimated repairs were made in full or in part and by whom, the cost thereof, together with a copy of the bill therefore.

(vi) Reports of past earnings, or of the rate of earnings and time lost from work or lost compensation, prepared by an employer on official letterhead, when dated and itemized. The adverse party may not dispute the authenticity, the value or reasonableness of such charges, the necessity therefore or the accuracy of the report, unless the adverse party files and serves written objection thereto sufficiently in advance of the hearing stating the objections, and the grounds thereof, that the adverse party will make if the bill, estimate, or reports is offered at the time of the hearing. An adverse party may call the author of the bill, estimate, or report as a witness and examine the witness as if under cross-examination.

(27) *Medical reports.* In actions involving injury, illness, disease, death, disability, or physical or mental impairment, doctor, hospital, laboratory and other medical reports, made for purposes of medical treatment, unless the sources of information or other circumstances indicate lack of trustworthiness, provided that a copy of the report has been filed and served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it. The adverse party may not object to the admissibility of the report unless the adverse party files and serves written objection thereto sufficiently in advance of the hearing stating the objections, and the grounds therefor, that the adverse party will make if the report is offered at the time of the hearing. An adverse party may call the author of the medical report as a witness and ex-

amine the witness as if under cross-examination.

(28) *Written reports of expert witnesses.* Written reports of an expert witness prepared with a view toward litigation, including but not limited to a diagnostic report of a physician, including inferences and opinions, when on official letterhead, when dated, when including a statement of the expert's qualifications, when including a summary of experience as an expert witness in litigation, when including the basic facts, data, and opinions forming the basis of the inferences or opinions, and when including the reasons for or explanation of the inferences and opinions, so far as admissible under rules of evidence applied as though the witness was then present and testifying, unless the sources of information or the method or circumstances of preparation indicate lack of trustworthiness, provided that a copy of the report has been filed and served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it. The adverse party may not object to the admissibility of the report unless the adverse party files and serves written objection thereto sufficiently in advance of the hearing stating the objections, and the grounds therefor, that the adverse party will make if the report is offered at the time of the hearing. An adverse party may call the expert as a witness and examine the witness as if under cross-examination.

(29) *Written statements of lay witnesses.* Written statements of a lay witness made under oath or affirmation and subject to the penalty of perjury, so far as admissible under the rules of evidence applied as though the witness was then present and testifying, unless the sources of information or the method or circumstances of preparation indicate lack of trustworthiness provided that (i) a copy of the written statement has been filed and served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it, and (ii) if the declarant is reasonably available as a witness, as determined by the judge, no

**Office of the Secretary of Labor** §18.804

adverse party has sufficiently in advance of the hearing filed and served upon the noticing party a written demand that the declarant be produced in person to testify at the hearing. An adverse party may call the declarant as a witness and examine the witness as if under cross-examination.

(30) *Deposition testimony.* Testimony given as a witness in a deposition taken in compliance with law in the course of the same proceeding, so far as admissible under the rules of evidence applied as though the witness was then present and testifying, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination, provided that a notice of intention to offer the deposition in evidence, together with a copy thereof if not otherwise previously provided, has been served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it. An adverse party may call the deponent as a witness and examine the witness as if under cross-examination.

(b) [Reserved]

**§ 18.804  Hearsay exceptions; declarant unavailable.**

(a) *Definition of unavailability. Unavailability as a witness* includes situations in which the declarant:

(1) Is exempted by ruling of the judge on the ground of privilege from testifying concerning the subject matter of the declarant's statement; or

(2) Persists in refusing to testify concerning the subject matter of the declarant's statement despite an order of the judge to do so; or

(3) Testifies to a lack of memory of the subject matter of the declarant's statement; or

(4) Is unable to be present or to testify at the hearing because of death or then existing physical or mental illness or infirmity; or

(5) Is absent from the hearing and the proponent of a statement has been unable to procure the declarant's attendance (or in the case of a hearsay exception under paragraph (b) (2), (3), or (4) of this section, the declarant's attend-

ance or testimony) by process or other reasonable means.

A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing the witness from attending or testifying.

(b) *Hearsay exceptions.* The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

(1) *Former testimony.* Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

(2) *Statement under belief of impending death.* A statement made by a declarant while believing that the declarant's death was imminent, concerning the cause or circumstances of what the declarant believed to be impending death.

(3) *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless believing it to be true.

(4) *Statement of personal or family history.* (i) A statement concerning the declarant's own birth, adoption, marriage, divorce, legitimacy, relationship by blood, adoption, or marriage, ancestry, or other similar fact of personal or family history, even though declarant had no means of acquiring personal knowledge of the matter stated; or

(ii) A statement concerning the foregoing matters, and death also, of another person, if the declarant was related to the other by blood, adoption, or marriage or was so intimately associated with the other's family as to be likely to have accurate information concerning the matter declared.

221

(5) *Other exceptions.* A statement not specifically covered by any of the foregoing exceptions but having equivalent circumstantial guarantees of trustworthiness to the aforementioned hearsay exceptions, if the judge determines that—

(i) The statement is offered as evidence of a material fact;

(ii) The statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(iii) The general purposes of these rules and the interests of justice will best be served by admission of the statement into evidence. However, a statement may not be admitted under this exception unless the proponent of it makes known to the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to meet it, the proponent's intention to offer the statement and the particulars of it, including the name and address of the declarant.

**§ 18.805  Hearsay within hearsay.**

Hearsay included within hearsay is not excluded under the hearsay rule if each part of the combined statements conforms with an exception to the hearsay rule provided in these rules.

**§ 18.806  Attacking and supporting credibility of declarant.**

When a hearsay statement, or a statement defined in § 18.801(d)(2), (iii), (iv), or (v), has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with the declarant's hearsay statement, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

Authentication and Identification

**§ 18.901  Requirement of authentication or identification.**

(a) *General provision.* The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.* By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) *Testimony of witness with knowledge.* Testimony that a matter is what it is claimed to be.

(2) *Nonexpert opinion on handwriting.* Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of litigation.

(3) *Comparison by judge or expert witness.* Comparison by the judge as trier of fact or by expert witnesses with specimens which have been authenticated.

(4) *Distinctive characteristics and the like.* Appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.

(5) *Voice identification.* Identification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at any time under circumstances connecting it with the alleged speaker.

(6) *Telephone conversations.* Telephone conversations, by evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if—

(i) In the case of a person, circumstances, including self-identification, show the person answering to be the one called, or

(ii) In the case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone.

(7) *Public records or reports.* Evidence that a writing authorized by law to be recorded or filed and in fact recorded or filed in a public office, or a purported public record, report, statement, or

**Office of the Secretary of Labor** § 18.902

data compilation, in any form, is from the public office where items of this nature are kept.

(8) *Ancient documents or data compilation.* Evidence that a document or data compilation, in any form,

(i) Is in such condition as to create no suspicion concerning its authenticity,

(ii) Was in a place where it, if authentic, would likely be, and

(iii) Has been in existence 20 years or more at the time it is offered.

(9) *Process or system.* Evidence describing a process or system used to produce a result and showing that the process or system produces an accurate result.

(10) *Methods provided by statute or rule.* Any method of authentication or identification provided by Act of Congress, or by rule or regulation prescribed by the administrative agency pursuant to statutory authority, or pursuant to executive order.

### § 18.902  Self-authentication.

(a) Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

(1) *Domestic public documents under seal.* A document bearing a seal purporting to be that of the United States, or of any State, district, Commonwealth, territory, or insular possession thereof, or the Panama Canal Zone, or the Trust Territory of the Pacific Islands, or of a political subdivision, department, officer, or agency thereof, and a signature purporting to be an attestation or execution.

(2) *Domestic public documents not under seal.* A document purporting to bear the signature in the official capacity of an officer or employee of any entity included in paragraph (a)(1) of this section, having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.

(3) *Foreign public documents.* A document purporting to be executed or attested in an official capacity by a person authorized by the laws of a foreign country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position—

(i) Of the executing or attesting person, or

(ii) Of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the judge may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification.

(4) *Certified copies of public records.* A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form, certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (a) (1), (2), or (3) of this section, with any Act of Congress, or with any rule or regulation prescribed by the administrative agency pursuant to statutory authority, or pursuant to executive order.

(5) *Official publications.* Books, pamphlets, or other publications purporting to be issued by public authority.

(6) *Newspapers and periodicals.* Printed materials purporting to be newspapers or periodicals.

(7) *Trade inscriptions and the like.* Inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin.

(8) *Acknowledged documents.* Documents accompanied by a certificate of acknowledgment executed in the manner provided by law by a notary public

or other officer authorized by law to take acknowledgments.

(9) *Commercial paper and related documents.* Commercial paper, signatures thereon, and documents relating thereto to the extent provided by general commercial law.

(10) *Presumptions under Acts of Congress or administrative agency rules or regulations.* Any signature, document, or other matter declared by Act of Congress or by rule or regulation prescribed by the administrative agency pursuant to statutory authority or pursuant to executive order to be presumptively or prima facie genuine or authentic.

(11) *Certified records of regularly conducted activity.* The original or a duplicate of a record of regularly conducted activity, within the scope of §18.803(6), which the custodian thereof or another qualified individual certifies

(i) Was made, at or near the time of the occurrence of the matters set forth, by, or from information transmitted by, a person with knowledge of those matters,

(ii) Is kept in the course of the regularly conducted activity, and

(iii) Was made by the regularly conducted activity as a regular practice, unless the sources of information or the method or circumstances of preparation indicate lack of trustworthiness. A record so certified is not self-authenticating under this paragraph unless the proponent makes an intention to offer it known to the adverse party and makes it available for inspection sufficiently in advance of its offer in evidence to provide the adverse party with a fair opportunity to object or meet it. As used in this subsection, *certifies* means, with respect to a domestic record, a written declaration under oath subject to the penalty of perjury and, with respect to a foreign record, a written declaration signed in a foreign country which, if falsely made, would subject the maker to criminal penalty under the laws of that country.

(12) *Bills, estimates, and reports.* In actions involving injury, illness, disease, death, disability, or physical or mental impairment, or damage to property, the following bills, estimates, and reports provided that a copy of said bill, estimate, or report has been served

upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it:

(i) Hospital bills on the official letterhead or billhead of the hospital, when dated and itemized.

(ii) Bills of doctors and dentists, when dated and containing a statement showing the date of each visit and the charge therefor.

(iii) Bills of registered nurses, licensed practical nurses and physical therapists or other licensed health care providers, when dated and containing an itemized statement of the days and hours of service and the charges therefor.

(iv) Bills for medicine, eyeglasses, prosthetic devices, medical belts or similar items, when dated and itemized.

(v) Property repair bills or estimates, when dated and itemized, setting forth the charges for labor and material. In the case of an estimate, the party intending to offer the estimate shall forward with his notice to the adverse party, together with a copy of the estimate, a statement indicating whether or not the property was repaired, and, if so, whether the estimated repairs were made in full or in part and by whom, the cost thereof, together with a copy of the bill therefor.

(vi) Reports of past earnings, or of the rate of earnings and time lost from work or lost compensation, prepared by an employer on official letterhead, when dated and itemized. The adverse party may not dispute the authenticity, therefor, unless the adverse party files and serves written objection thereto sufficiently in advance of the hearing stating the objections, and the grounds therefor, the adverse party will make if the bill, estimate, or report is offered at the time of the hearing. An adverse party may call the authors of the bill, estimate, or report as a witness and examine the witness as if under cross-examination.

(13) *Medical reports.* In actions involving injury, illness, disease, death, disability or physical or mental impairment, doctor, hospital, laboratory and other medical reports made for purposes of medical treatment, provided that a copy of the report has been filed

and served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it. The adverse party may not object to the authenticity of the report unless the adverse party files and serves written objection thereto sufficiently in advance of the hearing stating the objections, and the grounds therefor, that the adverse party will make if the report is offered at the time of the hearing. An adverse party may call the author of the medical report as a witness and examine the witness as if under cross-examination.

(14) *Written reports of expert witnesses.* Written reports of an expert witness prepared with a view toward litigation including but not limited to a diagnostic report of a physician, including inferences and opinions, when on official letterhead, when dated, when including a statement of the experts qualifications, when including a summary of experience as an expert witness in litigation, when including the basic facts, data, and opinions forming the basis of the inferences or opinions, and when including the reasons for or explanation of the inferences or opinions, so far as admissible under the rules of evidence applied as though the witness was then present and testifying, provided that a copy of the report has been filed and served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it. The adverse party may not object to the authenticity of the report unless the adverse party files and serves written objection thereto sufficiently in advance of the hearing stating the objections, and the grounds therefor, that the adverse party will make if the report is offered at the time of the hearing. An adverse party may call the expert as a witness and examine the witness as if under cross-examination.

(15) *Written statements of lay witnesses.* Written statements of a lay witness made under oath or affirmation and subject to the penalty of perjury, so far as admissible under the rules of evidence applied as though the witness was then present and testifying, provided that:

(i) A copy of the written statement has been filed and served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it, and

(ii) If the declarant is reasonably available as a witness, as determined by the judge, no adverse party has sufficiently in advance of the hearing filed and served upon the noticing party a written demand that the declarant be produced in person to testify at the hearing. An adverse party may call the declarant as a witness and examine the witness as if under cross-examination.

(16) *Deposition testimony.* Testimony given as a witness in a deposition taken in compliance with law in the course of the same proceeding, so far as admissible under the rules of evidence applied as though the witness was then present and testifying, if the party against whom the testimony is now offered had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination, provided that a notice of intention to offer the deposition in evidence, together with a copy thereof if not otherwise previously provided, has been served upon the adverse party sufficiently in advance of the hearing to provide the adverse party with a fair opportunity to prepare to object or meet it. An adverse party may call the deponent as a witness and examine the witness as if under cross-examination.

(b) [Reserved]

**§ 18.903 Subscribing witness' testimony unnecessary.**

The testimony of a subscribing witness is not necessary to authenticate a writing unless required by the laws of the jurisdiction whose laws govern the validity of the writing.

CONTENTS OF WRITINGS, RECORDINGS, AND PHOTOGRAPHS

**§ 18.1001 Definitions.**

(a) For purposes of this article the following definitions are applicable:

(1) *Writings and recordings. Writings* and *recordings* consist of letters, words, or numbers, or their equivalent, set down by handwriting, typewriting, printing, photostating, photographing,

magnetic impulse, mechanical or electronic recording, or other form of data compilation.

(2) *Photographs. Photographs* include still photographs, X-ray films, video tapes, and motion pictures.

(3) *Original.* An *original* of a writing or recording is the writing or recording itself or any counterpart intended to have the same effect by a person executing or issuing it. An *original* of a photograph includes the negative or, other than with respect to X-ray films, any print therefrom. If data are stored in a computer or similar device, any printout or other output readable by sight, shown to reflect the data accurately, is an *original*.

(4) *Duplicate.* A *duplicate* is a counterpart produced by the same impression as the original, or from the same matrix, or by means of photography, including enlargements and miniatures, or by mechanical or electronic recording, or by chemical reproduction, or by other equivalent techniques which accurately reproduces the original.

(b) [Reserved]

### § 18.1002   Requirement of original.

To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules, or by rule or regulation prescribed by the administrative agency pursuant to statutory authority, or pursuant to executive order, or by Act of Congress.

### § 18.1003   Admissibility of duplicates.

A duplicate is admissible to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the duplicate in lieu of the original.

### § 18.1004   Admissibility of other evidence of contents.

(a) The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if:

(1) *Originals lost or destroyed.* All originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith; or

(2) *Original not obtainable.* No original can be obtained by any available judicial process or procedure; or

(3) *Original in possession of opponent.* At a time when an original was under the control of the party against whom offered, that party was put on notice, by the pleading or otherwise, that the contents would be a subject of proof at the hearing, and that party does not produce the original at the hearing; or

(4) *Collateral matters.* The writing, recording, or photograph is not closely related to a controlling issue.

(b) [Reserved]

### § 18.1005   Public records.

The contents of an official record, or of a document authorized to be recorded or filed and actually recorded or filed, including data compilations in any form, if otherwise admissible, may be proved by copy, certified as correct in accordance with § 18.902 or testified to be correct by a witness who has compared it with the original. If a copy which complies with the foregoing cannot be obtained by the exercise of reasonable diligence, then other evidence of the contents may be given.

### § 18.1006   Summaries.

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined at the hearing may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The judge may order that they be produced at the hearing.

### § 18.1007   Testimony or written admission of party.

Contents of writings, recordings, or photographs may be proved by the testimony or deposition of the party against whom offered or by that party's written admission, without accounting for the nonproduction of the original.

### § 18.1008   Functions of the judge.

When the admissibility of other evidence of contents of writings, recordings, or photographs under these rules

...

depends upon the fulfillment of a condition of fact, the question whether the condition has been fulfilled is ordinarily for the judge to determine in accordance with the provisions of §18.104(a). However, when an issue is raised whether the asserted writing ever existed; or whether another writing, recording, or photograph produced at the hearing is the original; or whether other evidence of contents correctly reflects the contents, the issue is for the judge as trier of fact to determine as in the case of other issues of fact.

APPLICABILITY

**§ 18.1101   Applicability of rules.**

(a) *General provision.* These rules govern formal adversarial adjudications conducted by the United States Department of Labor before a presiding officer.

(1) Which are required by Act of Congress to be determined on the record after opportunity for an administrative agency hearing in accordance with the Administrative Procedure Act, 5 U.S.C. 554, 556 and 557, or

(2) Which by United States Department of Labor regulation are conducted in conformance with the foregoing provisions. *Presiding officer,* referred to in these rules as *the judge,* means an Administrative Law Judge, an agency head, or other officer who presides at the reception of evidence at a hearing in such an adjudication.

(b) *Rules inapplicable.* The rules (other than with respect to privileges) do not apply in the following situations:

(1) *Preliminary questions of fact.* The determination of questions of fact preliminary to admissibility of evidence when the issue is to be determined by the judge under §18.104.

(2) *Longshore, black lung, and related acts.* Other than with respect to §§18.403, 18.611(a), 18.614 and without prejudice to current practice, hearings held pursuant to the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 901; the Federal Mine Safety and Health Act (formerly the Federal Coal Mine Health and Safety Act) as amended by the Black Lung Benefits Act, 30 U.S.C. 901; and acts such as the Defense

Base Act, 42 U.S.C. 1651; the District of Columbia Workmen's Compensation Act, 36 DC Code 501; the Outer Continental Shelf Lands Act, 43 U.S.C. 1331; and the Nonappropriated Fund Instrumentalities Act, 5 U.S.C. 8171, which incorporate section 23(a) of the Longshore and Harbor Workers' Compensation Act by reference.

(c) *Rules inapplicable in part.* These rules do not apply to the extent inconsistent with, in conflict with, or to the extent a matter is otherwise specifically provided by an Act of Congress, or by a rule or regulation of specific application prescribed by the United States Department of Labor pursuant to statutory authority, or pursuant to executive order.

**§ 18.1102   [Reserved]**

**§ 18.1103   Title.**

These rules may be known as the United States Department of Labor Rules of Evidence and cited as 29 CFR 18.____ (1989).

**§ 18.1104   Effective date.**

These rules are effective thirty days after date of publication with respect to formal adversarial adjudications as specified in §18.1101 except that with respect to hearings held following an investigation conducted by the United States Department of Labor, these rules shall be effective only where the investigation commenced thirty days after publication.

APPENDIX TO SUBPART B OF PART 18—
REPORTER'S NOTES

Reporter's Introductory Note

The Rules of Evidence for the United States Department of Labor modify the Federal Rules of Evidence for application in formal adversarial adjudications conducted by the United States Department of Labor. The civil nonjury nature of the hearings and the broad underlying values and goals of the administrative process are given recognition in these rules.

REPORTER'S NOTE TO § 18.102

In all formal adversarial adjudications of the United States Department of Labor governed by these rules, and in particular such

adjudications in which a party appears without the benefit of counsel, the judge is required to construe these rules and to exercise discretion as provided in the rules, see, e.g., §18.403, to secure fairness in administration and elimination of unjustifiable expense and delay to the end that the truth may be ascertained and the proceedings justly determined, §18.102. The judge shall also exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment, §18.611(a).

REPORTER'S NOTE TO §18.103

Section 18.103(a) provides that error is not harmless, i.e., a substantial right is affected, unless on review it is determined that it is more probably true than not true that the error did not materially contribute to the decision or order of the court. The more probably true than not true test is the most liberal harmless error standard. See *Haddad* v. *Lockheed California Corp.*, 720 F.2d 1454, 1458–59 (9th Cir. 1983):

The purpose of a harmless error standard is to enable an appellate court to gauge the probability that the trier of fact was affected by the error. See R. Traynor, [The Riddle of Harmless Error] at 29–30. Perhaps the most important factor to consider in fashioning such a standard is the nature of the particular fact-finding process to which the standard is to be applied. Accordingly, a crucial first step in determining how we should gauge the probability that an error was harmless is recognizing the distinction between civil and criminal trials. See *Kotteakos* v. *United States*, 328 U.S. 750, 763, 66 S.Ct. 1239, 1247, 90 L.Ed. 1557 (1946); *Valle-Valdez*, 544 F.2d at 914–15. This distinction has two facets, each of which reflects the differing burdens of proof in civil and criminal cases. First, the lower burden of proof in civil cases implies a larger margin of error. The danger of the harmless error doctrine is that an appellate court may usurp the jury's function, by merely deleting improper evidence from the record and assessing the sufficiency of the evidence to support the verdict below. See *Kotteakos*, 328 U.S. at 764–65, 66 S.Ct. at 1247–48; R. Traynor, *supra*, at 18–22. This danger has less practical importance where, as in most civil cases, the jury verdict merely rests on a more probable than not standard of proof.

The second facet of the distinction between errors in civil and criminal trials involves the differing degrees of certainty owed to civil and criminal litigants. Whereas a criminal defendant must be found guilty beyond a reasonable doubt, a civil litigant merely has a right to a jury verdict that more probably than not corresponds to the truth.

The term *materially contribute* was chosen as the most appropriate in preference to *substantially swayed, Kotteakos* v. *United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed 1557 (1946) or *material effect. Holloway* v. *Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). The word *contribute* was employed in *Schneble* v. *Florida*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340 (1972) and *United States* v. *Hastings*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983).

Error will not be considered in determining whether a substantial right of a party was affected if the evidence was admitted in error following a properly made objection, §18.103(a)(1), and the judge explicitly states that he or she does not rely on such evidence in support of the decision or order. The judge must explicitly decline to rely upon the improperly admitted evidence. The alternative of simply assuming nonreliance unless the judge explicitly states reliance, goes too far toward emasculating the benefits flowing from rules of evidence.

The question addressed in *Richardson* v. *Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) of whether *substantial evidence* as specified in §556(d) of the Administrative Procedure Act requires that there be a residuum of legally admissible evidence to support an agency determination is of no concern with respect to these rules; only properly admitted evidence is to be considered in determining whether the *substantial evidence* requirement has been satisfied.

REPORTER'S NOTE TO §18.104

As to the standard on review with respect to questions of admissibility generally, section 18.104(a), *see In re Japanese Electronic Products Antitrust Litigation*, 723 F.2d 238, 265–66 (3d Cir. 1983) ("The scope of review of the trial court's trustworthiness determination depends on the basis for the ruling. When the trial court makes §18.104(a) findings of historical fact about the manner in which a report containing findings was compiled we review by the clearly erroneous standard of Fed.R.Civ.P. 52. But a determination of untrustworthiness, if predicated on factors properly extraneous to such a determination, would be an error of law * * * * There is no discretion to rely on improper factors. Such an error of law might, of course, in a given instance be harmless within the meaning of Fed.R.Civ.P. 61. In weighing factors which we consider proper, the trial court exercises discretion and we review for abuse of discretion. Giving undue weight to trustworthiness factors of slight relevance while disregarding factors more significant, for example, might be an abuse of discretion."). Accord, *United States* v. *Wilson*, 798 F.2d 509 (1st Cir. 1986).

As to the standard on review with respect to relevancy, conditional relevancy and the

228

**Office of the Secretary of Labor**                           **Pt. 18, Subpt. B, App.**

exercise of discretion, see, e.g., *United States* v. *Abel*, 469 U.S. 45, 54, 105 S.Ct. 465, 470, 83 L.Ed.2d 450 (1984) ("A district court is accorded a wide discretion in determining the admissibility of evidence under the Federal Rules. Assessing the probative value of common membership in any particular group, and weighing any factors counselling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403 and ultimately, if the evidence is admitted, for the trier of fact."); *Alford* v. *United States*, 282 U.S. 687, 694, 51 S.Ct. 218, 220, 75 L.Ed 624 (1931) ("The extent of cross-examination with respect to an appropriate subject of inquiry is within the sound discretion of the trial court. It may exercise a reasonable judgment in determining when the subject is exhausted."); *Hill* v. *Bache Halsey Stuart Shields Inc.*, 790 F.2d 817, 825 (10th Cir. 1986) ("We recognize that a trial court has broad discretion to determine whether evidence is relevant, and its decision will not be reversed on appeal absent a showing of clear abuse of that discretion. *Beacham* v. *Lee-Norse*, 714 F.2d 1010, 1014 (10th Cir. 1983). The same standard of review applies to a trial court's determination, under Fed.R.Evid. 403, that the probative value of the evidence is outweighed by its potential to prejudice or confuse the jury, or to lead to undue delay. *Id.*").

REPORTER'S NOTE TO § 18.201

A.P.A. section 556(e) provides that "when an agency decision rests on official notice of a material fact not appearing in the evidence in the record, a party is entitled, on timely request, to an opportunity to show the contrary." No definition of "official notice" is provided. An administrative agency may take official notice of any adjudicative fact that could be judicially noticed by a court. In addition "the rule is now clearly emerging that an administrative agency may take official notice of any generally recognized technical or scientific facts within the agency's specialized knowledge, subject always to the proviso that the parties must be given adequate advance notice of the facts which the agency proposes to note, and given adequate opportunity to show the inaccuracy of the facts or the fallacy of the conclusions which the agency proposes tentatively to accept without proof. To satisfy this requirement, it is necessary that a statement of the facts noticed must be incorporated into the record. The source material on which the agency relies should, on request, be made available to the parties for their examination." 1 Cooper, State Administrative Law 412–13 (1965). Accord, Uniform Law Commissioners' Model State Administrative Procedure Act section 10(4) (1961) ("Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recog-

nized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing, or by reference in preliminary reports or otherwise, of the material noticed, including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed. The agency's experience, technical competence, and specialized knowledge may be utilized in the evaluation of the evidence."); Schwartz, Administrative Law §7.16 at 375 (2d ed. 1984) ("Clearly an agency may take notice of the same kinds of fact of which a court takes judicial notice. It has, however, been recognized that the differences between agencies and courts * * * may justify a broader approach. Under it, an agency may be permitted to take 'official notice' not only of facts that are obvious and notorious to the average man but also of those that are obvious and notorious to an expert in the given field." "A commission that regulates gas companies may take notice of the fact that a well-managed gas company loses no more than 7 percent of its gas through leakage, condensation, expansion, or contraction, where its regulation of gas companies, over the years has made the amount of 'unaccounted for gas' without negligence obvious and notorious to it as the expert in gas regulation. A workers' compensation commission may similarly reject a claim that an inguinal hernia was traumatic in origin where the employee gave no indication of pain and continued work for a month after the alleged accident. The agency had dealt with numerous hernia cases and was as expert in diagnosing them as any doctor would be. Its experience taught it that where a hernia was traumatic in origin, there was immediate discomfort, outward evidences of pain observable to fellow employees, and at least temporary suspension from work. The agency could notice this fact based upon its knowledge as an expert and reject uncontradicted opinion testimony that its own expertise renders unpersuasive."). Compare Uniform Law Commissioners' Model State Administrative Procedure Act section 4–212(f) (1981) ("Official notice may be taken of (i) any fact that could be judicially noticed in the courts of this State, (ii) the record of other proceedings before the agency, (iii) technical or scientific matters within the agency's specialized knowledge, and (iv) codes or standards that have been adopted by an agency of the United States, of this State or of another state, or by a nationally recognized organization or association. Parties must be notified before or during the hearing, or before the issuance of any initial or final order that is based in whole or in part on facts or materials noticed, of the specific facts or material noticed and the source thereof, including any staff memoranda and data, and be afforded an opportunity to contest and rebut the facts

229

or materials so noticed."). Contra Davis, Official Notice, 62 Harv. L. Rev. 537, 539 (1949) ("To limit official notice to facts which are beyond the realm of dispute would virtually emasculate the administrative process. The problem of official notice should not be one of drawing lines between disputable and indisputable facts. Nor should it even be one of weighing the importance of basing decisions upon all available information against the importance of providing full and fair hearings in the sense of permitting parties to meet all materials that influence decision. The problem is the intensely practical one of devising a procedure which will provide both informed decisions and fair hearings without undue inconvenience or expense.").

Section 18.201 adopts the philosophy of Federal Rule of Evidence 201. The Advisory Committee's Note to Fed.R.Evid. 201 (b) states:

With respect to judicial notice of adjudicative facts, the tradition has been one of caution in requiring that the matter be beyond reasonable controversy. This tradition of circumspection appears to be soundly based, and no reason to depart from it is apparent. As Professor Davis says:

"The reason we use trial-type procedure, I think, is that we make the practical judgment, on the basis of experience, that taking evidence, subject to cross-examination and rebuttal, is the best way to resolve controversies involving disputes of adjudicative facts, that is, facts pertaining to the parties. The reason we require a determination on the record is that we think fair procedure in resolving disputes of adjudicative facts calls for giving each party a chance to meet in the appropriate fashion the facts that come to the tribunal's attention, and the appropriate fashion for meeting disputed adjudicative facts includes rebuttal evidence, cross-examination, usually confrontation, and argument (either written or oral or both). The key to a fair trial is opportunity to use the appropriate weapons (rebuttal evidence, cross-examination, and argument) to meet adverse materials that come to the tribunal's attention." A System of Judicial Notice Based on Fairness and Convenience, in Perspectives of Law 69, 93 (1964).

The rule proceeds upon the theory that these considerations call for dispensing with traditional methods of proof only in clear cases. Compare Professor Davis' conclusion that judicial notice should be a matter of convenience, subject to requirements of procedural fairness. Id., 94. Section 18.201 of the Federal Rules of Evidence incorporated the Morgan position on judicial notice. The contrary position, expressed by Wigmore and Thayer, and advocated by Davis, was rejected. See McNaughton, Judicial Notice–Excerpts Relating to the Morgan-Wigmore Controversy, 14 Vand. L. Rev. 779 (1961) ("They do not differ with respect to the application of

the doctrine to 'law'. Nor do they reveal a difference with respect to so-called 'jury notice.' Their difference relates to judicial notice of 'facts.' Here Wigmore, following Thayer, insists that judicial notice is solely to save time where dispute is unlikely and that a matter judicially noticed is therefore only 'prima facie,' or rebuttable, if the opponent elects to dispute it. It is expressed in Thayer and implicit in Wigmore that (perhaps because the matter is rebuttable) judicial notice may be applied not only to indisputable matters but also to matters of lesser certainty. Morgan on the other hand defines judicial notice more narrowly, and his consequences follow from his definition. He limits judicial notice of fact to matters patently indisputable. And his position is that matters judicially noticed are not rebuttable. He asserts that it is wasteful to permit patently indisputable matters to be litigated by way of formal proof and furthermore that it would be absurd to permit a party to woo a jury to an obviously erroneous finding contrary to the noticed fact. Also, he objects to the Wigmorean conception on the ground that it is really a 'presumption' of sorts attempting to pass under a misleading name. It is, according to Morgan, a presumption with no recognized rules as to how the presumption works, what activates it, and who has the burden of doing how much to rebut it.").

Accordingly, notice that items (ii) and (iv) of the Uniform Law Commissioners' Model State Administrative Procedure Act quoted above are not included as separate items in §18.201. However codes and standards, (iv), to the extent not subject to reasonable question fall within §18.201(b)(2). To the extent such codes and standards do not so fall, proof should be required. Official notice of records of other proceedings before the agency would "permit an agency to notice facts contained in its files, such as the revenue statistics contained in the reports submitted to it by a regulated company." Schwartz, *supra* at 377. Once again, to the extent such information is not capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, §18.201(b)(2), proof should be required.

REPORTER'S NOTE TO §18.301

Section 18.301 does not prevent an administrative agency by either rule, regulation, or common law development from allocating burdens of production and burdens of persuasion in an otherwise permissible manner. See *N.L.R.B.* v. *Transportation Management Corp.*, 462 U.S. 400, 403 n.7, 103 S.Ct. 2469, 2475 n.7, 76 L.Ed.2d 667 (1983) ("Respondent contends that Federal Rule of Evidence 301 requires that the burden of persuasion rest on the General Counsel. Rule 301 provides:

**Office of the Secretary of Labor**

Pt. 18, Subpt. B, App.

In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

The Rule merely defines the term 'presumption.' It in no way restricts the authority of a court or an agency to change the customary burdens of persuasion in a manner that otherwise would be permissible. Indeed, were respondent correct, we could not have assigned to the defendant the burden of persuasion on one issue in *Mt. Healthy City Board of Education* v. *Doyle*, 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977).").

REPORTER'S NOTE TO §18.302

The Advisory Committee's Note to Federal Rule of Evidence 302, 56 F.R.D. 118, 211 states: A series of Supreme Court decisions in diversity cases leaves no doubt of the relevance of *Erie Railroad Co.* v. *Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), to questions of burden of proof. These decisions are *Cities Service Oil Co.* v. *Dunlap*, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196 (1939), *Palmer* v. *Hoffman*, 318 U.S. 477, 87 L.Ed. 645 (1943), and *Dick* v. *New York Life Ins. Co.*, 359 U.S. 437, 79 S.Ct. 921, 3 L.Ed.2d 935 (1959). They involved burden of proof, respectively, as to status as bona fide purchaser, contributory negligence, and nonaccidental death (suicide) of an insured. In each instance the state rule was held to be applicable. It does not follow, however, that all presumptions in diversity cases are governed by state law. In each case cited, the burden of proof question had to do with a substantive element of the claim or defense. Application of the state law is called for only when the presumption operates upon such an element. Accordingly the rule does not apply state law when the presumption operates upon a lesser aspect of the case, i.e. "tactical" presumptions.

The situations in which the state law is applied have been tagged for convenience in the preceding discussion as "diversity cases." The designation is not a completely accurate one since *Erie* applies to any claim or issue having its source in state law, regardless of the basis of federal jurisdiction, and does not apply to a federal claim or issue, even though jurisdiction is based on diversity.

Vestal, *Erie R. R.* v. *Tompkins: A Projection*, 48 Iowa L.Rev. 248, 257 (1963); Hart and Wechsler, *The Federal Courts and the Federal System*, 697 (1953); 1A Moore Federal Practice p. 0.305[3] (2d ed. 1965); Wright, Federal Courts, 217–218 (1963). Hence the rule employs, as appropriately descriptive, the phrase "as to which state law supplies the rule of decision." See A.L.I. Study of the Division of Jurisdiction Between State and Federal Courts, 2344(c), p. 40, P.F.D. No. 1 (1965).

It is anticipated that §18.302 will very rarely come into play.

REPORTER'S NOTE TO §18.403

Rule 403 of the Federal Rules of Evidence provides for the exclusion of relevant evidence on the grounds of unfair prejudice. Since all effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered, prejudice which calls for exclusion is given a more specialized meaning: An undue tendency to suggest decision on an improper basis, commonly but not necessarily an emotional one, such as bias, sympathy, hatred, contempt, retribution or horror. Unfair prejudice is not, however, a proper ground for the exclusive of relevant evidence under these rules. Judges have shown over the years the ability to resist deciding matters on such an improper basis. Accord *Gulf States Utilities Co.* v. *Ecodyne Corp.*, 635 F.2d 517, 519 (5th Cir. 1981). ("The exclusion of this evidence under Rule 403's weighing of probative value against prejudice was improper. This portion of Rule 403 has no logical application to bench trials. Excluding relevant evidence in a bench trial because it is cumulative or a waste of time is clearly a proper exercise of the judge's power, but excluding relevant evidence on the basis of 'unfair prejudice' is a useless procedure. Rule 403 assumes a trial judge is able to discern and weigh the improper inferences that a jury might draw from certain evidence, and then balance those improprieties against probative value and necessity. Certainly, in a bench trial, the same judge can also exclude those improper inferences from his mind in reaching a decision.")

While §18.403, like Rule 403 of the Federal Rules of Evidence, does speak in terms of both confusion of the issues and misleading of the trier of fact, the distinction between such terms is unclear in the literature and in the cases. McCormick, Evidence section 185 at 546 (3d ed. 1984), refers to the probability that certain proof and the answering evidence that it provokes might unduly distract the trier of fact from the main issues. 2 Wigmore, Evidence section 443 at 528–29 (Chadbourn rev. 1979), describes the concept as follows:

In attempting to dispute or explain away the evidence thus offered, new issues will arise as to the occurrence of the instances and the similarity of conditions, new witnesses will be needed whose cross-examination and impeachment may lead to further issues; and that thus the trial will be unduly prolonged, and the multiplicity of minor issues will be such that the jury will lose sight of the main issue, and the whole evidence will be only a mass of confused data

231

from which it will be difficult to extract the kernel of controversy.

Both commentators are clearly describing the notion of confusion of the issues. The notion of confusion of the issues of course applies as well to a reviewing body considering a record in such condition. While a trier of fact or reviewing body confused in the foregoing manner can also be said to have been misled, it is suggested that the concept of misleading refers primarily to the possibility of the trier of fact overvaluing the probative value of a particular item of evidence for any reason other than the emotional reaction associated with unfair prejudice. To illustrate, evidence of the results of a lie detector, even where an attempt is made to explain fully the significance of the results, is likely to be overvalued by the trier of fact. Similarly, the test of *Frye* v. *United States*, 293 F.1013, 1014 (D.C. Cir. 1923), imposing the requirement with respect to the admissibility of scientific evidence that the particular technique be shown to have gained "general acceptance in the particular field in which it belongs," is an attempt to prevent decision makers from being unduly swayed by unreliable scientific evidence. Demonstrative evidence in the form of a photograph, map, model, drawing or chart which varies substantially from the fact of consequence sought to be illustrated similarly may mislead. Finally, any trier of fact may be misled by the sheer amount of time spent upon a question into believing the issue to be of major importance and accordingly into attaching too much significance to it in its determination of the factual issues involved. While clearly of less import where the judge is the trier of fact and with respect to the state of the record on review, the danger of confusion of the issues or misleading the judge as trier of fact, together with such risks on review, are each of sufficient moment especially when considered in connection with needless inclusion in § 18.403.

Occasionally evidence is excluded not because distracting side issues will be created but rather because an unsuitable amount of time would be consumed in clarifying the situation. Concerns associated with the proper use of trial time also arise where the evidence being offered is relevant to a fact as to which substantial other evidence has already been introduced, including evidence bearing on the question of credibility, where the evidence itself possesses only minimal probative value, such as evidence admitted as background, or where evidence is thought by the court to be collateral. In recognition of the legitimate concern of the court with expenditures of time, § 18.403 provides for exclusion of evidence where its incremental probative value is substantially outweighed by considerations of undue delay, waste of time, or needless presentation of cumulative evi-

dence. Roughly speaking undue delay can be argued to refer to delay caused by the failure of the party to be able to produce the given evidence at the appropriate time at trial but only at some later time. Waste of time may be taken to refer to the fact that the evidence possesses inadequate incremental probative value in light of the time its total exploration will consume. Cumulative refers to multiple sources of different evidence establishing the same fact of consequence as well as multiple same sources, such as ten witnesses all testifying to the same speed of the car or the same character of a witness.

REPORTER'S NOTE TO § 18.501

The Conference Report to Federal Rule of Evidence 501, 1975 U.S. Code Cong. & Ad. News 7098, 7100 states:

Rule 501 deals with the privilege of a witness not to testify. Both the House and Senate bills provide that federal privilege law applies in criminal cases. In civil actions and proceedings, the House bill provides that state privilege law applies "to an element of a claim or defense as to which State law supplies the rule of decision." The Senate bill provides that "in civil actions and proceedings arising under 28 U.S.C. 1332 or 28 U.S.C. 1335, or between citizens of different States and removed under 28 U.S.C. 1441(b) the privilege of a witness, person, government, State or political subdivision thereof is determined in accordance with State law unless with respect to the particular claim or defense, Federal law supplies the rule of decision."

The wording of the House and Senate bills differs in the treatment of civil actions and proceedings. The rule in the House bill applies to evidence that relates to "an element of a claim or defense." If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, and if state law supplies the rule of decision for that claim or defense, then state privilege law applies to that item of proof.

Under the provision in the House bill, therefore, state privilege law will usually apply in diversity cases. There may be diversity cases, however, where a claim or defense is based upon federal law. In such instances, federal privilege law will apply to evidence relevant to the federal claim or defense. See *Sola Electric Co.* v. *Jefferson Electric Co.*, 317 U.S. 173 (1942).

In nondiversity jurisdiction civil cases, federal privilege law will generally apply. In those situations where a federal court adopts or incorporates state law to fill interstices or gaps in federal statutory phrases, the court generally will apply federal privilege law.

As Justice Jackson has said:

**Office of the Secretary of Labor**

A federal court sitting in a nondiversity case such as this does not sit as a local tribunal. In some cases it may see fit for special reasons to give the law of a particular state highly persuasive or even controlling effect, but in the last analysis its decision turns upon the law of the United States, not that of any state.

*D'Oench, Duhme & Co.* v. *Federal Deposit Insurance Corp.,* 315 U.S. 447, 471 (1942) (Jackson, J., concurring). When a federal court chooses to absorb state law, it is applying the state law as a matter of federal common law. Thus, state law does not supply the rule of decision (even though the federal court may apply a rule derived from state decisions), and state privilege law would not apply. See C.A. Wright, Federal Courts 251–252 (2d ed. 1970); *Holmberg* v. *Armbrecht,* 327 U.S. 392 (1946); *DeSylva* v. *Ballentine,* 351 U.S. 570, 581 (1956); 9 Wright & Miller, Federal Rules and Procedures § 2408.

In civil actions and proceedings, where the rule of decision as to a claim or defense or as to an element of a claim or defense is supplied by state law, the House provision requires that state privilege law apply.

The Conference adopts the House provision.

It is anticipated that the proviso in § 18.501 will very rarely come into play.

REPORTER'S NOTE TO § 18.601

The Conference Report to Federal Rule of Evidence 601, 1975 U.S. Code Cong. & Ad. News 7051, 7059 states:

Rule 601 deals with competency of witnesses. Both the House and Senate bills provide that federal competency law applies in criminal cases. In civil actions and proceedings, the House bill provides that state competency law applies "to an element of a claim or defense as to which State law supplies the rule of decision." The Senate bill provides that "in civil actions and proceedings arising under 28 U.S.C. 1332 or 28 U.S.C. 1335, or between citizens of different States and removed under 28 U.S.C. 1441(b) the competency of a witness, person, government, State or political subdivision thereof is determined in accordance with State law, unless with respect to the particular claim or defense, Federal law supplies the rule of decision."

The wording of the House and Senate bills differs in the treatment of civil actions and proceedings. The rule in the House bill applies to evidence that relates to "an element of a claim or defense." If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, and if state law supplies the rule of decision for that claim or defense, then state competency law applies to that item of proof.

For reasons similar to those underlying its action on Rule 501, the Conference adopts the House provision.

It is anticipated that the proviso to § 18.601 will very rarely come into play.

REPORTER'S NOTE TO § 18.609

Consistent with the position taken in § 18.403, unfair prejudice is not felt to be a proper reason of the exclusion of relevant evidence in a hearing where the judge is the trier of fact. Sections 18.609 (a) and (b) provide for the use of every prior conviction punishable by death or imprisonment in excess of one year under the law under which the witness was convicted and every prior conviction involving dishonesty or false statement, regardless of punishment, provided not more than ten years has elapsed since the date of the conviction or the release of the witness from the confinement imposed for that conviction, whichever is the later date. Convictions more than ten years old are felt to be too stale to be admitted to impeach the credibility of a witness testifying in any hearing to which these rules apply.

REPORTER'S NOTE TO § 18.801

Rule 801(d)(1)(A) of the Federal Rules of Evidence has been revised in § 18.801(d)(1)(A) to permit the substantive admissibility of all prior inconsistent statements. The added protection of certainty of making and circumstances conducive to trustworthiness provided by the restriction that the prior inconsistent statement be "given under oath subject to the penalty of perjury at a trial, hearing, in other proceeding, or in a deposition" were added by Congress to Federal Rule of Evidence 801(d)(1)(A) for the benefit of the criminal defendant. See Graham, *Employing Inconsistent Statements for Impeachment and as Substantive Evidence: A Critical Review and Proposed Amendments of Federal Rules of Evidence 801(d)(1)(A),* 613 and 607, 75 Mich L. Rev. 565 (1977).

REPORTER'S NOTE TO § 18.802

An "administrative file" is admissible as such to the extent so provided by rule or regulation of the administrative agency prescribed pursuant to statutory authority, or pursuant to executive order, or by Act of Congress. If a program provides for the creation of an "administrative file" and for the submission of an "administrative file" to the judge presiding at a formal adversarial adjudication governed by these rules, see section 18.1101, the "administrative file" would fall outside the bar of the hearsay rule. Similarly, such "administrative file" is self-authenticating, section 18.902(10).

REPORTER'S NOTE TO § 18.803

Section 18.803(24) provides that the "equivalent circumstantial guarantees of trustworthiness" required to satisfy the "other

[reliable] hearsay" exception is that possessed solely by the "aforementioned hearsay exceptions," i.e., §§18.803(1)–18.803(24). The hearsay exceptions which follow, i.e., §§18.803(25)–18.803(30), rely too greatly upon necessity and convenience to serve as a basis to judge "equivalent circumstantial guarantees of trustworthiness."

Section 18.803(25) provides a hearsay exception for the self-authenticating aspect of documents and other items as provided in §18.902. Out of court statements admitted under §18.902 for the purpose of establishing that the document or other item offered into evidence is as purported to be are received in evidence to establish the truth of the matter stated, §§18.801(a)–(c). Section 18.802 provides that "hearsay is not admissible except as provided by these rules * * *" Section 18.902 thus operates as a hearsay exception on the limited question of authenticity. Section 18.902 does not, however, purport to create a hearsay exception for matters asserted to be true in the self-authenticated exhibit itself. As a matter of drafting consistency, it is preferable to have a specific hearsay exception in §18.803 for statements of self-authentication under §18.902 than to have a hearsay exception exist in these rules not bearing an 18.800 number.

Sections 18.803(26) and 18.803(27) are derived from Rules 4(e) and (f) of the Arizona Uniform Rules of Procedure for Arbitration. Section 18.803(26)(f) is derived from Illinois Supreme Court Rule 90(c)(4).

Sections 18.803(27) and 18.803(28) maintain the common law distinction between a treating physician, i.e., medical treatment, and an examining or nontreating physician, i.e., medical diagnosis. A treating physician provides or acts with a view toward providing medical treatment. An examining physician is one hired with a view toward testifying on behalf of a party and not toward treating a patient. As such, written reports of the examining physician are not felt to be sufficiently trustworthy to be given the preferred treatment of §18.803(27). Thus a report of a physician made for the purpose of medical treatment, i.e., treating physician, is admissible if the requirements of §18.803(27) are satisfied. A report of physician prepared with a view toward litigation, i.e., examining physician, satisfying the requirements of §18.802(28) is also admissible. The reports of a given physician may, of course, fall within either or both categories. Reports of any medical surveillance test the purpose of which is to detect actual or potential impairment of health or functional capacity and autopsy reports fall within §18.803(28).

Section 18.803(28) is derived from Rule 1613(b)(1) of the California Rules of Court. A summary of litigation experience of the expert is required to assist the evaluation of credibility.

Section 18.803(29) is derived from Rule 1613(b)(2) of the California Rules of Court.

Section 18.803(30) is derived from Rule 1613(b)(3) of the California Rules of Court.

Sections 18.803(26)–18.803(30) each provide that the adverse party may call the declarant of the hearsay statement, if available, as a witness and examine the witness as if under cross-examination. The proviso relating to the calling of witnesses is derived from Rule 1305(b) of the Pennsylvania Rules of Court Procedure Governing Compulsory Arbitration. See also §§18.902(12)–18.902(16) *infra.*

These rules take no position with respect to which party must initially bear the cost of lay witness and expert witness fees nor as to the ultimate disposition of such fees. Ordinarily, however, it is anticipated that the adverse party calling the witness should initially pay statutory witness fees, mileage, etc., and reasonable compensation to an expert witness in whatever sum and at such time as the judge may allow. Such witness fees, mileage, etc., and reasonable expert witness compensation should thereafter be charged to the same extent and in like manner as other such costs.

REPORTER'S NOTE TO §18.902

Section 18.902(11) is modeled upon Uniform Rule of Evidence 902(11). The requirement of a final certification with respect to a foreign record has been deleted as unnecessary in accordance with the position adopted in 18 U.S.C. 3505 which governs the self-authentication of a foreign record offered in a federal criminal proceeding. The "Comment" to Uniform Rule of Evidence 902(11) states:

Subsection 11 is new and embodies a revised version of the recently enacted federal statute dealing with foreign records of regularly conducted activity, 18 U.S.C. 3505. Under the federal statute, authentication by certification is limited to foreign business records and to use in criminal proceedings. This subsection broadens the federal provision so that it includes domestic as well as foreign records and is applicable in civil as well as criminal cases. Domestic records are presumably no less trustworthy and the certification of such records can more easily be challenged if the opponent of the evidence chooses to do so. As to the federal statute's limitation to criminal matters, ordinarily the rules are more strictly applied in such cases, and the rationale of trustworthiness is equally applicable in civil matters. Moreover, the absence of confrontation concerns in civil actions militates in favor of extending the rule to the civil side as well.

The rule requires that the certified record be made available for inspection by the adverse party sufficiently in advance of the offer to permit the opponent a fair opportunity to challenge it. A fair opportunity to

234

**Office of the Secretary of Labor**                    **Pt. 18, Subpt. B, App.**

challenge the offer may require that the proponent furnish the opponent with a copy of the record in advance of its introduction and that the opponent have an opportunity to examine, not only the record offered, but any other records or documents from which the offered record was procured or to which the offered record relates. That is a matter not addressed by the rule but left to the discretion of the trial judge.

Sections 18.902 (12) and (13) are derived from Rule 4 (e) and (f) of the Arizona Uniform Rules of Procedure for Arbitration. Section 18.902(12)(f) is derived from Illinois Supreme Court Rule 90(c)(4).

Section 18.902(14) is derived from Rule 1613(b)(1) of the California Rules of Court. A summary of litigation experience of the expert is required to assist the evaluation of credibility.

With respect to §§ 18.902(13) and 18.902(14) as applied to a treating or examining physician, see Reporter's Note to §§ 18.803(27) and 18.803(28) supra.

Section 18.902(15) is derived from Rule 1613(b)(2) of the California Rules of Court.

Section 18.902(16) is derived from Rule 1613(b)(3) of the California Rules of Court.

Sections 18.902 (12)–(16) each provide that the adverse party may call the declarant of the hearsay statement, if available, as a witness and examine the witness as if under cross-examination. The proviso relating to the calling of witnesses is derived from Rule 1305(b) of the Pennsylvania Rules of Civil Procedure Governing Compulsory Arbitration.

These rules take no position with respect to which party must initially bear the cost of lay witness and expert witness fees nor as to the ultimate disposition of such fees. Ordinarily, however, it is anticipated that the adverse party calling the witness should initially pay statutory witness fees, mileage, etc., and reasonable compensation to an expert witness in whatever sum and at such time as the judge may allow. Such witness fees, mileage, etc., and reasonable expert witness compensation should thereafter be charged to the same extent and in like manner as other such costs. See also §§ 18.803 (25)–(30) supra.

REPORTER'S NOTE TO § 18.1001

Section 18.1001(3) excludes prints made from X-ray film from the definition of an original. A print made from X-ray film is not felt to be equivalent to the X-ray film itself when employed for purposes of medical treatment or diagnosis.

REPORTER'S NOTE TO § 18.1101

Section 23(a) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. 922, provides as follows:

In making an investigation or inquiry or conducting a hearing the deputy commissioner or Board shall not be bound by common law or statutory rules of evidence or by technical or formal rules of procedure, except as provided by this chapter; but may make such investigation or inquiry or conduct such hearing in such manner as to best ascertain the rights of the parties. Declarations of a deceased employee concerning the injury in respect of which the investigation or inquiry is being made or the hearing conducted shall be received in evidence and shall, if corroborated by other evidence, be sufficient to establish the injury.

Other acts such as the Defense Base Act, 42 U.S.C. 1651, adopt section 23(a) of the Longshore and Harbor Workers' Compensation Act by reference. In addition 20 CFR 725.455(b) provides as follows with respect to the Black Lung Benefits Act, 30 U.S.C. 901:

Evidence. The administrative law judge shall at the hearing inquire fully into all matters at issue, and shall not be bound by common law or statutory rules of evidence, or by technical or formal rules of procedure, except as provided by 5 U.S.C. 554 and this subpart. The administrative law judge shall receive into evidence the testimony of the witnesses and parties, the evidence submitted to the Office of Administrative Law Judges by the deputy commissioner under § 725.421, and such additional evidence as may be submitted in accordance with the provisions of this subpart. The administrative law judge may entertain the objections of any party to the evidence submitted under this section.

Section 18.1101(c) provides that these rules do not apply to the extent inconsistent with, in conflict with, or to the extent a matter is otherwise specifically provided for by an Act of Congress or by a rule or regulation of specific application prescribed by the United States Department of Labor pursuant to statutory authority. Whether section 23(a) and § 725.455(b) are in fact incompatible with these rules, while unlikely for various reasons including their lack of specificity, is nevertheless arguable.

Without regard to section 23(a) and § 725.455(b), various other considerations support the conclusion to exclude hearings under Longshore, Black Lung, and related acts from coverage of these rules at this time. Longshore, Black Lung, and related acts involve entitlements. Claimants in such hearings benefit from proceeding pursuant to the most liberal evidence rules that are consistent with the orderly administration of justice and the ascertainment of truth. Claimants in such hearings on occasion appear pro se. While the modifications made by these rules are clearly designed to further liberalize the already liberal Federal Rules of Evidence, it is nevertheless unclear at this time whether even conformity with minimal

235

requirements with respect to the introduction of evidence would present a significant barrier to the successful prosecution of meritorious claims. Rather than speculate as to the impact adoption of these rules would have upon such entitlement programs, it was decided to exclude hearings involving such entitlement programs from coverage of these rules. It is anticipated that application of these rules to hearings involving such entitlement programs will be reconsidered in the future following careful study. Notice that the inapplicability of these rules in such hearings at this time is specifically stated in §18.1101(b)(2) to be without prejudice to the continuation of current practice with respect to application of rules of evidence in such hearings.

[55 FR 13229, Apr. 9, 1990; 55 FR 24227, June 15, 1990]

## PART 19—RIGHT TO FINANCIAL PRIVACY ACT

Sec.
19.1  Definitions.
19.2  Purpose.
19.3  Authorization.
19.4  Contents of request.
19.5  Certification.

AUTHORITY: Sec. 1108, Right to Financial Privacy Act of 1978, 92 Stat. 3697 *et seq.*, 12 U.S.C. 3401 *et seq.*, (5 U.S.C. 301); and Reorganization Plan No. 6 of 1950.

SOURCE: 52 FR 48420, Dec. 22, 1987, unless otherwise noted.

### §19.1  Definitions.

For purposes of this regulation, the term:

(a) *Financial institution* means any office of a bank, savings bank, card issuer as defined in section 103 of the Consumer Credit Protection Act (15 U.S.C. 1602(n)), industrial loan company, trust company, savings and loan, building and loan, or homestead association (including cooperative banks), credit union, consumer financial institution, located in any State or territory of the United States, the District of Columbia, Puerto Rico, Guam, American Samoa, or the Virgin Islands.

(b) *Financial record* means an original of, a copy of, or information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution.

(c) *Person* means an individual or a partnership of five or fewer individuals.

(d) *Customer* means any persons or authorized representative of that person who utilized or is utilizing any service of a financial institution, or for whom a financial institution is acting or has acted as a fiduciary, in relation to an account maintained in the person's name.

(e) *Law enforcement inquiry* means a lawful investigation or official proceeding inquiring into a violation of or failure to comply with any criminal or civil statute or any regulation, rule, or order issued pursuant thereto.

(f) *Departmental unit* means those offices, divisions bureaus, or other components of the Department of Labor authorized to conduct law enforcement inquiries.

(g) *Act* means the Right to Financial Privacy Act of 1978.

### §19.2  Purpose.

The purpose of these regulations is to authorize Departmental units to request financial records from a financial institution pursuant to the formal written request procedure authorized by section 1108 of the Act, and to set forth the conditions under which such requests may be made.

### §19.3  Authorization.

Departmental units are hereby authorized to request financial records of any customer from a financial institution pursuant to a formal written request under the Act only if:

(a) No administrative summons or subpoena authority reasonably appears to be available to the Departmental unit to obtain financial records for the purpose for which the records are sought;

(b) There is reason to believe that the records sought are relevant to a legitimate law enforcement inquiry and will further that inquiry;

(c) The request is issued by the Assistant Secretary or Deputy Under Secretary heading the Departmental unit requesting the records, or by a senior agency official designated by the head of the Departmental unit. Officials so designated shall not delegate this authority to others;

APPENDIX C

In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 17-3403

ORCHARD HILL BUILDING COMPANY, doing business as
GALLAGHER & HENRY,

*Plaintiff-Appellant,*

*v.*

UNITED STATES ARMY CORPS OF ENGINEERS,

*Defendant-Appellee.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:15-cv-06344 — **John Robert Blakey**, *Judge.*

———————————

ARGUED MAY 29, 2018 — DECIDED JUNE 27, 2018

———————————

Before BAUER, BARRETT, and ST. EVE, *Circuit Judges*.

ST. EVE, *Circuit Judge*. This case concerns just shy of 13 acres
of wetlands, which lie in a south-suburban plot of land called
the Warmke parcel. Orchard Hill Building Company pur-
chased the Warmke parcel in 1995 with plans for a large-scale
residential development. Not wanting to run afoul of the
Clean Water Act, Orchard Hill requested a determination

from the United States Army Corps of Engineers that the wetlands (or the "Warmke wetlands") were not jurisdictional "waters of the United States." The Corps decided that they were, and Orchard Hill has spent the last 12 years challenging that decision. We find that the Corps has not provided substantial evidence of a significant nexus to navigable-in-fact waters, and therefore vacate and remand with instructions that the Corps reconsider its determination.

## I. Background

A braid of regulatory, judicial, and administrative events led to the Corps' final claim of jurisdiction over the Warmke wetlands. We start at the beginning.

Congress enacted the Clean Water Act in 1972 "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. § 1251(a). One of the Act's primary means to that end is its general prohibition on polluting "navigable waters," which it defines as "waters of the United States." *Id.* §§ 1311(a), 1362(7), (12). The Act imposes significant criminal and civil penalties for such pollution, *id.* §§ 1319(c), (d), and obtaining a permit to build on or near such waters can be a lengthy and costly process. Yet the Act does not define what constitutes "waters of the United States." *See, e.g.*, *United States v. Krilich*, 209 F.3d 968, 970 (7th Cir. 2000).

That job falls to the Corps of Engineers and the Environmental Protection Agency—and it has proven "a contentious and difficult task." *Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 138 S. Ct. 617, 624 (2018); *see also* 33 C.F.R. § 328.3 (the Corps' definition of waters of the United States); 40 C.F.R. § 122.2 (the EPA's definition of waters of the United States). To take a recent example, the agencies' attempt in 2015 to redefine the statutory

phrase resulted in a new administration's swift overhaul and a slew of litigation. *See generally Nat'l Ass'n of Mfrs.*, 138 S. Ct. at 625–27; Executive Order 13778: Restoring the Rule of Law, Federalism, and Economic Growth by Reviewing the "Waters of the United States" Rule, 82 Fed. Reg. 12,497 (Feb. 28, 2017); Definition of "Waters of the United States"—Addition of an Applicability Date to 2015 Clean Water Rule, 83 Fed. Reg. 5,200 (Feb. 6, 2018); James Conrad, *Wetlands Jurisdiction*, Env. Sci. Deskbook § 9:1 (2018). This case, however, concerns the Corps' definition of waters of the United States as it existed before 2015. *See Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 558 (7th Cir. 2016).

The Corps defined waters of the United States broadly to include waters "subject to the ebb and flow of the tide," "rivers" that could be used for interstate recreation or commerce, "tributaries" of such waters, and—most importantly here— "wetlands adjacent to" other waters of the United States, including tributaries. 33 C.F.R. §§ 328.3(a)(1)–(7) (1994).[1] There was (and is) an exemption, though, for "prior converted cropland." *Id.* § 328.3(8). The Corps considers "prior converted cropland" to mean wetlands "manipulated … and cropped" before 1985 (when Congress enacted the "Swampbuster" program, which denies benefits to farmers who use wetlands for farming), but not abandoned of farming use for five or more years.[2] *See* Proposed Rule for the Clean Water

---

[1] All future citations to 33 C.F.R. § 328.3 refer to the version in effect before August 28, 2015.

[2] Because we find that the Corps failed to justify its jurisdictional determination with substantial evidence in the record, we do not decide, as Orchard Hill argues we should, whether the Corps' interpretation of "prior converted cropland" to exclude lands abandoned for five or more

Act Regulator Programs of the Army Corps of Engineers and the Environmental Protection Agency (Proposed Rule), 57 Fed. Reg. 26,894, 26,897–26,900 (June 16, 1992); Clean Water Act Regulatory Programs (Final Rule), 58 Fed. Reg. 45,008, 45,031–45,034 (Aug. 25, 1993).

Despite, or perhaps because of, those definitions, "[i]t is often difficult to determine whether a particular piece of property contains waters of the United States." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1812 (2016). But concerned landowners need not risk fines or endure the permit-application process before deciding whether to build on or alter their property. They can instead seek a "jurisdictional determination" from the Corps as to whether their property contains waters of the United States. 33 C.F.R. §§ 320.1(a)(6), 325.9, 331.2.

Orchard Hill was such a landowner. In 1995, it completed its purchase of the Warmke parcel, a 100-acre former farmland located in Tinley Park, Illinois. Orchard Hill then received permits to build a two-phase residential development on the parcel. The first phase started in 1996, and over the next seven years, Orchard Hill constructed more than a hundred homes. Construction altered the area's water drainage, and about 13 acres pooled with rainwater and grew wetland vegetation. Before starting the second phase and building on those acres—the Warmke wetlands—Orchard Hill sought a jurisdictional determination from the Corps in 2006.

---

years (the "five-year-abandonment limitation") is a legislative rule that violates the Administrative Procedure Act's ("APA") notice-and-comment requirements. 5 U.S.C. § 553.

"The history of the Warmke [wetlands] jurisdictional de-
termination can be described as lengthy, contentious and
complex," as a Corps district engineer aptly put it.[3] The
Warmke wetlands, like all of the Warmke parcel, are sur-
rounded by residential development. The closest navigable
water (as that phrase is literally understood, meaning naviga-
ble-in-fact) is the Little Calumet River, which is 11 miles away.
In between the Warmke wetlands and the Little Calumet
River are man-made ditches, open-water basins, sewer pipes,
and the Midlothian Creek—a tributary of the Little Calumet
River. The assigned district engineer determined the Warmke
wetlands were adjacent to that tributary, and thus waters of
the United States. *See* 33 C.F.R. §§ 283.3(a)(5), (7). That deter-
mination rested on the fact that the Warmke wetlands
drained, by way of sewer pipes, to the Midlothian Creek. Or-
chard Hill appealed that decision, pursuant to its regulatory
right. *See id.* §§ 331.6(a), 331.7(a), 331.3(a)(1).

While that appeal was pending, the Supreme Court issued
a landmark decision paring back the Corps' jurisdictional
reach. *Rapanos v. United States*, 547 U.S. 715 (2006), involved
two consolidated appeals from decisions upholding jurisdic-
tional determinations. Both cases posed the question: When
do wetlands that are not adjacent to waters that are navigable-
in-fact constitute waters of the United States? *Rapanos* did not
produce a majority opinion, and without one to definitively
answer the question, we have held that Justice Anthony Ken-
nedy's concurrence controls. *United States v. Gerke Excavating,*

---

[3] District engineers perform first-level jurisdictional reviews, and di-
vision engineers review appeals of those determinations. *See* 33 C.F.R.
§§ 320.1(a)(2), 325.9, 331.3(a)(1). Where that distinction is not relevant, we
refer generally to the Corps.

*Inc.*, 464 F.3d 723, 724–25 (7th Cir. 2006) (per curiam); *see also N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999–1000 (9th Cir. 2007); *United States v. Robison*, 505 F.3d 1208, 1221 (11th Cir. 2007).[4]

Justice Kennedy decided that a wetland's adjacency to a tributary of a navigable-in-fact water is alone insufficient to make the wetland a water of the United States. Instead, "the Corps' jurisdiction over [such] wetlands depends upon the existence of a significant nexus between the wetlands in question and navigable waters in the traditional sense." *Rapanos*, 547 U.S. at 779. He explained:

> [W]etlands possess the requisite nexus, and thus come within the statutory phrase "navigable waters," if the wetlands, either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as "navigable." When, in contrast, wetlands' effects on water quality are speculative or insubstantial, they fall outside the zone fairly encompassed by the statutory term "navigable waters."

*Id.* at 780. The Corps, Justice Kennedy wrote, must make this determination "on a case-by-case basis when it seeks to regulate wetlands based on adjacency to nonnavigable tributaries." *Id.* at 782.

---

[4] Some of our sister courts have concluded that the Corps can establish jurisdiction by using either the standard Justice Kennedy explained or the standard described in Justice Antonin Scalia's plurality opinion. *See United States v. Donovan*, 661 F.3d 174, 176, 182 (3d Cir. 2011); *United States v. Bailey*, 571 F.3d 791, 798–99 (8th Cir. 2009); *United States v. Johnson*, 467 F.3d 56, 64–66 (1st Cir. 2006). Neither party asks us to revisit our decision in *Gerke*, and we see no reason to do so.

No. 17-3403                                                7

After *Rapanos*, the Corps, too, decided to follow Justice
Kennedy's significant-nexus test. In late 2008, it published in-
ternal guidance titled Clean Water Act Jurisdiction Following
the U.S. Supreme Court's Decision in *Rapanos v. United States
& Carabell v. United States* (the "*Rapanos* Guidance"). The *Ra-
panos* Guidance interprets "similarly situated lands" in the
significant-nexus test to mean all "wetlands adjacent to the
same tributary," because "such wetlands are physically lo-
cated in a like manner." It instructs the Corps to determine
first if any such adjacent wetlands exist, and if so, to "consider
the flow and functions of the tributary together with the func-
tions performed by all the wetlands adjacent to that tributary
in evaluating whether a significant nexus is present."

In light of *Rapanos*, the Corps' division engineer remanded
the 2006 jurisdictional determination of the Warmke wetlands
for further review. Between 2008 and 2010, the district engi-
neer reviewed the wetlands' soil composition, and in March
2010, he made a site visit. There, the district engineer observed
an "intermittent flow" of water from the Warmke wetlands to
the Midlothian Creek. The district engineer did not test or
sample the Warmke wetlands' composition, but based on the
observed hydrological connection, he again concluded that
the Corps had jurisdiction over the wetlands. Orchard Hill
filed an appeal, which the Corps denied.

That might have been the end of the administrative road,
but for another federal-court decision. In September 2010, a
district court set aside a Corps rule that excluded "non-
agricultural" land from the prior-converted-cropland
exemption (a rule which the Corps devised after and apart
from its five-year-abandonment limitation), reasoning that it
was a legislative rule that had not gone through notice-and-

comment under the APA. *New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 746 F. Supp. 2d 1272, 1276, 1281–84 (S.D. Fla. 2010). Relying on that decision, Orchard Hill asked the district engineer to reconsider his jurisdictional determination and decide whether the Warmke wetlands should fall within the exemption. The district engineer agreed to revisit his decision, but again determined the Corps had jurisdiction over the Warmke wetlands. This determination noted that *New Hope* had left in place the exemption's five-year-abandonment limitation, and that the Warmke wetlands had been vacant and unused since the completed sale to Orchard Hill. *See New Hope*, 746 F. Supp. 2d at 1282.

The reconsidered determination also elaborated on the significant-nexus analysis. Its report listed 165 wetlands purportedly "adjacent" to the Midlothian Creek, and thus "similarly situated" to the Warmke wetlands per the *Rapanos* Guidance. The report did not show or explain these wetlands' proximity to the Midlothian Creek. Nor did the report reflect that the Corps had conducted observation or testing of the 165 wetlands. The district engineer, nevertheless, concluded that the wetlands collectively "decrease sedimentation, pollutants, and flood waters downstream while offering beneficial nutrients and habitat" to the Midlothian Creek and Little Calumet River. He thus found that the Warmke "wetland[s] alone or in combination with the wetlands in the area significantly affect the chemical, physical and biological integrity of the Little Calumet River."

A third appeal followed. The reviewing division engineer agreed that Orchard Hill's claim of the prior-converted-cropland exemption had no merit given the Warmke wetlands' 15-year abandonment. She found lacking, however, the

district engineer's significant-nexus analysis. As she put it, the Corps had "failed to provide the required explanation," and "failed to show its work justifying its summary conclusions." The division engineer remanded with instructions to comply with the *Rapanos* Guidance, which requires the Corps to provide grounds and explanations for its significant-nexus conclusions. The district engineer's subsequent decision, according to the remand order, would be the Corps' final approved jurisdictional determination for the Warmke wetlands.

On remand, in July 2013, the district engineer supplemented his findings with an 11-page report. The supplement asserted that the 165 wetlands considered were all a part of the "Midlothian Creek watershed," though it did not describe that term or map that area. The supplement further explained the significant flooding problems the Tinley Park area had faced in recent years, and, relying on scientific literature and studies, detailed how wetlands help reduce floodwaters. It also described the effect of wetlands generally on reducing pollutants in downstream waters, and the wildlife that inhabited the Warmke wetlands. The supplement's conclusion ultimately mirrored the earlier determination: the Warmke wetlands, alone or in combination with the area's other wetlands, have a significant nexus to the Little Calumet River.

With that final determination made, Orchard Hill turned to federal court. It sought review of the Corps' jurisdictional determination as a "final agency action" under the APA. As such, no discovery occurred, and the parties filed cross motions for summary judgment based on the administrative record. In its decision, the district court examined the Corps' findings—specifically those set forth in the 11-page supplement—and deferred to the Corps' conclusions regarding the

physical, chemical, and biological impact of the Warmke wetlands on the Little Calumet River. It also decided that the Corps had appropriately applied the five-year-abandonment limitation. The district court therefore granted the Corps' summary-judgment motion and denied Orchard Hill's, entering judgment in favor of the Corps. Orchard Hill appealed.

## II. Standards of Review

We review de novo a district court's decision to grant summary judgment. *Laborers' Pension Fund v. W.R. Weis Co.*, 879 F.3d 760, 766 (7th Cir. 2018). We apply the same standard the district court did in reviewing the Corps' jurisdictional determination—the APA. *Stable Invs. P'ship v. Vilsack*, 775 F.3d 910, 915 (7th Cir. 2015).

Under the APA, a court must set aside an agency determination if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," or if it is "unsupported by substantial evidence." 5 U.S.C. §§ 706(2)(A), (E); *see also Rapanos*, 547 U.S. at 786 (Kennedy, J., concurring). Those standards overlap. *See, e.g.*, *Witter v. Commodity Futures Trading Comm'n*, 832 F.3d 745, 749 (7th Cir. 2016). A determination is arbitrary and capricious if it "runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Zero Zone, Inc. v. U.S. Dep't of Energy*, 832 F.3d 654, 668 (7th Cir. 2016) (quoting *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 664, 658 (2007)). A determination is unsupported by substantial evidence when the record lacks evidence that "a reasonable mind might accept as adequate to support the conclusion." *Id.*; *see also Addis v. Dep't of Labor*, 575 F.3d 688, 690 (7th Cir. 2009). Under either APA standard, the scope of review is "narrow and a court must not substitute its

judgment for that of the agency." *Abraham Lincoln Mem'l Hosp. v. Sebelius*, 698 F.3d 536, 547 (7th Cir. 2012); *see also Dana Container, Inc. v. Sec'y of Labor*, 847 F.3d 495, 499 (7th Cir. 2017).

That does not mean the review is "toothless," though. *Pioneer Trail Wind Farm, LLC v. Fed. Energy Regulatory Comm'n*, 798 F.3d 603, 608 (7th Cir. 2015). The Supreme Court has instructed that the "APA requires meaningful review." *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999). More specifically, a "reviewing court should not attempt itself to make up for … deficiencies" in an agency's reasoning, nor "supply a reasoned basis for the agency's action that the agency itself has not given." *Zero Zone*, 832 F.3d at 668 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A court, in other words, should deferentially examine an agency's work, but not rubber-stamp it.[5] *Dickinson*, 527 U.S. at 162.

---

[5] Orchard Hill does not protest the APA's standard of review, but it argues that the Corps' determination requires a more demanding inquiry. It invokes the constitutional concerns supposedly implicated by the Corps' claim of jurisdiction to intrastate waters, *but compare Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 173 (2001) (*SWANCC*), *with Rapanos*, 547 U.S. at 782–83 (Kennedy, J., concurring), and cites *Precon Dev. Corp. v. U.S. Army Corps of Eng'rs*, 633 F.3d 278 (4th Cir. 2011), which reviewed the Corps' compliance with the significant-nexus test de novo, *but see Hawkes*, 136 S. Ct. at 1813 (an approved jurisdictional determination based on a significant-nexus conclusion is subject to the APA). We will not address this argument, because Orchard Hill did not present it to the district court. *See, e.g., Lauth v. Covance, Inc.*, 863 F.3d 708, 718 (7th Cir. 2017) ("we can invoke waiver *sua sponte*").

### III. Discussion

The significant-nexus test requires that the Corps determine on a case-by-case basis whether wetlands, "either alone or in combination with similarly situated lands in the region, significantly affect the chemical, physical, and biological integrity of other covered waters more readily understood as 'navigable.'" *Rapanos*, 547 U.S. at 780. On final remand, and based largely on the 11-page supplement, the Corps concluded that the Warmke wetlands met that standard—both "alone and in combination with other wetlands in the area." That conclusion lacks substantial evidence in the record.

Take the effect of the Warmke wetlands "alone." According to the supplement, wetlands are "nature's kidneys," able to filter out pollutants that would otherwise reach downstream waters. Northeastern Illinois waters are known to suffer relatively high rates of nitrogen, and the Warmke wetlands have a "discrete and confined intermittent flow" to the Midlothian Creek. From this connection, the Corps concluded that the Warmke wetlands have the "ability" to pass pollutants along. But such a "speculative" finding cannot support a significant nexus. *Rapanos*, 547 U.S. at 780; *see also id.* at 786 ("conditional language" like "potential ability" may "suggest an undue degree of speculation, and a reviewing court must identify substantial evidence").

The supplement further pointed out that the almost-13-acre Warmke wetlands are the fourth largest wetlands in the area, making up 2.7 percent of the 462.9 total acres of the wetlands in the Midlothian Creek watershed. According to the supplement, if all the wetlands in the watershed were lost, floodwaters in the area would rise by 13.5 percent. That "rough estimate" also fails to support a significant nexus for

the Warmke wetlands alone. Based on the Corps' figures, loss of the Warmke wetlands would result in a floodwater rise of a fraction of a percent. If the Corps thinks that trivial number significant, it needs to give some explanation as to why. *See, e.g.*, *BP Energy Co. v. Fed. Energy Regulatory Comm'n*, 828 F.3d 959, 965–66 (D.C. Cir. 2016); *accord McDonnell Douglas Corp. v. U.S. Dep't of the Air Force*, 375 F.3d 1182, 1191 (D.C. Cir. 2004) (an agency that fails to "explain how its knowledge or experience supports" its conclusions is not afforded deference under the APA).

The same goes for the supplement's finding about the potential increase on downstream nitrogen. It reasoned that, if all the watersheds' wetlands were lost, 27 to 51 percent more nitrogen would enter the Midlothian Creek, which would then pollute the Little Calumet River in some un-estimated amount. Assuming there is nitrogen in the Warmke wetlands (which the Corps did not test), they, again, make up just 2.7 percent of the watersheds' total wetlands, and so would presumably account for a small fraction of that increase to the Midlothian Creek (to say nothing of the increase to the navigable-in-fact River). Such a bit impact seems "insubstantial," *Rapanos*, 547 U.S. at 780, and if the Corps thinks otherwise it must provide its reasoning. The supplement further identified certain wildlife that might lose their habitat if the Warmke wetlands were developed. It did not, however, show how that loss of habitat would significantly impact the 11-miles-away Little Calumet River.

Notwithstanding the Corps' claim that the Warmke wetlands "alone" have a significant nexus to the Little Calumet River, both the supplement and the Corps' arguments on appeal focus on the net impact of the 165 total wetlands in the

"Midlothian Creek watershed." As noted, the Corps found that loss of those wetlands would increase the area's peak floodwaters and result in nitrogen loading into the Midlothian Creek. But even if those findings mean something significant to the Little Calumet River, the Corps has not provided substantial evidence for its finding that the 165 wetlands are in fact "similarly situated" such that the Corps can consider their impacts in its jurisdictional analysis in the first place.

Justice Kennedy did not define "similarly situated"—a broad and ambiguous term—but the *Rapanos* Guidance does. It interprets "similarly situated" as "all wetlands adjacent to the same tributary." It in turn defines "adjacent" to mean "bordering, contiguous, or neighboring," and notes that wetlands separated from other waters of the United States by, for example, "man-made dikes or barriers," are still "adjacent wetlands." 33 C.F.R. § 328.3(c). The Corps argues that this interpretation is worth our deference, and we assume it is. *See Precon*, 633 F.3d at 291. Nothing in the record, however, adequately supports the Corps' claim that the 165 wetlands are adjacent to the Midlothian Creek.

The Corps' approved jurisdictional-determination form calls for a listing of all wetlands "adjacent to the tributary (if any)." The Corps listed the 165 wetlands there. The only hint of those lands' proximity to the Midlothian Creek is a column named "Directly abuts? Y/N," under which just four of the 165 lands were affirmatively designated. The list purports to draw its information from a map vaguely titled "National Wetlands Inventory: Tinley Park, Illinois Quadrangle, 1981," which hardly suggests a focus on the Midlothian Creek. That National Wetlands Inventory ("NWI") map does not appear

in the record, and the only NWI map that does shows no-
where near 165 wetlands. The supplement, nevertheless,
claimed that NWI data "identifies 165 wetlands in the Midlo-
thian Creek watershed." That claim is unsupported by any-
thing in the record, but even assuming it is correct, the Corps
has failed to provide any explanation as to how wetlands in
the same watershed are, *ipso facto*, adjacent to the same tribu-
tary. Indeed, the so-called Midlothian Creek watershed is
12,626 acres—almost 20 square miles—and that considerable
size belies any assumption that lands within the watershed
are necessarily, or even likely, adjacent to the Creek.

The Corps offers several responses to this shortcoming. It
contends first that Orchard Hill has waived any argument
about the failure to identify the other wetlands' adjacency to
the Midlothian Creek by not raising that issue at the adminis-
trative level. This contention is misguided. Orchard Hill did,
in fact, protest the Corps' use of the 165-wetlands list as insuf-
ficient during its third appeal. Even had it not, "claims of
waiver may themselves be waived." *United States v. Dunkel*,
927 F.2d 955, 956 (7th Cir. 1991). Orchard Hill argued to the
district court, as it does to us, that the Corps has not demon-
strated that the 165 wetlands are "similarly situated" because
the "list does not describe the wetlands, or their distance to
the 13 acres, Midlothian Creek, or the Little Calumet River."
In response, the Corps did not raise the waiver argument that
it now raises on appeal. It is therefore waived. *See, e.g.*, *United
States v. Crisp*, 820 F.3d 910, 912–13 (7th Cir. 2016).

On the merits, the Corps argues that it need not show or
explain how each of the 165 wetlands is adjacent to the Mid-
lothian Creek. But accepting this argument, especially on this
record, would invite jurisdictional overreach. The significant-

nexus test has limits: the Corps can consider the effects of in-question wetlands only with the effects of lands that are similarly situated. *Rapanos*, 547 U.S. at 780. To do as the Corps did on this record—to consider the estimated effects of a wide swath of land that dwarfs the in-question wetlands, without first showing or explaining how that land is in fact similarly situated—is to disregard the test's limits. Whatever the degree to which the Corps must defend each and every wetland it considers, its approach according to the record was plainly deficient. *Accord Sierra Club v. Fed. Energy Regulatory Comm'n*, 867 F.3d 1357, 1374 (D.C. Cir. 2017).

The Corps nonetheless claims we owe its findings deference, citing *Precon* for support. Courts, however, extend no deference to agency decisions that lack record support or explanation, *e.g.*, *Epsilon Elecs., Inc. v. U.S. Dep't of Treasury, Office of Foreign Assets Control*, 857 F.3d 913, 927 (D.C. Cir. 2017), and *Precon* does not change that. In *Precon*, the Fourth Circuit gave deference (specifically, *Skidmore* deference) to the Corps' interpretation of "similarly situated" and to its related factual findings. 633 F.3d at 290–92. We have assumed that the first of those things is appropriate here. As to the second, in *Precon*, unlike here, the Corps "provided reasoned grounds" for its similarly-situated findings. *Id.* at 292. The Corps specifically explained that the considered wetlands were historically part of the same drainage system, and others were adjacent to downstream, merged tributaries. *Id.* at 292–93. Even then, the Fourth Circuit gave the Corps' similarly-situated findings deference with reservation. *Id.* at 293 ("We urge the Corps to consider ways to assemble more concrete evidence of similarity before again aggregating such a broad swath of wetlands"). By contrast, the Corps' similarly-situated finding here, lacking as it does record support or explanation, is little

more than administrative *ipse dixit*. *See Bethlehem Steel Corp. v. U.S. Envtl. Prot. Agency*, 638 F.2d 994, 1005 (7th Cir. 1980).

The Corps also submits that it need not "justify its reliance" on the NWI data. This misunderstands the problem. The APA requires some record evidence reasonably adequate to support the finding that the 165 wetlands were similarly situated or adjacent to the Midlothian Creek. *See* 5 U.S.C. § 706(2)(E). The Corps may not need to defend the use of NWI data, but it does need to substantiate its say-so about what the NWI data shows and explain why it matters.

The fairest reading of the record is this: The district engineer reviewed an NWI document that identified 165 wetlands in the Tinley Park area, and assumed that all those wetlands were similarly situated. Maybe the assumption was defensible, but the Corps "does not provide record support for that assumption." *Susquehanna Int'l Grp., LLP v. Sec. and Exch. Comm'n*, 866 F.3d 442, 450 (D.C. Cir. 2017). While we review the Corps' determination narrowly, no amount of agency deference permits us to let slide critical findings bereft of record support. *See Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43.

## IV. Conclusion

This dispute has consumed almost as many years as the Warmke wetlands have acres. In that time, the Corps has not provided substantial evidence that the wetlands and those similarly situated have a significant nexus to the Little Calumet River. We therefore VACATE the district court's grant of summary judgment to the Corps and REMAND with instructions to remand to the Corps for reconsideration of its jurisdiction over the Warmke wetlands.