No. 18-1800

## UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

**Mary Madison**
**Petitioner-Appellant,**

**v.**

**Department of Labor-**
**Administrative Review Board**
**Respondent-Appellee.**

APPEAL FROM THE
DEPARTMENT OF LABOR-ADMINISTRATIVE REVIEW BOARD

**Case No. ARB 18-018**
**Case No. 2016-FDA-004 (ALJ)**

**The Honorable Judge(s) Joanne Royce and Leonard Howie, III**

**Administrative Appeals Judge(s) Presiding**

**REPLY BRIEF OF**
Plaintiff-Appellant-Mary Madison

**Jordan TraVaille Hoffman, P.C.**

Jordan T. Hoffman
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Mary Madison

APPELLANT REPLY BRIEF

TABLE OF CONTENTS

TABLE OF CONTENTS ......................................................... i

DISCLOSURE STATEMENT ................................................ ii

TABLE OF AUTHORITIES ................................................. iii

ARGUMENT ......................................................................... 4

I.  The Email of December 1, 2017 was not Valid, Effective Notice that Afforded Madison her 5th Amendment Due Process Rights. ....................... 4

II.  Based upon the Negligence of the OALJ and the Defective Service of the Final Decision and Order the Limitations Period Should Have Been Tolled ...................................................................... 18

III.  The Administration of the 14 Day Limitation Period Effectively Creates Two Classes of Claims and Runs Afoul of Equal Protection ......... 20

IV.  The Decision Denying the Review was not Based Upon the Whole Record ..................................................................... 26

CONCLUSION ................................................................... 28

CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32 (a) (7)................. 29

PROOF OF SERVICE ........................................................... 30

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 18-1800

Short Caption: Mary Madison v. LABR

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party or amicus curiae, or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statement be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

**[  ]        PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P 26.1 by completing item #3):

Mary Madison

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Jordan TraVaille Hoffman, P.C.; Haley Austin Law, PC

(3)  If the party or amicus is a corporation:

i)  Identify all its parent corporations, if any; and

N/A

ii) list any publicly held company that owns 10% or more of the party's or amicus' stock:

N/A

Attorney's Signature: s/ Jordan T. Hoffman                    Date: 04/26/18

Attorney's Printed Name: Jordan T. Hoffman

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☒   **No** _____

Address: 2711 E. New York Street, Suite 205 Aurora, IL 60502

Phone Number: 888-958-4529          Fax Number: 888-958-4529

E-Mail Address: jthoffmanlaw@gmail.com

rev. 01/15 GA

# Table of Authorities

Cases

1.   *Armstrong v. Manzo, 380 U. S. 545, 550 (1965)*                              *page 12*

2.   *AUTOTECH TECHNOLOGIES LP* V. *INTEGRAL RESEARCH & DEVELOPMENT*

     *CORP.*, No. 06-1718 (7th Cir. Aug. 29, 2007)                              *page 28*

3.   *Burlington Truck Lines v. United States, 371 U.S. 168 (1962)*             *page 27*

4.   *Cafeteria & Restaurant Workers Union* v. *McElroy,*

     367 U. S. 886, 895 (1961)                                                 *page 20*

5.   *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 597 (7th Cir. 1987)       *page* 19

6.   *Center for Food Safety v. Hamburg*, 954 F. Supp. 2d 965 (2013)

     at 968; *81 FR 90186-01.*                                                 *page 20*

7.   <u>*Del Raine v. Carlson,* 826 F.2d 698, 704 (7th Cir.1987)</u>            *page 15*

8.   *Dusenbery v. United States*, 534 U.S. 161, 122 S. Ct. 694,

     151 L. Ed. 2d 597 (2002)                                              *page 5, 6, & 7*

9.   *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 129 S. Ct.

     1800, 173 L. Ed. 2d 738 (2009) 1830.                                  *page* 5 & 27

10.  *Friedberg v. Estate of Presser*, 929 F.2d 1151 (6th Cir. 1991)          *page 13*

11.  *Geiger v. Allen,* 850 F.2d 330, 332 n.3 (7th Cir.1988)                  *page*  13

12.  *Goldberg v. Kelly, 397 U.S. 254, 267–68 (1970)*                  *page 9, 12, 21, & 26*

13.  *Greene v. Lindsey*, 456 U.S. 444, 102 S. Ct. 1874,

     72 L. Ed. 2d 249 (1982)                                              *page 7 & 11*

14.   *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 349-351 (1909)   *page* 10

15. *Hannah* v. *Larche,* 363 U. S. 420, 440, 442 (1960)    *page 21*

16. *Hovey* v. *Elliott,* 167 U. S. 409 (1897)    *page 10*

17. *Hurtado v. 7-Eleven, Inc.*, No. 13-1043 (7th Cir. Apr. 19, 2013)    *page 15*

18. *James* v. *Strange,* 407 U.S. 128, 140 (1972)    *page 25*

19. *Joint Anti-Fascist Refugee Committee* v. *McGrath,*

341 U. S. 123, 168 (1951)    *page 20*

20. *Jones v. Flowers, 547 U.S. 220, 235 (2006)*    *page 11 & 14*

21. *Logan v. Zimmerman Brush Co., 455 U.S. 422, 437 (1982)*

*pages 7, 8, 9, 10,14, 18, 21, 22, 23, 24 & 25*

22. *Mathews v. Eldridge, 424 U.S. 319, 344 (1976)*    *page 6*

23. *McMasters v. United States,* 260 F.3d 814, 818 (7th Cir. 2001)    *page 15*

24. *Medina* v. *California,* 505 U.S. 437, 444 (1992)    *page 6*

25. *Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)*

*pages 4, 6, 7, 10, 12, & 14*

26. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80,

108 S. Ct. 899 L. Ed. 2d 75 (1988)    *page 12*

27. *Public Citizen v. FEDERAL MOTOR CARRIER SAFETY*,

374 F.3d 1209 (D.C. Cir. 2004)    *page 27*

*Robinson v. Hanrahan, 409 U.S. 38 (1974)*    *page 12*

28. *Schweiker* v. *Wilson,* 450 U. S. 221, 101 S.Ct. 1074, 67,

234 L.Ed 2d 186 (1981)    *page 22 & 23*

iv

29.   *Shropshear v. Corp. Counsel of City of Chicago,*

275 F.3d 598 (7th Cir. 2001)                              *page 19*

30.   *Societe Internationale* v. *Rogers,* 357 U. S. 197, 78 S.Ct.

1087, 2 L Ed 2d 1255 (1958)                              *page* 9

31.   *Sweeney v. Pence, 767 F.3d 654 (7th Cir. 2014)*        *page 15*

32.   *United States v. Berkos, 543 F.3d 392, 396 (7th Cir.2008)*   *page 15*

33.   *US v. Ye, 588 F.3d 411 (7th Cir. 2009)*               *page 15*

34.   *United States v. Gluklick,* 801 F.2d 834, 836 (6th Cir.1986)   *page* 13

35.   *Vt. Yankee Nuclear Power Corp. v. NRDC,* 435 U.S. 519,

543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)               *page 15*

36.   *Windsor* v. *McVeigh,* 93 U. S. 274 (1876)            *page 10*

37.   *Wolff* v. *McDonnell,* 418 U. S. 539, 558 (1974)      *page 10*

38.   *Worrell v. B.F. Goodrich, Co.,* 845 F.2d 840, 841 (9th Cir.1988)   *page 13*

## STATUTES AND REGULATIONS

Administrative Procedure Act

The APA is codified at 5 U.S.C. §§ 551-559, and encompasses the Freedom of

Information Act (FOIA) (5 U.S.C. § 552) and the Privacy Act (5 U.S.C. § 552a)

5 U.S.C. §554                                            *page* 26

### FDA Food Safety Modernization Act (FSMA)

*Section 402 of the FDA Food Safety Modernization Act (FSMA)*

*pages* 20, 21, 23,  25

**Code of Federal Regulations**

*29 CFR - PART 18—RULES OF PRACTICE AND PROCEDURE FOR*

*ADMINISTRATIVE HEARINGS BEFORE THE OFFICE OF ADMINISTRATIVE LAW*

§1987.100-Purpose and scope part                          *pages 4, 19 & 27*

**Miscellaneous**

Federal Civil Rule of Procedure 5                          *page* 4 & 27

## STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

Jurisdiction of this appeal arises from  the timely filing of a Petition for Review filed on April 16, 2018 pursuant to 21 U.S.C. §399d(b)(5)(A), Food, Drug and Cosmetic Act as amended, §§402 and 1013 entitled "Employee Protections" of the Food Safety Modernization Act (FSMA) and 29 CFR 1987.110(a)(b)(c) and 29 CFR 1987.112 of the Procedures for Handling Retaliation Complaints under §402 of the FDA Food Safety Modernization Act within 60 days of the Secretary's decision entered on February 15, 2018 and the Federal Rule of Appellate Procedure 15.

## INTRODUCTION

The Secretary of Labor (the "Secretary") argues that Madison's counsel is chargeable with the error that was made in the service of the November 22, 2017 order to his former address. This order issued by the Office of the Administrative Law Judge (hereafter "OALJ") granted Kenco's Motion for Summary Decision which triggered the 14 day limitation period for filing for review by the Administrative Review Board.

1

The Secretary contends that the email of December 1, 2017 sent by Kenco's counsel to April Cook of the OALJ's office on which Madison's counsel was copied was sufficient to provide her notice that was reasonably calculated, under all the circumstances, to apprise her of the pendency of the action (the adverse order triggering the 14 day limitations period) and afforded her an opportunity to present her objections.  In doing so, it claims that the failure of the OALJ'S office to provide valid proof of service of the date of the second mailing of the order to the correct address was merely "harmless error" because there was ample evidence in the record that the decision was mailed to the correct address on or before that date [December 1, 2017] (App. Br., 15) without citing any authority for the proposition or pointing to any specific evidence.

Furthermore, the Secretary's claim that Madison's due process arguments were implicitly addressed and resolved by the Board's finding that Madison's counsel received reasonable notice of the ALJ's decision is sophistry. Id.

The Secretary in its' brief concedes that the second mailing of the order was delivered to Madison's counsel on December 6, 2017 fourteen (14) days after the issuance of the order by the OALJ but incredulously claims that Madison and her counsel had 5 days of the original 14 to act based upon the  Friday, December 1, 2017 email. (App. Br., 6); (App. Br., 19).

Madison's counsel never indicated that he saw the email and there is nothing in the record that suggests otherwise as there was no email from him to either April Cook of the OALJ's office or to Kenco's counsel acknowledging the email or requesting a copy of the order.

Moreover, Madison's counsel indicated in her brief that it was the office practice and procedure to sort and distribute the mail on the next business day (December 7, 2017) due to the lateness of the hour in which the mail was regularly received and therefore her counsel did not see the OALJ's order of November 22, 2017 until December 7, 2017. (Pet. Br., 16, fn. 7).

## Argument

I.    The Email of December 1, 2017 was not Valid, Effective Notice that Afforded Madison her 5th Amendment Due Process Rights.

The December 1, 2017, email failed to meet the statutory requirements of *29 CFR - PART 18 and FED. R. CIV. P. 5.* Additionally, the email was not reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co., 339 U. S. 306, 314 (1950),*

*Pursuant to 29 CFR -Part 18 and* FED. R. CIV. P. 5. written consent is required to which Madison's counsel had not conceded. The December 1, 2017 email was also bereft of any telling details necessary, including the order, the disposition of the order and the method/manner in which the order had been resent to Madison's counsel.  Moreover, the email was not sent to Madison's counsel by the party serving the notice, it was sent by the counsel for Kenco.

Furthermore, an agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books. See *United States v. Nixon,* 418 U.S. 683, 696, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974) *Fox at 1811* Agencies must follow a "logical and rational" decision making "process." *Allentown Mack Sales & Service, Inc. v. NLRB,* 522 U.S. 359, 374, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998) *Fox at 1830*

"The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law." From those "cryptic and abstract words," *Dusenbery v. United States,* 534 US 161 (2002) at 167 quoting, *Mullane* v. *Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950), the U.S. Supreme Court has determined that individuals whose property interests are at stake are entitled to "notice and an opportunity to be heard." *Dusenbery* at 167 (citing, *Mullane* supra, quoting and *United States* v. *James Daniel Good Real Property,* 510 U. S. 43, 48 (1993).

In analyzing due process claims, the court weighs the approach articulated in *Mathews* v. *Eldridge,* 424 U. S. 319 (1976) utilizing a balancing of three factors: (1) the private interest that will be affected by the official action, (2) a cost-benefit analysis of the risks of an erroneous deprivation versus the probable value of additional safeguards, and (3) the Government's interest, including the function involved and any fiscal and administrative burdens associated with using different procedural safeguards  versus the application of the method set forth in *Mullane at 435* which espouses a more straightforward test of reasonableness under the circumstances. *Dusenbury* at 167.

Although the court has invoked *Mathews* to evaluate due process claims in other contexts, see *Medina v. California,* 505 U.S. 437, 444 (1992) (citing cases), it has never viewed *Mathews* as announcing an all embracing test for deciding due process claims. *Dusenbery* at 168.  Since *Mullane* was decided, the court has regularly turned to it when confronted with questions regarding the adequacy of the method used to give notice Id. See, *e. g., New York City* v. *New York, N. H. & H. R. Co.,* 344 U. S. 293, 296 (1953); *Walker* v. *City of Hutchinson,* 352 U. S. 112, 115 (1956); *Schroeder v.*

6

*City of New York,* 371 U.S. 208, 210 (1962); *Robinson* v. *Hanrahan,*
409 U. S. 38, 39 (1972) *(per curiam); Greene* v. *Lindsey,* 456 U. S.
444, 448 (1982); *Mennonite Bd. of Missions* v. *Adams,* 462 U. S. 791,
797(1983); *Tulsa Professional Collection Services, Inc.* v. *Pope,* 485 U.
S. 478, 484 (1988). *Dusenbery* at 168.

The Court in *Mullane* observed that "Many controversies have
raged about the cryptic and abstract words of the Due Process
Clause but there can be no doubt that at a minimum they require
that deprivation of life, liberty or property by adjudication be
preceded by notice and opportunity for hearing appropriate to the
nature of the case." *Logan v. Zimmerman Brush Co.*, 455 US 422
(1982) at 427 citing, *Mullane* at 313. This requires the court to
engage in a two-part inquiry: whether Madison was deprived of a
protected interest? And, if so, what process was her due? *Logan* at
428.

The first question was affirmatively settled by the *Mullane* case
itself, where the Court held that a cause of action is a species of
property protected by the Fourteenth Amendment's Due Process
Clause. *Logan* at 429. In *Mullane*, "the Court confronted a challenge
to a state law that provided for the settlement of common trust fund

7

accounts by fiduciaries, upon notice given through newspaper publication." Id at 429. The effect of the statute was to terminate "every right which beneficiaries would otherwise have against the trust company . . . for improper management of the common trust fund." *Id.*. This, the Court concluded, worked to deprive the beneficiaries of property by, among other things, "cut[ting] off their rights to have the trustee answer for negligent or illegal impairments of their interests." Id.

The hallmark of property, the Court has emphasized, is an individual entitlement grounded in state law, which cannot be removed except "for cause." *Logan* at 430, citing, *Memphis Light, Gas & Water Div.* v. *Craft,*436 U. S. 1, 11-12 (1978); *Goss* v. *Lopez,* 419 U. S. 565, 573-574 (1975); *Board of Regents* v.*Roth,* 408 U. S. 564, 576-578 (1972). "Once that characteristic is found, the types of interests protected as "property" are varied and, as often as not, intangible, relating "to the whole domain of social and economic fact." *Logan* at 430, citing, *National Mutual Insurance Co.* v. *Tidewater Transfer Co.,* 337 U. S. 582, 646 (1949) (Frankfurter, J., dissenting); *Arnett* v. *Kennedy,* 416 U. S. 134, *431 207-208, and n. 2 (1974) (MARSHALL, J., dissenting); *Board of Regents* v. *Roth,* 408

U. S., at 571-572, 576-577. See, *e. g., Barry* v. *Barchi,* 443 U. S. 55 (1979) (horse trainer's license protected); *Memphis Light, Gas & Water Div.* v. *Craft, supra* (utility service); *Mathews* v. *Eldridge,* 424 U. S. 319 (1976) (disability benefits); *Goss* v. *Lopez, supra* (high school education); *Connell* v. *Higginbotham,* 403 U. S. 207 (1971) (government employment); *Bell* v. *Burson,* 402 U. S. 535 (1971) (driver's license); *Goldberg* v. *Kelly,* 397 U. S. 254 (1970) (welfare benefits). *Logan* at 430, 431.  Madison's claim pursuant to the Food Modernization Safety Act likewise shares these characteristics.

The Supreme Court traditionally has held that the Due Process Clauses protect civil litigants who seek recourse in the courts, either as defendants hoping to protect their property or as plaintiffs attempting to redress grievances. *Logan* at 429. In *Societe Internationale* v. *Rogers,* 357 U. S. 197, 78 S.Ct. 1087, 2 L Ed 2d 1255 (1958), for example — where a plaintiff's claim had been dismissed for failure to comply with a trial court's order — the Court read the "property" component of the Fifth Amendment's Due Process Clause to impose "constitutional limitations upon the power of courts, even in aid of their own valid processes, to dismiss an action without affording a party the opportunity for a hearing on the

merits of his cause." *Logan*, citing *Societe Internationale.,* at 209.
See also *Hammond Packing Co.* v. *Arkansas,* 212 U. S. 322, 349-351
(1909) (power to enter default judgment); *Hovey* v. *Elliott,* 167 U. S.
409 (1897) (same); *Windsor* v. *McVeigh,* 93 U. S. 274 (1876) (same).
Cf. *Wolff* v. *McDonnell,* 418 U. S. 539, 558 (1974).

Similarly, the Fourteenth Amendment's Due Process Clause
has been interpreted as preventing the States from denying
potential litigants use of established adjudicatory procedures, when
such an action would be "the equivalent of denying them an
opportunity to be heard upon their claimed right[s]." *Logan* at 430,
quoting, *Boddie* v. *Connecticut, 401* U. S. 371, 380 (1971).

With respect to notice, *Mullane* and its progeny ask whether as
"an elementary and fundamental requirement of due process in any
proceeding which is accorded finality is notice reasonably
calculated, under all the circumstances to, apprise interested
parties of the pendency of the action and afford them the
opportunity to present their objections." *Mullane* at 314.

Moreover, the opportunity which must be granted, must be
granted in a meaningful time and manner.  *Id* at 319. The right to
be heard has little reality or worth unless one is informed that the

matter is pending and can choose for herself whether to appear or
default, acquiesce or contest. *Greene v. Lindsay*, 456 U.S. 444, 453,
102 S.Ct. 1874, L.Ed. 2d 249 (1982), (Service by merely posting
notice on an apartment door does not satisfy minimum standards of
due process in the circumstances).

The reasonable opportunity to be heard includes the obliga-
tion, upon learning that an attempt at notice has failed, to take rea-
sonable follow-up measures that may be available. *Jones v. Flowers,
547 U.S. 220, 126 (2006).*

*Jones* states that due process requires the government to do
something more before imposing some type of deprivation *Jones at
227.* - *Jones* states, that a court evaluates the adequacy of notice
prior to the State (agency) extinguishing a person's rights. *Id.*

This is especially true when, as here, the subject matter of the
letter concerns such an important and irreversible prospect as the
loss of a person right. Although the agency (State) may have made a
reasonable calculation of how to reach Madison, it had good reason
to suspect when the notice was returned that Madison was "no
better off than if the notice had never been sent." *Jones* at 230

citing *Malone v. Robinson*, 614 A.2d 37 (D.C. Cir. 1992).

In addition, notice must be sufficient to enable the recipient to determine what is being proposed and what she must do to prevent the deprivation of his interest. *Goldberg v. Kelly,* 397 US. 254,267-68 (1970). Ordinarily, service of notice must be reasonably structured to assure that the person to whom it is directed receives it. *Armstrong v. Manzo*, 380 US. 545, 5 (197450 (1965); *Robinson v. Hanrahan*, 409 US. 38 (1974).

The notice procedure employed as a predicate to Madison's petition for review did not satisfy the minimum standards of a constitutionally adequate notice described in <u>*Mullane at 306.*</u>

The record in this case clearly reflects Madison was denied constitutional due process because of the multiple defective services of the ALJ's order of the pending action. *Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80, 108 S. Ct. 899 L. Ed. 2d 75 (1988).

Specifically, in *Jones* unclaimed mail was returned to a government agency by the United States Postal service. *Id. 126.* The court stated that returned mail was unperfected service. *Id.* The court in *Jones* held that the return of "unclaimed" mail as being insufficient to satisfy the party's constitutional due process

12

requirements for service of process.

"For the great majority of courts, however, actual knowledge of the law suit does not substitute for proper service of process under Rule 4(c)(2)(C)(ii)." *Friedberg v. The Estate of Presser*, 929 F.2d 1151, 1155 (1991) *See, e.g., United States v. Gluklick,* 801 F.2d 834, 836 (6th Cir.1986) ("The courts, consistent with the legislative history, have held that the defendant's failure to acknowledge service renders such service invalid....") (citation omitted); *Geiger v. Allen,* 850 F.2d 330, 332 n.3 (7th Cir.1988) ("The rule in this and other circuits is that service by mail is not complete until an acknowledgment is filed with the court."); *Worrell v. B.F. Goodrich, Co.,* 845 F.2d 840, 841 (9th Cir.1988) (virtually every court that has examined the rule has concluded that service fails unless defendant returns acknowledgment form); *Stranahan Gear Co., Inc. v. NL Indus., Inc.,* 800 F.2d 53, 57-58 (3rd Cir.1986); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.,* 733 F.2d 1087, 1088-89 (4th Cir.1984), *Friedberg* at 1156.

*Mullane* itself involved a due process challenge to the constitutional sufficiency of notice to beneficiaries on judicial settlement of accounts by the trustee of a common trust fund

established under state law. *Logan* at 429. A trustee of such a common trust fund sought a judicial decree settling its accounts as against all parties having an interest in the fund. Id.

The only notice of the application for this decree was by court-ordered publication in a newspaper for four successive weeks. Id. 339 U. S., at 309-310. The Supreme Court, held that this notice was constitutionally defective as to known persons whose whereabouts were also known, because it was not "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id, quoting Mullane* at 314, 319; see also *Id.,* at 315. As for *Mullane,* it directs that "when notice is a person's due . . . [t]he means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Jones* at 238, quoting *Mullane* at 315 that assessing the adequacy of a particular form of notice requires balancing the "interest of the State" against "the individual interest sought to be protected by the Fourteenth Amendment," *Jones v. Flowers* at 229, quoting *Mullane* at 314.

Proper service of notice is not some mindless technicality, but—rather—"a critical part of a lawsuit." *Del Raine v. Carlson*, 826 F.2d 698,704 (7th Cir.1987).

The court in *Hurtado v. 7-Eleven, Inc.*, No. 13-1043 (7th Cir. Apr. 19, 2013) citing <u>*McMasters v. United States*, 260 F.3d 814, 818 (7th Cir. 2001)</u> stated that a party was not excused from exercising their diligence and compliance with service of process rules.

"Statutory interpretation begins with the plain language of the statute." *United States v. Berkos, 543 F.3d 392, 396 (7th Cir.2008).* This court assumes that the purpose of the statute is communicated by the ordinary meaning of the words Congress used; therefore, absent any clear indication of a contrary purpose, the plain language is conclusive. *US v. Ye, 588 F.3d 411 (7th Cir. 2009); Sweeney v. Pence, 767 F.3d 654 (7th Cir. 2014).*

Furthermore, the courts have held that in deciding whether agency procedures comport with due process, "we do not defer to the agency." *See* <u>*Vt. Yankee Nuclear Power Corp. v. NRDC*, 435 U.S. 519, 543, 98 S.Ct. 1197, 55 L.Ed.2d 460 (1978)</u> (noting that administrative agencies have great latitude in crafting rules of procedure only "[a]bsent constitutional constraints").

In the case at bar, the OALJ unequivocally sent notice on November 22 and December  1, 2017 that it knew or should have known would not have apprised Madison or her counsel of the decision issued on November 22, 2017.

The email[1] sent on December 1, 2017 discussing the decision was not initiated by the OALJ; and did not attach the order and only copied Madison's counsel as to a response from the then defendant's counsel to the OALJ.

As eluded to previously, this email was not seen by Madison's counsel during the relevant time period and the Secretary does not argue that the OALJ took additional steps to apprise counsel of the order having been issued.  Counsel saw the order a day after he received it[2].  He filed the petition for review on behalf of Madison based upon the information that he had within a reasonable time after he received it.

The Secretary states that this error in service should be borne by Madison's counsel and shifts the responsibility to him by implying that he has committed legal malpractice.

---

[1] Email although efficient does not always reach its intended person; i.e. the missing "t" in Madison's counsels email (incorrect email addresses); glitches in transmission; email being sent to spam folder, etc...

[2]  Even if Madison's counsel had seen the order the day he received it, December 6, 2017, Madison's counsel still needed an opportunity to review the decision, identify a plan of action and speak with Madison about it.

The OALJ sent a letter to the incorrect address; sent an email to an incorrect address; then having realized that both were in error, it failed to take a further step of calling Madison's attorney to apprise him of the situation or of even sending the notice to the correct address by expedited mail service knowing that the date of issuance triggered the running of the 14 day limitations period.

However, in the absence of addressing the relevant issue and applying the plain language of the statute as required, what has occurred is that both the Secretary and ARB have interpreted the matter in such a way that it has couched it as a matter of equitable tolling; a principle in which Madison is not entitled to according the ARB and the Secretary; an interpretation that has deprived Madison of her due process at the ARB and other judicial forums.

Instead the Secretary offers what appears to be the "offense" of the ARB that counsel for Madison "...unilaterally decided, without consulting the Board, that (1) Madison was entitled to toll the due date for filing because the original decision went to the wrong address, and  (2) that he had 14 days from the date he received the decision, rather than 14 days from the date the ALJ issued it, to file the petition" and the Secretary argues here that … "the remedy for a

17

lawyer's failure is a lawsuit for legal malpractice..."

Contrary to this assertion, Madison never asserted that doctrine or principle, but vehemently and consistently asserted that the service was defective and that Madison acted in a reasonable time after becoming aware of the decision.

II.     Based upon the Negligence of the OALJ and the Defective Service of the Final Decision and Order the Limitations Period Should Have Been Tolled

As Justice Powell noted in *Logan* in his concurring opinion as joined by Justice Rehnquist, "the action commenced with an isolated example of bureaucratic oversight that resulted in the denial even of a hearing on appellant's claim of discrimination. One would have expected this sort of negligence by the State [Secretary] to toll the statutory period within which a hearing [petition for review] must be held [filed].

Here, the Board much like the Supreme Court of Illinois, however, read the statutory terms as mandatory and jurisdictional. *Logan* at 443.  The Secretary notes in its brief (App. Br., 7) that the 14 day period of filing is not jurisdictional.  However, it treats it as a

jurisdictional statute of limitations.  The review is left to the discretion of the Board and they clearly do not require a simple form or letter to raise objections as to factual conclusions and points of law 29 CFR § 1987.110(a). The failure to meet those standards is to waive those objections and points not raised in the petition for review.

The tolling rule is a "part of the legislative balancing of the conflicting interests of enforcement versus staleness of claims embodied in statutes of limitations."  *Shropshear v. Corp. Counsel of City of Chicago*, 275 F.3d 598 (7th Cir. 2001) citing *Cange v. Stotler and Co., Inc.*, 826 F.2d 581, 597 (7th Cir. 1987) ("in virtually all statutes of limitation the chronological length of the limitations period is interrelated with provisions regarding tolling, revival, and questions of application").

Equitable tolling permits a plaintiff to avoid the bar of the statute of limitations if, despite all diligence, he is unable to obtain vital information bearing on the existence of his claim. *Shropshear* quoting *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 95 S. Ct. 1716, 44 L. Ed. 2d 295 (1975).

III.     The Administration of the 14 Day Limitation Period Effectively Creates
Two Classes of Claims and Runs Afoul of Equal Protection

The purpose of the FSMA is to better protect human health by
ensuring that the food supply is safe from contaminants. *Center for
Food Safety v. Hamburg*, 954 F. Supp, 2d 965 (2013) at 968; *81 FR
90186-01.* Madison at great cost to herself raised the issues in her
claim against her former employer to accomplish the purpose of the
statute. The extent to which procedural due process *Goldberg* at
263 must be afforded the recipient is influenced by the extent to
which he may be "condemned to suffer grievous loss," *Id citing Joint
Anti-Fascist Refugee Committee* v. *McGrath,* 341 U. S. 123, 168
(1951) (Frankfurter, J., concurring), and depends upon whether the
recipient's interest in avoiding that loss outweighs the governmental
interest in summary adjudication. *Goldberg* at 263. Accordingly, as
the Supreme Court stated in *Cafeteria & Restaurant Workers Union*
v. *McElroy,* 367 U. S. 886, 895 (1961), "consideration of what
procedures due process may require under any given set of
circumstances must begin with a determination of the precise
nature of the government function involved as well as of the private

interest that has been affected by governmental action." Goldberg at 263. See also *Hannah* v. *Larche,* 363 U. S. 420, 440, 442 (1960).

It seems that FSMA has two aims beyond protecting human health and insuring that the food supply is safe-- eliminating employment discrimination based on retaliation for making whistleblower claims and protecting employers and other potential defendants "from unfounded charges of discrimination and retaliation based upon such claims. *Logan* at 440.

It is evident at a glance that neither of these objectives is advanced by the 14 day limitation period for filing review of OALJ decisions by the Board.  Terminating potentially meritorious claims in a random manner obviously cannot serve to redress instances of discrimination based upon individuals whom stick their neck out to confront what they may reasonably believe to be breaches of the FSMA. Id.  And the limitations period cannot protect employers from unfounded charges, for the frivolousness of a claim is entirely unrelated to the length of time to process that claim or to file a review, if necessary. Id.

Here, of course, the 14 day limitation period may operate to terminate meritorious claims without any hearing at all, while

21

allowing frivolous complaints to proceed through the entire administrative and judicial review process. *Id.* While it may well be true that "[n]o bright line divides the merely foolish from the arbitrary law," *Schweiker* v. *Wilson,* 450 U. S. 221, 101 S.Ct. 1074, 67, 234 L.Ed 2d 186 (1981) (dissenting opinion), there is no doubt that the 14 day limitations period for filing a petition for review is irrational in the light of its stated purposes of the FSMA. *Logan at 440.*

Madison's equal protection claim is an unconventional one. The FSMA establishes no explicit classifications and does not expressly distinguish between claimants, and no doubt the opposition would argue therefore that Madison has no more been deprived of equal protection than anyone would be who is injured by a random act of governmental misconduct. *Id.*

As the Secretary administers the statute, however, FSMA unambiguously divides claims — and thus, necessarily, claimants — into two discrete groups that are accorded radically disparate treatment. Id.

Claims processed within the 14 day limitations period are given full consideration on the merits, and complainants bringing

such charges are awarded the opportunity for full administrative and judicial review. Id at 439.  In contrast, otherwise identical claims that do not receive a hearing within the 14 day limitation period are unceremoniously, and finally, terminated.  Because the Secretary recognizes, in so many words, that the FSMA establishes two categories of claims, one may proceed to determine whether the classification drawn by the statute is consistent with the Fourteenth Amendment. *Id.*

 "For over a century, the Court has engaged in a continuing and occasionally almost metaphysical effort to identify the precise nature of the Equal Protection Clause's guarantees. At the minimum level, however, the Court "consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives." Id. citing *Schweiker* v. *Wilson,* 450 U. S. 221, 230 (1981).

 This is not a difficult standard for a Secretary to meet when it is attempting to act sensibly and in good faith. But the "rational-basis standard is `not a toothless one,' " *id.,* at 439, quoting *Mathews* v. *Lucas,* 427 U. S. 495, 510 (1976); the classificatory scheme must "rationally advanc[e] a reasonable and identifiable

governmental objective." *Schweiker* v. *Wilson,* 450 U. S., at 235. *Logan* at 439.

The 14 day limitations period for filing petitions for review serves to expedite the resolution of certain claims — those not processed within 14 days — in a most obvious way, and in that sense it furthers the purpose of terminating disputes expeditiously. But it is not enough, under the Equal Protection Clause, to say that the legislature sought to terminate certain claims and succeeded in doing so, for that is "a mere tautological recognition of the fact that [the legislature] did what it intended to do." *Id.* citing *U. S. Railroad Retirement Bd.* v. *Fritz,* 449 U. S. 166, 180 (1980) (STEVENS, J., concurring in judgment). *Logan* at 439.

This Court still has an obligation to view the classificatory *system,* in an effort to determine whether the disparate treatment accorded the affected classes is arbitrary. *Logan*, citing, *Rinaldi* v. *Yeager,* 384 U. S., at 308 ("The Equal Protection Clause requires more of a state law than nondiscriminatory application within the class it establishes"). Cf. *U. S. Railroad Retirement Bd.* v. *Fritz,* 449 U. S., at 178. *Logan* at 439.

Every FSMA claimant's charge, when filed with the Secretary,

stands on the same footing. Id. Yet certain randomly selected claims, because processed too slowly by the Secretary, are irrevocably terminated without review. In other words, the Secretary converts similarly situated claims into dissimilar situated ones, and then uses this distinction as the basis for its classification. Id.

This, is the very essence of arbitrary state action. "[T]he Equal Protection Clause `imposes a requirement of some rationality in the nature of the class singled out,' " *James* v. *Strange,* 407 U.S. 128, 140 (1972), quoting *Rinaldi,* 384 U. S., at 308-309, and that rationality is absent here. *Logan* at 440.

Finally, it is possible that the Secretary meant to suggest that the deadline contained in the FSMA can be justified as a means of thinning out the Board's caseload, with the aim of encouraging the Board to convene timely hearings. *Logan* at 442  This rationale, however, suffers from the defect outlined above: it draws an arbitrary line between otherwise identical claims. In any event, the Secretary's method of furthering this purpose — if this was in fact the legislative end — has so speculative and attenuated a connection to its goal as to amount to arbitrary action. Id.

## IV.  The Decision Denying the Review was not Based Upon the Whole Record

Formal proceedings are subject to more stringent procedures than informal proceedings and are required when the agency's decision must be made on the record-APA-5 U.S.C. §554

"[T]he decision maker's conclusion . . . must rest solely on the legal rules and evidence adduced.  To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on..." *Goldberg v. Kelly, 397 U.S. 254, 271 (1970) (citations omitted).*

Furthermore, Madison asserts that the Secretary nor the ARB ever addressed the one and only issue that Madison ever raised in regards to the allegedly untimely filing of Madison's petition for review.  As a matter of record[3] the APA requires that the relevant issue raised be addressed.

The Supreme Court stated that:

When reviewing that determination, courts must "consider whether the decision was based on a consideration of the relevant

---

[3] Additionally, the Secretary attaches as its exhibit in its Appellees Brief Madison's points of law dated stamped November 20, 2017.  This November 20, 2017 document predates Madison's petition for review and any subsequent documents relative to Madison's appeal.  At the onset of this appeal, the Secretary denied having any records other than the ones it submitted to the Court for the Certified Record (Pet.Br. page 31). The Secretary's attachment proves otherwise.

factors and whether there has been a clear error of judgment." *Bur-*

*lington Truck Lines v. United States, 371 U.S. 168 (1962)*

   *Public Citizen v. FEDERAL MOTOR CARRIER SAFETY*, 374 F.3d
1209 (D.C. Cir. 2004) states:

> A statutorily mandated factor, by definition, is an
> important aspect of any issue before an
> administrative agency, as it is for Congress in the
> first instance to define the appropriate scope of an
> agency's mission. When Congress says a factor is
> mandatory, that expresses its judgment that such a
> factor is important. In accordance with this
> principle, we have held that "the complete absen[c]e
> of any discussion" of a statutorily mandated factor
> "leaves us with no alternative but to conclude that
> [the agency] failed to take account of this statutory
> limit on [its] authority," making the agency's
> reasoning arbitrary and capricious. *United Mine
> Workers v. Dole,* 870 F.2d 662, 673 (D.C.Cir.1989).
Therefore,
> If an agency takes action not based on neutral and
> rational principles, the APA grants federal courts
> power to set aside the agency's action as "arbitrary"
> or "capricious." 5 U.S.C. § 706(2)(A); *Citizens to
> Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402,
> 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). For these
> reasons, agencies under the APA are subject to a
> "searching and careful" review by the courts.  *Fox
> 1823 & 1824*

   In this instance, the ARB failed to consider and govern its self

accordingly to the specificities and nuances of 29 CFR Part 18 and

its governing counterpart FED. R. CIV. P. 5, as outlined in 29 CFR

1987 § 100, as well as, address the relevant facts.

Finally, "the judgment cannot stand, because of flaws in service.... *"AUTOTECH TECHNOLOGIES LP v. INTEGRAL RESEARCH & DEVELOPMENT CORP.*, No. 06-1718 (7th Cir. Aug. 29, 2007).

CONCLUSION

For all of the foregoing reasons, Petitioner-Complainant, Mary Madison prays this Honorable Court for the entry of an order reversing the Secretary's Order Dismissing her Appeal and further request that the matter be remanded to the Board to consider her petition for review.

Respectfully submitted,
MARY MADISON


By: /s/_____
        Jordan Hoffman,
        Her Attorney

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION,

TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS


1.     This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 5,499 words, excluding the parts of the brief exempted from FED. R. APP. P. 32(a)(7)(B)(iii), determined by using the word count feature on Microsoft Word 2010.

2.     This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point font for the text, 11-point font for footnotes, using Bookman Old Style, Microsoft Sans Serif, Times Roman and Century Schoolbook throughout.


Dated October 23, 2018

**Jordan TraVaille Hoffman, P.C.**

/s/_____

Jordan T. Hoffman
2711 E. New York St., Suite 205
Aurora, IL 60502
888-958-4529
Plaintiff-Appellant-Mary Madison
Case No. 18-1800

29

**CERTIFICATE OF SERVICE**

The undersigned attorney, hereby certifies that on October 23, 2018, I submitted a copy of the foregoing PETITIONER-COMPLAINANT REPLY BRIEF IN SUPPORT OF PETITION FOR REVIEW FROM THE DISMISSAL OF THE OF APPEAL ISSUED BY THE DEPARTMENT OF LABOR-ADMINISTRATIVE REVIEW BOARD with the UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT in the foregoing matter of Case No. 18-1800 and have served the persons identified on the docket's service list through Notice of Electronic Filing generated by the Court's CM/ECF system:

/s/ _____

Jordan Hoffman
ARDC-6195896
**Jordan TraVaille Hoffman, P.C.**
2711 E. New York St., Suite 205
Aurora, IL 60502
(888) 958-4529